of incompetency, provided that if such transfer would cause a Transfer of Control it shall be subject to the terms set forth in Section 11.2.2 and if such transfer would not cause a Transfer of Control it shall be subject to Section

Case: 1:13-cv-00982 Document #: 10-1 Filed: 02/06/13 Page 1 of 128 PageID #:413

11.2.5  Public Securities Offerings. Licensee may engage in a registered public offering of the Equity Ownership Interests (or the Ownership Interests of any Parent Company), provided that Licensee, (a) provides written notice to Licensor of its (or its Parent Company's) intention to engage in a public offering at least 30 days prior to the first public filing of any securities registration document, (b) pays Licensor a public offering fee equal to $10,000 at the time of providing the notice, (c) prior to the initial offering filing, executes and delivers to Licensor an indemnification agreement in form and substance satisfactory to Licensor, indemnifying Licensor and its Affiliates from any liability in connection with such public offering, (d) complies fully with all of Licensee's confidentiality and nondisclosure obligations hereunder, and the disclaimer and other requirements set forth in Section 11.3, (e) conducts any such public offering in full compliance with all applicable federal and state securities laws, and (f) provides written notice to Licensor of (i) the completion of such public offering, along with a copy of the final published prospectus or other offering document, or (ii) the termination or abandoning of such public offering, not later than 15 days following the effective date, termination or abandoning, respectively, of such offering.

11.2.6  Publicly Traded Securities.  Notwithstanding anything to the contrary in this Section 11.2, the transfer of any publicly traded Ownership Interests in Licensee (or any Parent Company) shall not be subject to the restrictions in Section 11.2 (other than Sections 11.2.5 and this 11.2.6) if they are, on the Effective Date or after compliance with Section 11.2.5, registered under the Federal Securities Act of 1933, as amended, or a class of securities registered under the Securities Exchange Act of 1934, as amended, or listed for trading on any internationally recognized stock exchange or the automated quotation system of the National Association of Securities Dealers, Inc. (or any successor system), provided that Licensor, pursuant to Section 16.2.1, may terminate this Agreement effective upon written notice if, at any time, or under any circumstances, Licensee or any Parent Company directly or indirectly acquires, is acquired by or otherwise becomes a Competitor.  Upon the written

26

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of          SHRW 00031
Starwood Hotels and Resorts.  Please contact Therese Pritchard at (202) 508-6252
should any request be made for production of this document.

request of Licensor, Licensee shall provide, or shall cause its (or its Parent Company's) registrar to provide a complete list of all holders of Ownership Interests of Licensee (or any Parent Company), as well as the number of issued and outstanding Ownership Interests of Licensee (or any Parent Company), or other data requested by Licensor, for the purpose of determining compliance with this Section.

### 11.3    Licensee's Financing or Securities Documents.

11.3.1    Disclosures in Financing and Securities Documents. Licensee shall not represent in any proposed financing arrangement to any proposed lender or participant in a private or public investment offering that Licensor or its Affiliates are or shall be in any way responsible for Licensee's obligations or financial projections, if any, set forth in such financing arrangement or investment offering or that Licensor is or shall be participating in such private or public investment offering. In furtherance of the foregoing:

(a)    any proposed financing arrangement where the service mark "Element$^{SM}$" appears, or a reference to this License appears, shall contain a disclaimer in bold face type substantially as follows: **THE BORROWER IS A PARTY TO A LICENSE AGREEMENT WITH WESTIN HOTEL MANAGEMENT, L.P.THAT ENABLES IT TO OPERATE A HOTEL USING THE SERVICE MARK "ELEMENT$^{SM}$." NEITHER WESTIN HOTEL MANAGEMENT, L.P. NOR ITS AFFILIATES OWN SUCH HOTEL OR ARE A PARTY TO THIS FINANCING AND HAVE NOT PROVIDED OR REVIEWED, AND ARE NOT RESPONSIBLE FOR, ANY DISCLOSURES OR OTHER INFORMATION SET FORTH HEREIN.** Also, at least 15 days prior to closing such financing, Licensee shall submit to Licensor a written statement certifying that it has not misrepresented or overstated its relationship with Licensor or its rights to use the service mark "Element$^{SM}$;"

(b)    any such private or public investment offering circular or prospectus issued by Licensee where the service mark "Element$^{SM}$" appears, or a reference to this License appears, shall contain a disclaimer in bold face type substantially as follows: **THE OFFEROR IS A PARTY TO A LICENSE AGREEMENT WITH WESTIN HOTEL MANAGEMENT, L.P. THAT ENABLES IT TO OPERATE A HOTEL USING THE SERVICE MARK "ELEMENT$^{SM}$." NEITHER WESTIN HOTEL MANAGEMENT, L.P. NOR ITS AFFILIATES OWN SUCH HOTEL OR ARE A PARTICIPANT IN THIS OFFERING AND**

L.P. NOR ITS AFFILIATES OWN SUCH HOTEL OR THE INVESTMENT AND
HAVE NOT PROVIDED OR REVIEWED, AND ARE NOT RESPONSIBLE FOR, ANY DISCLOSURES
OR OTHER INFORMATION SET FORTH HEREIN. Also, at least 15 days prior to issuance, such prospectus or offering circular shall be submitted to Licensor with a statement, signed by Licensee, certifying that it has not misrepresented or overstated its relationship with Licensor or its rights to use the service mark "Element[SM]" and specifically designating the provisions in the prospectus or offering circular referring to its rights under this Agreement and demonstrating compliance with this Section 11.3; and

(c) At any time requested by Licensor, Licensee shall make any changes and shall incorporate any disclaimers required by Licensor with respect to Licensee's relationship with Licensor or its use of the service mark "Element[SM]."

11.3.2 <u>Licensor's Review of Financing and Securities Documents</u>. Licensor assumes no responsibility, liability or obligation whatsoever to review or comment on any offering circular, prospectus or financing documents of Licensee, and Licensor may rely solely and exclusively upon Licensee's disclaimers and certificates required in the preceding sections. Licensee acknowledges that Licensor's review, if any, of any offering circular, prospectus or financing documents shall (i) be limited solely to the subject of the factual accuracy of the relationship between Licensee and Licensor, including the use of the Licensed Marks in the documents and the disclaimer required therein, (ii) not constitute a review for compliance with Applicable Laws, and (iii) not constitute any kind of authorization, acceptance, agreement, endorsement or ratification of the offering, prospectus or the financing, either express or implied. Licensor shall be entitled to the full benefit of the Licensee's indemnification described in Section 11.2.5 regardless of whether Licensor has made any review or comment with respect to any offering circular, prospectus or financing documents of Licensee.

11.4 <u>No Condominium</u>. Licensee shall not sell, offer for sale, or otherwise establish any condominium, cooperative, flat, timeshare, interval ownership or any similar type of ownership or residences for all or any part of the Hotel or Premises.

27

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of
Starwood Hotels and Resorts. Please contact Therese Pritchard at (202) 508-6252
should any request be made for production of this document.

SHRW 00032

11.5    **Sublicense**. Licensee shall not grant any subfranchise or sublicense for all or any part of the System, the Licensed Marks or any other right under this Agreement.

11.6    **Dual Branding**. Subject to Section 2.2.3(b), Licensee may not Operate any part of the Hotel by using service marks other than those of Licensor.

## ARTICLE 12
## INSURANCE AND INDEMNIFICATION

12.1    **Insurance**. Licensee, at its expense, at the earlier of (i) the date on which Licensee uses any components of the System (including the Licensed Marks), or (ii) the date of commencement of any construction at the Premises (or if construction commenced prior to the Effective Date, then the Effective Date), shall obtain and maintain in full force and effect at all times throughout the Term the types and limits of insurance covering the Hotel and Premises enumerated in the Insurance Requirements as in effect from time to time. All insurance policies shall include Licensor, Starwood and their respective Affiliates, as additional insureds thereunder, as their interests may appear. Licensee's maintenance of such insurance shall not relieve Licensee of any liability or obligation to Licensor under Section 12.3.1.

12.2    **Waiver of Liability**. AS LONG AS EACH PARTY AND ANY AFFILIATES REQUESTED BY SUCH PARTY ARE NAMED AS AN ADDITIONAL INSURED UNDER THE OTHER PARTY'S POLICIES OF CASUALTY INSURANCE, OR THE POLICIES OTHERWISE PERMIT IF SUCH PARTY OR AFFILIATES ARE NOT SO NAMED, EACH PARTY HEREBY RELEASES THE OTHER PARTY AND ITS AFFILIATES, AND THEIR RESPECTIVE TRUSTEES, BENEFICIARIES, DIRECTORS, OFFICERS, EMPLOYEES AND AGENTS, AND THE SUCCESSORS AND ASSIGNS OF EACH OF THE FOREGOING, FROM ANY AND ALL LIABILITY FOR LOSS, DAMAGE OR DESTRUCTION TO ITS PROPERTY (INCLUDING IN THE CASE OF LICENSEE, THE HOTEL), WHETHER OR NOT DUE TO THE NEGLIGENT OR OTHER ACTS OR OMISSIONS OF ANY OF THE PERSONS SO RELEASED, TO THE EXTENT THE LOSS, DAMAGE OR DESTRUCTION IS COVERED BY THE INSURANCE POLICIES OF THE RELEASING PARTY.

12.3 **Indemnification.**

12.3.1 Indemnification by Licensee. Subject to Sections 12.3.2 and 12.3.3, Licensee shall defend, indemnify and hold harmless Licensor and its Affiliates and their respective trustees, beneficiaries, directors, officers, employees and agents, and the successors and assigns of each of the foregoing (collectively, the "Indemnified Parties") for, from and against any and all Claims, except to the extent such Claims are caused by Licensor's Gross Negligence or Willful Misconduct.

12.3.2 Indemnification Procedures. Any Indemnified Party shall be entitled, upon written notice to Licensee, to the timely appointment of counsel by Licensee for the defense of any Claim, which counsel shall be subject to the approval of the Indemnified Party. If, in the Indemnified Party's judgment, a conflict of interest exists between the Indemnified Party and Licensee at any time during the defense of the Indemnified Party, the Indemnified Party may appoint independent counsel of its choice for the defense of the Indemnified Party as to such Claim. In addition, regardless of whether the Indemnified Party is appointed counsel or selects independent counsel (i) the Indemnified Party shall have the right to participate in the defense of any Claim and approve any proposed settlement of such Claim, and (ii) all reasonable costs and expenses (including attorneys fees and costs) of the Indemnified Party shall be paid by Licensee. If Licensee fails to timely pay such costs and expenses (including attorneys fees and costs), the Indemnified Party shall have the right, but not the obligation, to pay such amounts and be reimbursed by Licensee for the same, together with interest thereon in accordance with Section 3.6 until paid in full. The Parties hereby acknowledge that it shall not be a defense to a demand for indemnity that less than all Claims asserted against the Indemnified Party are subject to indemnification.

12.3.3 Settlement of Indemnification Claim. In no event shall Licensee or the Indemnified Party settle any Claim without the prior written consent of the other Party, subject to the Indemnified Party's right to settle any Claim upon its assumption of the defense of such Claim, as provided in this Section 12.3.3. Upon receipt of a bona fide final settlement proposal that Licensee is prepared to accept in good faith (or upon notification by the third party claimant of its acceptance of Licensee's final settlement proposal), Licensee shall notify the Indemnified Party

28

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of Starwood Hotels and Resorts. Please contact Therese Pritchard at (202) 508-6252 should any request be made for production of this document.

SHRW 00033

in writing of the terms of such settlement proposal. The Indemnified Party shall notify Licensee in writing of its approval or rejection of the final settlement proposal within 10 days after receipt of the final settlement proposal. If the Indemnified Party fails to reject the final settlement proposal within such 10-day period, the Indemnified Party shall be deemed to have approved such final settlement proposal. If the Indemnified Party approves (or is deemed to have approved) the final settlement proposal, Licensee shall have the right to settle such Claim, provided (i) Licensee (or its insurer) pays all amounts due in connection with or by reason of such settlement, and (ii) the Indemnified Party is unconditionally released from all liability in respect of such Claim. If the Indemnified Party rejects the final settlement proposal, the Indemnified Party shall be obligated to assume the defense of such Claim and thereafter shall control the defense and any settlement of such Claim. Upon the Indemnified Party's assumption of such Claim, the Indemnified Party shall be responsible only for those costs and expenses (including attorneys fees and expenses) incurred from the date of election by the Indemnified Party in excess of (A) the amount of settlement set forth in the final settlement proposal, and (B) any attorneys' fees and costs incurred after the date of the Indemnified Party's assumption of the defense.

12.3.4   <u>Survival</u>. This Section 12.3 shall survive the expiration or any termination of this Agreement.

## ARTICLE 13
## <u>MORTGAGES</u>

13.1   <u>Comfort Letters</u>. Upon Licensee's written request at any time, and payment by Licensee to Licensor of a fee of between $1,000 and $5,000, based on Licensor's determination of its time expended in negotiating and preparing the required document, Licensor shall issue a comfort letter to a Mortgagee in form and substance acceptable to Licensor, within no less than 15 days after Licensor's receipt of such request from Licensee, which sets forth Mortgagee's conditional right to Operate the Hotel as a Brand hotel upon Licensee's default of the loan to Mortgagee.

## ARTICLE 14
## <u>BUSINESS INTERRUPTION</u>

14.1    **Payment of Fees Due to Licensor**. If any event occurs that results in an interruption in the Operation of the Hotel, Licensee nevertheless, shall be obligated to pay to Licensor all fees and other amounts that would be due to Licensor under this Agreement had such event not occurred for the period of the business interruption, regardless of whether any Business Interruption Insurance proceeds are available to Licensee to cover such amounts. Notwithstanding the foregoing, Licensee's obligations under this Section 14.1 shall be deemed satisfied if Licensee (i) obtains and maintains the Business Interruption Insurance required as part of the Insurance Requirements, and (ii) pays to Licensor all proceeds from such Business Interruption Insurance received from the insurer in respect of the fees and other amounts due to Licensor for such business interruption event. In the event of such business interruption, the fees set forth in Article 3 shall be calculated based on projections of the Gross Rooms Sales that would have been generated had the business interruption event not occurred. The projections regarding Gross Room Sales shall be derived from then-accepted practices in the hotel and insurance industries for such matters, with due consideration given to any financial projections for the Hotel most recently prepared by Licensee and provided to Licensor prior to the business interruption event.

## ARTICLE 15
## CASUALTY OR CONDEMNATION

15.1    **Casualty**.

15.1.1    **Restoration of Hotel**. If the Hotel or any portion thereof is damaged or destroyed by a Casualty, Licensee, at its expense and with due diligence, shall undertake a Restoration that will restore the Hotel to the then-current standards and image of a Brand hotel. Notwithstanding the foregoing, if (i) the Hotel is damaged or destroyed to such an extent that the cost of the Restoration exceeds 40% of the replacement cost of the Hotel (excluding land, excavations, footings and foundations), and (ii) Licensee decides either to demolish the Hotel in its entirety or cease using the building as a hotel, then Licensee may terminate this Agreement by notice to Licensor within 60 days after such Casualty. If Licensee does not provide such termination notice to Licensor within such

29

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of Starwood Hotels and Resorts.  Please contact Therese Pritchard at (202) 508-6252 should any request be made for production of this document.

SHRW 00034

time period, this Agreement shall remain in full force and effect and Licensee shall be obligated to perform the Restoration.

15.1.2   Reinstatement of Agreement. If this Agreement is terminated by Licensee pursuant to Section 15.1.1 and Licensee (or an Affiliate) determines at any time within 3 years after the date of such termination to either rebuild the Hotel or recommence using the building as a hotel, then Licensor may reinstate this Agreement by notice to Licensee (or its Affiliate) within 90 days after receipt by Licensor of notice from Licensee (or its Affiliate) of its decision to undertake a Restoration and it has commenced the same; provided, however, that if Licensee (or its Affiliate) fails to give such notice, then Licensor may reinstate this Agreement by notice to Licensee (or its Affiliate) at any time prior to the later of (i) completion of the Restoration and the full reopening of the Hotel, or (ii) 90 days after Licensor becomes aware of the Restoration. If Licensee (or its Affiliate) gives such renovation notice to Licensor and Licensor elects to reinstate this Agreement within such 90 day period, Licensee (or its Affiliate) thereupon, at its expense, shall become obligated to complete the Restoration with due diligence. If this Agreement is terminated and then reinstated pursuant to this Section 15.1.2, then the Expiration Date shall be extended by the number of days between this Agreement's earlier termination and effective date of its reinstatement. If Licensee fails to provide such notice to Licensor within the time period required under this Section 15.1.2, Licensee shall pay to Licensor upon demand, as liquidated damages and not as a penalty, an amount equal to 10.5% of the average daily revenue per available Guest Room for all Brand hotels located in North America for the previous 12 months multiplied by 1,095 days, and then multiplied by the number of Guest Rooms in the Hotel.

15.2   Condemnation. If a Condemnation shall occur as to (i) the entire Hotel or Premises, or (ii) a portion of the Hotel that makes it imprudent, unsuitable or commercially impractical to Operate the remaining portion of the Hotel in accordance with the Standards and Policies, then either Party may terminate this Agreement upon 90 days notice to the other Party, without incurring any further liability or obligation to each other past the termination date, except for those liabilities and obligations which expressly or by their nature survive the termination of this Agreement. If the Condemnation affects only a part of the Hotel that does not make it imprudent, unsuitable or commercially impractical to Operate the remainder of the Hotel in accordance with the Standards and Policies, this Agreement shall not terminate, and Licensee, at its expense and with diligence, shall undertake a Restoration in compliance with all Standards and Policies and as approved by Licensor prior to such Restoration.

## DEFAULTS AND TERMINATIONS

16.1   <u>Licensor's Remedies for Default by Licensee</u>. If Licensee fails to perform any of its duties, covenants or obligations under this Agreement, or is not in compliance with any Standards and Policies or Manuals, then Licensor, in its sole and absolute discretion, may take one or more of the following actions as it deems appropriate, none of which shall constitute a waiver or election of remedies, and Licensor reserves its right to terminate this Agreement in accordance with its terms:

(a)   Pursuant to Section 16.2.3 suspend Licensee's rights to access and use the Reservation System and/or any other Licensor Technology during such period that the default remains uncured;

(b)   If the default involves noncompliance with Standards and Policies, at Licensee's cost, send a quality assurance inspector to work with Licensee to develop a plan for compliance to be implemented by Licensee at its expense;

(c)   If the default involves actions taken by the Hotel's personnel, retrain Licensee's personnel, at Licensee's cost, including a per diem and reasonable expenses (including salary and benefits) for Licensor's employees or agents who conduct the retraining;

(d)   If the default involves guest complaints, provide credits or rebates to guests who are dissatisfied, and charge Licensee for such amounts; or

(e)   Exercise any or all other legal and equitable rights or remedies available to Licensor under this Agreement or at law or in equity.

30

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of
Starwood Hotels and Resorts.  Please contact Therese Pritchard at (202) 508-6252
should any request be made for production of this document.

SHRW 00035

16.2    **Termination by Licensor.**

16.2.1    <u>Termination by Licensor with No Cure Period</u>. In addition to Licensor's rights and remedies under this Agreement, at law and in equity, including its right to terminate pursuant to any other provision of this Agreement, Licensor may, at its option and in its sole and absolute discretion, and without waiving any rights or remedies under this Agreement, at law or in equity, immediately terminate this Agreement and all of Licensee's rights and the License granted hereunder, with no cure period, effective upon notice of termination to Licensee. The grounds for termination under this Section 16.2.1 shall include the occurrence of any of the following events:

(a)    If (i) Licensee becomes insolvent or generally fails to pay its debtors as such debts become due, (ii) Licensee makes a general assignment for the benefit of creditors, or any other similar arrangement with its creditors, (iii) a judgment of insolvency is entered against Licensee, (iv) Licensee files a voluntary petition for relief under applicable bankruptcy, insolvency, or similar debtor relief laws, (v) a petition for relief under applicable bankruptcy, insolvency or similar debtor relief laws is filed against and consented to by Licensee, (vi) the appointment (or petition or application for appointment) of a receiver, custodian, trustee, conservator or liquidator to oversee all or any substantial part of a Licensee's assets or the conduct of its business, (vii) Licensee takes any action for dissolution of its operations, or (viii) any other similar proceedings in any relevant jurisdiction affecting Licensee;

(b)    If (i) a final judgment against Licensee in excess of $250,000 remains unsatisfied or of record for 60 days or longer (unless a bond is filed or other steps are taken to effectively stay enforcement of such judgment in the relevant jurisdiction), or (ii) a levy is issued or attachment is made upon the Premises, Hotel or upon any property used in the Hotel, and such levy or attachment is not discharged or the property is not redeemed within 30 days of such levy or attachment;

(c)    If Licensee abandons, loses possession, or ceases to Operate all or any part of the Hotel and the business conducted under this Agreement for 24 hours or longer (except as otherwise expressly provided in this Agreement) or defaults under any mortgage, deed of trust or lease with Licensor or any third party affecting the Hotel, and Licensor or such third party treats such act or omission as a default, and Licensee fails to

cure such default to the satisfaction of Licensor or such third party within any applicable cure period to Licensee by Licensor or such third party;

(d)    If any Individual holding an Ownership Interest in Licensee or in any Parent Company, or any officer, director, trustee, partner or member of Licensee, is convicted of a felony, or any other crime or offense (even if not a crime) that Licensor deems is likely to adversely affect the Hotel, the System, any other Brand hotel, the Licensor IPR or the goodwill associated therewith, or Licensor's or any of its Affiliates status or qualification under any Gaming Laws and Licensee does not satisfy Licensor within 20 days that such Individual no longer has any Ownership Interest and is not associated with Licensee and the Hotel;

(e)    If Licensee or any of the Equity Owners or Parent Companies fails to comply with any duty, covenant or obligation under Article 11 of this Agreement;

(f)    If Licensee makes, or has made, any materially false statement or report to Licensor in connection with this Agreement, including Section 18.2, Exhibit A or the Application, has maintained false book(s) or record(s) of account or has submitted false report(s) or information to Licensor, or if Licensee is determined to have under-reported Licensee's Gross Rooms Sales by five percent or more for any period of time;

(g)    If Licensee receives from Licensor two or more notices to cure the same or similar defaults under this Agreement during any 24-month period;

(h)    If Licensor determines that the Hotel is being Operated in any way that endangers the health or safety of any Individual at the Hotel or privacy of the guests at the Hotel;

31

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of Starwood Hotels and Resorts. Please contact Therese Pritchard at (202) 508-6252 should any request be made for production of this document.

SHRW 00036

(i)     If Licensee discloses, uses, permits the use of, copies, duplicates, records, transmits or otherwise reproduces any Confidential Information, including the Manuals, without Licensor's prior approval;

(j)     If Licensee fails to identify the Hotel to the public as a Brand hotel;

(k)     If Licensee or any of the Equity Owners or Parent Companies violates or causes Licensor or any of its Affiliates to be in violation of Gaming Laws or any Anti-Terrorism Laws or becomes subject to any "blocking" of assets under any Anti-Terrorism Laws; or

(l)     If Licensee directly or indirectly acquires, is acquired by, merged with or otherwise becomes, a Competitor.

16.2.2   Termination by Licensor Subject to Cure Period. In addition to Licensor's other rights and remedies under this Agreement and at law and in equity, including its right to terminate pursuant to any other provision of this Agreement, Licensor may, at its option, and without waiving any rights under this Agreement or at law or in equity, terminate this Agreement and all of Licensee's rights and the License granted hereunder, provided that (i) Licensor provides a notice of default to Licensee, which notice shall reasonably identify one or more defaults by Licensee, (ii) a default under (a) below is not fully cured within 15 days after delivery of the notice and all other default(s) are not fully cured within 30 days (or longer, if required by Applicable Law) after delivery of the notice, and (iii) the notice states that if Licensee has not cured the default(s) to Licensor's satisfaction on expiration of the cure period, (A) the termination will be effective automatically and without further notice, or (B) Licensor may terminate the agreement effective immediately upon notice of termination. The grounds for termination under this Section 16.2.2 shall include the occurrence of any of the following events:

(a)     If Licensee fails to pay any financial obligation pursuant to this Agreement, or any other indebtedness to Licensor or its Affiliates;

(b)     If Licensee fails to complete the work required, and to strictly adhere to the

dates set forth, in any Property Improvement Plan, and in the construction of the Hotel and Premises and open the Hotel for business in accordance with the requirements and dates in Article 6 on or prior to the Anticipated Opening Date;

      (c)    If Licensee fails to Operate the Hotel in compliance with the Standards and Policies;

      (d)    If Licensee does not pass the inspections performed by Licensor or its inspectors to determine Licensee's compliance with Standards and Policies, the condition of the Hotel, guest satisfaction or any other aspects of the Hotel or its Operation, considered singly or in the aggregate;

      (e)    If Licensee fails to obtain or maintain any insurance coverage required under Article 12;

      (f)    If Licensee fails to comply with any Applicable Law in any material respect;

      (g)    If Licensee or any Guarantors (if any) default in any obligation under any other agreement with Licensor or any Affiliates;

      (h)    If Licensee uses or permits to be used any Licensed Marks other than as expressly permitted in this Agreement; or

      (i)    If Licensee fails to perform any other duty, obligation, covenant, term, condition, or breaches any other representation, warranty or certification, in this Agreement which is not a ground for immediate termination under Section 16.2.1.

32

Element 03/2007
L:\03 - Applications\element IL Chicago O'Hare\Contract\License Agreement\2007 06 19 element License Agreement 2007 Chicago O'Hare.doc

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of Starwood Hotels and Resorts. Please contact Therese Pritchard at (202) 508-6252 should any request be made for production of this document.

SHRW 00037

16.2.3 <u>Suspension of Use of Licensor Technology Prior to Termination</u>. Licensor, in its sole and absolute discretion, may suspend Licensee's access to and use of the Reservation System and/or any other Licensor Technology, effective 10 days after Licensee's receipt of a notice of default under Section 16.2.2 if the defaults specified in the notice have not been cured to the Licensor's satisfaction. No such suspension shall constitute a waiver or election of remedies, and Licensor reserves its right to terminate this Agreement in accordance with its terms.

16.2.4 <u>Additional Termination by Licensor</u>. Licensor may also terminate the Agreement as provided in Section 20.2.

16.3 <u>Termination by Licensee</u>.

16.3.1 <u>Termination without Cause</u>. Licensee may terminate this Agreement at any time by providing written notice to Licensor and payment of liquidated damages calculated as follows:

(a) If Licensee provides at least 6 months prior written notice of such termination, the amount calculated pursuant to Section 16.4; or

(b) If Licensee fails to provide Licensor with at least 6 months prior written notice of such termination, the sum of (i) the amount calculated pursuant to Section 16.4, plus (ii) the amount equal to the monthly average for the last 12 months (or the number of actual months the Hotel has been open if open less than 12 months) of License Fees and Program Fees (and fees for GSO and the Global Preference Program, if separately charged), multiplied by six, or if the Hotel has never opened under the Brand, an amount equal to $3,600.00 multiplied by the number of Guest Rooms in the Hotel.

16.3.2 <u>Termination for Conversion of Hotel in Restricted Area</u>. If Licensor or any of its Affiliates, during the Restriction Period, convert a hotel to a Brand hotel in the Restricted Area as provided in Section 2.2.1(iii), then Licensee shall have the right, as its sole and exclusive remedy, exercisable at any time within 12 months after the conversion, to terminate this Agreement on six months written notice to Licensor. Upon such

termination, Licensee shall be obligated to pay only such fees as have accrued through the effective and
termination, if Licensee promptly complies with the provisions of Section 16.5.

Case: 1:13-cv-00982 Document #: 10-1 Filed: 02/06/13 Page 15 of 128 PageID #:427

16.3.3   Termination by Licensee Subject to Cure Period. Licensee may, at its option, and without waiving any rights under this Agreement or Applicable Law, terminate this Agreement for any material default by Licensor, provided that (i) Licensee provided written notice 30 days (or such longer period as that period of time for notice and cure for a Licensee default, if Licensee is entitled to a longer notice and cure period for operational defaults under Applicable Law) prior to the termination date, (ii) the notice reasonably identified one or more material defaults by Licensor of its obligations, and (iii) the default(s) were not remedied by Licensor within such 30 days (or longer) cure period.

16.4   **Liquidated Damages.**

16.4.1   Computation of Liquidated Damages. Upon termination of this Agreement by Licensor pursuant to Section 16.2.1 or 16.2.2, or upon termination of this Agreement by Licensee pursuant to Section 16.3.1(a), Licensee shall promptly pay all amounts due Licensor, which amounts shall include actual damages (other than future License Fees and Program Fees, which are liquidated in this Section 16.4), costs and expenses (including attorneys' fees and expenses) incurred by Licensor as a result of the termination, and liquidated damages calculated using the applicable of the following three paragraphs:

(a)   if the termination date is on or after the 1st year anniversary of the Opening Date, damages also shall include (as liquidated damages and not as a penalty), an amount equal to the monthly average for the License Fees and Program Fees (and fees for GSO and the Global Preference Program, if separately charged) due and payable under this Agreement (without consideration of any provision in this Agreement reducing or deferring any portion of such fees and charges), for the last 12 full calendar months of the Hotel's Operation, multiplied by 36, or by the actual number of months (prorated for fractional months) left in the Term, if less than 36;

33

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of
Starwood Hotels and Resorts.  Please contact Therese Pritchard at (202) 508-6252
should any request be made for production of this document.

SHRW 00038

(b)    if the termination date is prior to the 1st year anniversary of the Opening Date, damages also shall include (as liquidated damages and not as a penalty), an amount equal to $3,600 multiplied by the number of Guest Rooms in the Hotel; or

(c)    if the termination of this Agreement is a Consequential Termination, Licensee shall pay to Licensor (as liquidated damages and not as a penalty) an amount equal to 200% of the amount of liquidated damages calculated pursuant to sub-paragraphs (a) or (b) above, as applicable.

16.4.2    <u>Reasonable Estimate of Damages.</u> The Parties recognize the difficulty of ascertaining damages to Licensor resulting from premature termination of this Agreement, and have provided for liquidated damages which represent their reasonable estimate of the damage from, among other things, the loss of revenue, market representation, customer confusion, changing market and economic factors, loss of location and damage to the Licensed Marks and goodwill, which will result from premature termination, plus for a Consequential Termination the additional damage which will result from, among other things, the multiple effect on the Brand's competitive position, the Licensed Marks' greater loss of goodwill and customer confusion and Licensor not receiving full consideration from the sale of the Hotel. If the liquidated damages as calculated above are not enforceable, Licensee agrees that Licensor has not waived its right to seek actual damages from Licensee, and that the appropriate measure of actual damages is the total fees that would have been paid to Licensor for the remaining Term of the Agreement discounted to present value.

16.5    <u>Licensee's Post-Termination Obligations.</u> Immediately upon the expiration or termination of this Agreement, all rights of Licensee under this Agreement shall terminate and in addition to Licensee's obligation to pay liquidated damages pursuant to Section 16.4, the terms of this Section 16.5 shall apply.

16.5.1    <u>Debts.</u> Licensee shall pay all amounts owing to Licensor and its Affiliates arising or accruing prior to the expiration or termination of this Agreement, even if invoiced to Licensee after such expiration or termination.

16.5.2    <u>Complete De-Identification of Hotel and Cessation of Use of Licensed Marks.</u> Upon the

expiration or termination of this Agreement, Licensee at its expense shall:

(a)     immediately cease to use the Licensor Technology (including the Reservation System) and all other System Programs and Services;

(b)     not directly or indirectly at any time or in any manner (i) use any Licensed Mark or other Licensor IPR, or any colorable imitation or other indicia of the Brand, (ii) indicate in any marketing, advertising or other media, including the Internet, that Licensee is a former licensee of the Brand, or (iii) represent that the Hotel is or was Operated as a Brand hotel or otherwise associated with the System;

(c)     take such action as may be required to cancel all fictitious or assumed name registrations relating to Licensee's use of any Licensed Mark;

(d)     notify the telephone company and all telephone directory publishers of the termination or expiration of Licensee's right to use any telephone number and any regular, classified or other telephone directory listings associated with any Licensed Mark and to authorize transfer of the number to Licensor or at Licensor's direction;

(e)     remove from the Hotel, and discontinue using for any purpose, all FF&E, Supplies, Materials, Signage, and other materials that display any of the Licensed Marks or any distinctive features, images, or designs associated with the Brand, and make such alterations as may be necessary to distinguish the Hotel so clearly from its former appearance as a Brand hotel and from other Brand hotels as to prevent any possibility of confusion by the public, including such actions as required in any de-identification checklist provided to Licensee;

34

Element 03/2007
L:\03 - Applications\element IL Chicago O'Hare\Contract\License Agreement\2007 06 19 element License Agreement 2007 Chicago O'Hare.doc

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of
Starwood Hotels and Resorts. Please contact Therese Pritchard at (202) 508-6252
should any request be made for production of this document.

SHRW 00039

(f)     immediately cease using all Licensor Technology and comply fully with Licensee's post-termination obligations in any license agreements for the Licensor Technology; and

(g)     provide to Licensor, within seven days after the effective date of expiration or termination, evidence satisfactory to Licensor of Licensee's compliance with its obligations under this Section 16.5.2.

16.5.3   <u>Licensor's Repurchase Option</u>. Licensee shall give to Licensor and its Affiliates a reasonable opportunity to purchase from Licensee at their depreciated book value any and all FF&E, Supplies, and other items that bear any of the Licensed Marks, provided that Licensor's failure to purchase any such items shall not give Licensee the right to use such items and Licensor shall have no duty to purchase such items.

16.5.4   <u>Return Proprietary Materials</u>. Licensee shall cease to use the Manuals and all other Confidential Information, delete all such information from all electronic media and computer systems in Licensee's possession or control and return to Licensor all hard copies of Manuals and other items constituting Confidential Information, including all copies thereof, in Licensee's possession or control. Licensee shall retain no copy or record of any of the foregoing items, provided that Licensee may retain Licensee's copy of this Agreement, any correspondence between the Parties, and any other document which Licensee reasonably needs for compliance with any Applicable Law.

16.5.5   <u>Daily Damages</u>. If Licensee fails to strictly comply with this Section 16.5, then Licensee shall pay to Licensor upon demand, as additional liquidated damages and not as a penalty, an amount equal to 10% of Licensee's average published room rate per night multiplied by the number of Guest Rooms at the Hotel for each day Licensee fails to comply with this Section 16.5.

16.5.6   <u>Reservations</u>. Licensee shall honor the terms and conditions of all individual reservations booked or group agreements executed before the expiration or termination of this Agreement which the guest does not elect to terminate, provided that Licensor may notify such guests that the Hotel will no longer be a Brand hotel or a part of the System. Licensee shall also after expiration or termination continue to resolve in compliance with

this Agreement guest complaints which arise from guest stays or reservations taken through the date of expiration or termination.

Case: 1:13-cv-00982 Document #: 10-1 Filed: 02/06/13 Page 19 of 128 PageID #:431

16.5.7  Survival. This Section 16.5 shall survive the expiration or termination of this Agreement.

## ARTICLE 17
## DISPUTE RESOLUTION

### 17.1  Alternative Dispute Resolution Required.

17.1.1  Mediator. All controversies, disputes, or claims between the Parties, including their respective Affiliates, owners, officers, directors, agents, and employees, arising from or relating to this Agreement shall on demand of either Party be submitted to mediation administered by Judicial Arbitration and Mediation Service, Inc. ("JAMS") or its successors. If JAMS no longer exists or is unable to administer the mediation of the dispute in accordance with this Article 17, and the Parties cannot agree on the identity of a substitute mediation service provider within 10 days after notice by the complaining Party, then such Party shall petition a court of competent jurisdiction located in the state where Licensor's franchise division then has its principal place of business, to identify a substitute mediation service provider, who will administer the dispute resolution process in accordance with this Article 17.

17.1.2  Mediation Procedures. The Parties shall attempt to settle the dispute by participating in at least 8 hours of mediation at the offices of the Mediator closest to the Licensor's franchise office. The complaining Party must notify the other Party that a dispute exists and then contact the Mediator to schedule the mediation conference. A designated individual mediator will then be selected in accordance with the rules of the Mediator to conduct the mediation, provided that such mediator must have experience in the hospitality industry and franchise of hotels, and must not have any conflict of interest. The mediation proceedings shall be held in the city where

35

Element 03/2007
L:\03 - Applications\element IL Chicago O'Hare\Contract\License Agreement\2007 06 19 element License Agreement 2007 Chicago O'Hare.doc

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of          SHRW 00040
Starwood Hotels and Resorts.  Please contact Therese Pritchard at (202) 508-6252
should any request be made for production of this document.

Licensor's franchise division then has its principal place of business or other place designated by the Mediator. The mediation will be a non-binding conference between the Parties conducted in accordance with the applicable rules and procedures of the Mediator. Neither Party may initiate litigation proceedings with respect to any dispute until the mediation of such dispute is complete with the sole exception of seeking emergency relief from a court of competent jurisdiction, as described in this Article 17. Any mediation will be considered complete (i) if the Parties enter into an agreement to resolve the dispute, (ii) with respect to the Party submitting the dispute to mediation, if the other Party fails to appear at or participate in a reasonably scheduled mediation conference, or (iii) if the dispute is not resolved within 5 days after the mediation is commenced.

17.1.3 _Alternative Dispute Resolution Not Required for Certain Disputes._ Notwithstanding anything in this Article 17 to the contrary, the Parties shall have the right to commence litigation or other legal proceedings with respect to any claims relating to (i) preserving or protecting Licensor Proprietary Rights, (ii) emergency or injunctive relief, and/or (iii) enforcement of the dispute resolution provisions of this Agreement. In furtherance of the foregoing, Licensee acknowledges and agrees that (i) Licensor and its Affiliates shall have the right to obtain in any court of competent jurisdiction, without bond, but upon notice required under Applicable Law, any injunctive relief, including temporary restraining orders and preliminary injunctions, against conduct or threatened conduct for which no adequate remedy at law may be available, or which might cause irreparable harm to Licensor or its Affiliates, (ii) such injunctive relief shall be in addition to such further and other relief as may be available to Licensor or its Affiliates at law or in equity, (iii) Licensee's sole remedy in the event of the entry of such injunction, shall be its dissolution, if warranted, upon hearing duly held, and (iv) LICENSEE, TO THE FULLEST EXTENT PERMITTED UNDER LAW, WAIVES ALL CLAIMS, DEMANDS AND CAUSES OF ACTION FOR DAMAGES BY REASON OF THE WRONGFUL ISSUANCE OF ANY SUCH INJUNCTION. Without limiting the generality of the foregoing, Licensee acknowledges that any violation of Article 7, Article 8, Article 11, or Section 16.5 would result in irreparable injury to Licensor or its Affiliates for which no adequate remedy at law may be available. ACCORDINGLY, LICENSEE CONSENTS TO THE ISSUANCE OF AN INJUNCTION PROHIBITING ANY CONDUCT OR THREATENED CONDUCT IN VIOLATION OF ARTICLE 7, ARTICLE 8, ARTICLE 11 OR SECTION 16.5, AND AGREES THAT THE EXISTENCE OF ANY CLAIM LICENSEE MAY HAVE AGAINST LICENSOR, WHETHER ARISING FROM THIS AGREEMENT OR OTHERWISE, SHALL NOT CONSTITUTE A DEFENSE TO THE ENFORCEMENT OF ANY TERMS OF ARTICLE 7, ARTICLE 8, ARTICLE 11 OR SECTION 16.5.

17.1.4    **Time Period for Claim.** Except as otherwise prohibited or limited by Applicable Law, any failure, neglect, or delay of a Party to assert any breach or violation of any legal or equitable right arising from, or in connection with this Agreement shall constitute a waiver of such right and shall preclude the exercise or enforcement of any legal or equitable remedy arising therefrom, unless written notice specifying such breach or violation is provided to the other Party within 24 months after the later of: (a) the date of such breach or violation; or (b) the date of discovery of the facts (or the date the facts could have been discovered, using reasonable diligence) giving rise to such breach or violation. Such written notice shall not toll any applicable statute of limitations.

17.2    **Compensation of Mediator.** The Parties agree to share equally the costs, including fees, of the Mediator selected or appointed under this Article 17. As soon as practicable after selection of the Mediator, the Mediator or his designated representative shall determine a reasonable estimate of the anticipated fees and costs, and send a statement to each Party setting forth that Party's equal share of the fees and costs. Each Party shall deposit the required sum with the Mediator, as applicable, within 10 days after receipt of the statement.

17.3    **Prevailing Party's Expenses.** The prevailing Party in any litigation or other legal action or proceeding arising out of or related to this Agreement shall be entitled to recover from the losing Party all reasonable fees, costs and expenses incurred by the prevailing Party in connection with such litigation or other legal action or proceeding (including any appeals and actions to enforce any court judgments), including reasonable fees, expenses and disbursements for attorneys, experts and other third parties engaged in connection therewith and its share of Mediator fees. If a Party prevails on some, but not all, of its claims, such Party shall be entitled to recover an equitable amount of such fees, expenses and disbursements, as determined by the court. All amounts recovered by the prevailing Party under this Section 17.3 shall be separate from, and in addition to, any other amount included in any award or judgment rendered in favor of such Party.

Element 03/2007
L:\03 – Applications\element IL Chicago O'Hare\Contract\License Agreement\2007 06 19 element License Agreement 2007 Chicago O'Hare.doc

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of Starwood Hotels and Resorts. Please contact Therese Pritchard at (202) 508-6252 should any request be made for production of this document.

SHRW 00041

17.4 **Jurisdiction and Venue**. Licensee irrevocably submits to the jurisdiction of the courts of the State of New York in any litigation or other legal action or proceeding, arising out of or relating to this Agreement or any other dispute between the Parties, and Licensee irrevocably agrees that all claims in respect of any such litigation, action or proceeding must be brought and/or defended in the courts of the State of New York, except with respect to matters that are under the exclusive jurisdiction of the Federal Courts of the United States, which shall be brought and/or defended in the Federal District Court sitting in New York, New York. Licensee agrees that service of process for purposes of any such litigation, action or proceeding need not be personally served or served within the State of New York, but may be served with the same effect as if Licensee were served within the State of New York, by certified mail or any other means permitted by Applicable Law addressed to Licensee at the address set forth herein. Nothing in this Section 17.4 shall affect Licensor's rights to pursue any litigation or other legal action or proceeding in any other appropriate jurisdiction, including any litigation, action or proceeding brought by Licensor to enforce any judgment against Licensee entered by a State or Federal Court.

17.5 **WAIVERS**.

17.5.1 JURISDICTION AND VENUE. LICENSEE WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL DEFENSES BASED ON LACK OF JURISDICTION OR INCONVENIENT VENUE OR FORUM FOR ANY LITIGATION OR OTHER LEGAL ACTION OR PROCEEDING PURSUED BY LICENSOR IN THE JURISDICTION AND VENUE SPECIFIED IN SECTION 17.4.

17.5.2 TRIAL BY JURY. EACH PARTY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, TRIAL BY JURY OF ALL CLAIMS ARISING OUT OF OR RELATING TO THIS AGREEMENT.

17.5.3 CLASS ACTIONS. LICENSEE AGREES THAT, FOR LICENSOR'S SYSTEM TO FUNCTION PROPERLY, LICENSOR SHOULD NOT BE BURDENED WITH THE COSTS OF LITIGATING SYSTEM-WIDE CLAIMS. ACCORDINGLY, LICENSEE AGREES THAT ANY DISAGREEMENT BETWEEN LICENSEE AND LICENSOR SHALL BE CONSIDERED UNIQUE AS TO ITS FACTS AND SHALL NOT BE BROUGHT AS A CLASS ACTION, AND LICENSEE WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO BRING A CLASS ACTION OR MULTI-PLAINTIFF, CONSOLIDATED OR

LAW, ALL RIGHTS TO BRING A CLASS ACTION OR INDIVIDUAL,
COLLECTIVE ACTION AGAINST LICENSOR OR ANY OF ITS AFFILIATES.

17.5.4   DECISIONS IN PRIOR CLAIMS. IN ADDITION, LICENSEE AGREES THAT IN
ANY LITIGATION BETWEEN THE PARTIES, THE COURT SHALL NOT BE PRECLUDED FROM MAKING
ITS OWN INDEPENDENT DETERMINATION OF THE ISSUES IN QUESTION, NOTWITHSTANDING THE
SIMILARITY OF ISSUES IN ANY OTHER LITIGATION INVOLVING LICENSOR AND ANY OTHER
LICENSEE OR ANY OF THEIR AFFILIATES, AND EACH PARTY WAIVES, TO THE FULLEST EXTENT
PERMITTED BY LAW, ALL RIGHTS TO CLAIM THAT A PRIOR DISPOSITION OF THE SAME OR
SIMILAR ISSUES PRECLUDES SUCH INDEPENDENT DETERMINATION.

17.5.5   PUNITIVE DAMAGES. NOTWITHSTANDING ANYTHING TO THE CONTRARY
IN THIS AGREEMENT OR UNDER APPLICABLE LAW, IN ANY LAW SUIT, LEGAL ACTION OR
PROCEEDING BETWEEN THE PARTIES ARISING FROM OR RELATING TO THIS AGREEMENT OR THE
HOTEL, THE PARTIES UNCONDITIONALLY AND IRREVOCABLY WAIVE AND DISCLAIM ALL
RIGHTS TO ANY CONSEQUENTIAL, PUNITIVE, EXEMPLARY, STATUTORY OR TREBLE DAMAGES
(OTHER THAN LICENSOR'S STATUTORY RIGHTS AND REMEDIES RELATING TO TRADEMARKS,
COPYRIGHTS, TRADE SECRETS AND OTHER INTELLECTUAL PROPERTY), AND ACKNOWLEDGE
AND AGREE THAT THE RIGHTS AND REMEDIES IN THIS AGREEMENT, AND ALL OTHER RIGHTS
AND REMEDIES AT LAW AND IN EQUITY, WILL BE ADEQUATE IN ALL CIRCUMSTANCES FOR ANY
CLAIMS THE PARTIES MIGHT HAVE WITH RESPECT THERETO.

17.6   Survival and Severance. The provisions of this Article 17 are severable from the other provisions
of this Agreement and shall survive and not be merged into any termination or expiration of this Agreement or any
judgment or award entered in connection with any dispute, regardless of whether such dispute arises before or after
termination or expiration of this Agreement, and regardless of whether the related mediation or litigation
proceedings occur before or after termination or expiration of this Agreement. If any part of this Article 17 is held to

37

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of
Starwood Hotels and Resorts. Please contact Therese Pritchard at (202) 508-6252
should any request be made for production of this document.

SHRW 00042

be unenforceable, it shall be severed and shall not affect either the duty to mediate or any other part of this Article 17.

## ARTICLE 18
### REPRESENTATIONS, WARRANTIES AND ACKNOWLEDGEMENTS

18.1     <u>Licensor's Representations and Warranties</u>. Licensor represents and warrants to Licensee as of the Effective Date that:

18.1.1     <u>Organization and Authority</u>. Licensor is duly organized, validly existing, and in good standing under the laws of the state of its organization, is duly qualified to do business in the state in which the Hotel is located (to the extent required by Applicable Law), and has full power, authority, and legal right to execute, perform, and timely observe all of the provisions of this Agreement to be performed or observed by Licensor. Licensor's execution, delivery, and performance of this Agreement have been duly authorized by all necessary action on the part of Licensor.

18.1.2     <u>Enforceability</u>. This Agreement constitutes a valid and binding obligation of Licensor and does not constitute a breach of or default under the organizational and governing documents of Licensor or any Applicable Law to which Licensor is subject or by which it or any substantial portion of its assets is bound or affected.

18.1.3     <u>Third-Party Approvals</u>. No approval of any third party is required for Licensor's execution and performance of this Agreement that has not been obtained prior to the execution of this Agreement.

18.2     <u>Licensee's Representations and Warranties</u>. Licensee represents and warrants to Licensor as of the Effective Date that:

18.2.1     <u>Organization and Authority</u>. Licensee is duly organized, validly existing and in good standing under the laws of the state of its organization, is duly qualified to do business in the state in which the Hotel is located and has full power, authority and legal right to execute, perform, and timely observe all of the provisions

is located, and has full power, authority and legal right to execute, perform, and timely observe all of the provisions of this Agreement to be performed or observed by Licensee. Licensee's execution, delivery and performance of this Agreement have been duly authorized by all necessary action on the part of Licensee.

      18.2.2   <u>Enforceability</u>. This Agreement constitutes a valid and binding obligation of Licensee and does not and will not constitute a breach of or default under any of the organizational or governing documents of Licensee or the terms, conditions, or provisions of any Applicable Law to which Licensee is subject or by which it or any substantial portion of its assets (including the Hotel) is bound or affected.

      18.2.3   <u>Third-Party Approvals and Contracts</u>. No approval of any third party (including any ground lessor or the holder of any Mortgage) is required for Licensee's execution and performance of this Agreement that has not been obtained prior to the execution of this Agreement. Neither Licensee nor any affiliate is a party to any agreement for the franchising of the Hotel or any portion thereof that would conflict with this Agreement.

      18.2.4   <u>Litigation</u>. To Licensee's knowledge, there is no litigation, proceeding or governmental investigation pending or threatened against Licensee that could adversely affect the validity of this Agreement or the ability of Licensee to comply with its obligations under this Agreement.

      18.2.5   <u>Financial Statements</u>. The Application, financial statements and other documents submitted by Licensee to Licensor prior to the execution of this Agreement: (i) are accurate and complete as of their respective dates and as of the Effective Date, and (ii) do not omit the statement of any material fact necessary to make them not misleading.

      18.2.6   <u>Ownership of Hotel and Licensee</u>. All information set forth in Exhibit A and the Application (i) is accurate and complete as of their respective dates and as of the Effective Date, and (ii) does not

38

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of Starwood Hotels and Resorts. Please contact Therese Pritchard at (202) 508-6252 should any request be made for production of this document.

SHRW 00043

omit the statement of any material fact necessary to make them not misleading. Licensee is the sole owner or lessee of the Hotel (including the building and all of its contents) and the sole owner of the fee title to, or leasehold estate in, the Premises. Licensee has full power, authority and legal right to own and/or lease such real and personal property.

      18.2.7  <u>Compliance with Laws.</u> To Licensee's knowledge (i) the Hotel and the Premises are in compliance with all Applicable Laws (including all Approvals), (ii) all Approvals required by Section 6 and for the Operation of the Hotel in accordance with this Agreement have been issued and are in full force and effect, and (iii) no condition exists at the Hotel or the Premises that, with notice or the passage of time, would result in a violation of any Applicable Laws or Approvals.

      18.2.8  <u>Anti-Terrorism and Gaming Laws.</u> Without limiting the generality of Section 18.2.7, neither Licensee, nor any Equity Owner, Parent Company or Guarantor, if any, nor any of their respective Affiliates, nor the shareholders, trustees, beneficiaries, directors, officers, employees or agents of any of the foregoing, (i) is in violation of any Anti-Terrorism Laws or Gaming Laws, or (ii) would cause Licensor or any of its Affiliates to be in violation of any Anti-Terrorism Laws or Gaming Laws. No assets or interests (including the Hotel) of Licensee, nor any Equity Owner, Parent Company or Guarantor, if any, nor any of their respective Affiliates, nor the shareholders, trustees, beneficiaries, directors, officers, employees or agents of the any of the foregoing, is subject to any restrictions under any Anti-Terrorism Laws or Gaming Laws.

      18.2.9  <u>Environmental Matters.</u> Without limiting the generality of Section 18.2.7, to Licensee's knowledge (i) no hazardous or toxic materials, substances or wastes are or have been manufactured, generated, processed, used, handled, stored, disposed, released or discharged at, on, in, over, under or from the Hotel, the Premises or the real property adjacent to the Hotel, (ii) there are no soil, water, air, mineral, chemical or environmental conditions or contamination at, on, in, over, under or from the Hotel, the Premises or real property adjacent to the Hotel that does, or with the passage of time will, require any remediation, abatement, removal, clean up, monitoring or other corrective action, or notice or reporting to any Governmental Authority or employees or patrons of the Hotel, pose any threat to the health and safety of the employees or patrons of the Hotel or the environmental or natural resources in general, or otherwise require, based on Applicable Law or standards of prudent ownership, any remediation, abatement, removal, clean up, monitoring or other corrective action; (iii) there

prudent ownership, any remediation, abatement, removal, clean up, monitoring or other work; (iii) there exists no identifiable threat of the contamination of the Premises by release of hazardous or toxic materials, substances or wastes or otherwise from existing sources adjacent to the Hotel, and (iv) there are no underground storage tanks on the Premises.

18.3 **LICENSEE'S ACKNOWLEDGEMENTS**. LICENSEE ACKNOWLEDGES AND CONFIRMS TO LICENSOR THAT:

18.3.1 **UFOC AND AGREEMENT PROVIDED TO LICENSEE**. LICENSOR HAS PROVIDED LICENSEE WITH A FRANCHISE OFFERING CIRCULAR NOT LATER THAN THE EARLIER OF (I) THE FIRST PERSONAL MEETING HELD TO DISCUSS THE SALE OF A LICENSE, (II) 10 BUSINESS DAYS (14 DAYS IN ILLINOIS) BEFORE THE EXECUTION OF THE AGREEMENT, OR (III) 10 BUSINESS DAYS (14 DAYS IN ILLINOIS) BEFORE ANY PAYMENT OF ANY CONSIDERATION TO LICENSOR. LICENSEE HAS READ SUCH FRANCHISE OFFERING CIRCULAR AND UNDERSTANDS ITS CONTENTS. LICENSOR HAS PROVIDED LICENSEE WITH A COPY OF THE AGREEMENT AND ALL RELATED DOCUMENTS, FULLY COMPLETED, AT LEAST FIVE BUSINESS DAYS PRIOR TO EXECUTION.

18.3.2 **INFORMED INVESTOR**. LICENSEE (I) HAS HAD THE BENEFIT OF LEGAL COUNSEL AND ALL OTHER ADVISORS LICENSEE DEEMED NECESSARY OR ADVISABLE TO ASSIST LICENSEE IN THE NEGOTIATION AND PREPARATION OF THIS AGREEMENT, AND (II) LICENSOR'S ATTORNEYS HAVE NOT REPRESENTED LICENSEE, OR PROVIDED ANY LEGAL COUNSEL OR OTHER ADVICE TO LICENSEE, WITH RESPECT TO THIS AGREEMENT.

18.3.3 **BUSINESS RISKS**. LICENSEE (I) IS A SOPHISTICATED PERSON, WITH SUBSTANTIAL EXPERIENCE IN THE OWNERSHIP AND OPERATION OF HOTELS, (II) RECOGNIZES THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT INVOLVE SUBSTANTIAL BUSINESS RISKS, AND THAT LICENSEE'S AND THE HOTEL'S SUCCESS WILL BE LARGELY DEPENDENT UPON

Element 03/2007
L:\03 - Applications\element IL Chicago O'Hare\Contract\License Agreement\2007 06 19 element License Agreement 2007 Chicago O'Hare.doc

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of     SHRW 00044
Starwood Hotels and Resorts. Please contact Therese Pritchard at (202) 508-6252
should any request be made for production of this document.

THE ABILITIES AND EFFORTS OF LICENSEE AS AN INDEPENDENT BUSINESS OWNER, AND (III) HAS MADE AN INDEPENDENT INVESTIGATION OF ALL ASPECTS OF THIS AGREEMENT LICENSEE DEEMS NECESSARY OR ADVISABLE.

18.3.4  NO HOTEL SITE RECOMMENDATION. LICENSOR'S ACCEPTANCE OF THE SITE FOR THE HOTEL DOES NOT CONSTITUTE A RECOMMENDATION OR ENDORSEMENT OF THE LOCATION OF THE FACILITY BY LICENSOR, NOR ANY ASSURANCE BY LICENSOR THAT THE OPERATION OF A HOTEL AT SUCH LOCATION WILL BE SUCCESSFUL OR PROFITABLE.

18.3.5  TERRITORIAL PROTECTION. THE AGREEMENT AND THE LICENSE GRANTED HEREUNDER APPLIES ONLY TO THE HOTEL AND, EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS AGREEMENT, THERE IS NO "EXCLUSIVE" OR IMPLIED "PROTECTED" OR OTHER TERRITORIAL RIGHTS GRANTED OUTSIDE THE PREMISES OR IN ANY MARKET AREA CONTIGUOUS TO THE PREMISES.

18.3.6  NO ADDITIONAL REPRESENTATIONS OR WARRANTIES. LICENSOR HAS NOT MADE ANY PROMISES, REPRESENTATIONS, WARRANTIES OR GUARANTIES OF ANY KIND WHATSOEVER TO LICENSEE, EXCEPT AS SPECIFICALLY SET FORTH IN THIS AGREEMENT, AND NO PERSON IS AUTHORIZED TO MAKE ANY PROMISES, REPRESENTATIONS, WARRANTIES OR GUARANTIES ON BEHALF OF LICENSOR, EXCEPT AS SPECIFICALLY SET FORTH IN THIS AGREEMENT.

18.3.7  NO RELIANCE. LICENSOR HAS NOT MADE, AND LICENSEE HAS NOT RECEIVED OR RELIED UPON ANY WRITTEN OR VERBAL STATEMENTS OR PROJECTIONS OF REVENUE, SALES, EXPENSES, INCOME, RATES, AVERAGE DAILY RATE, OCCUPANCY, REVENUE PER AVAILABLE ROOM, RESERVATION SYSTEM CONTRIBUTION, PROFITABILITY, VALUE OF THE HOTEL, REVPAR INDEX OR SIMILAR INFORMATION.

18.3.8  RELEASE AND COVENANT NOT TO SUE. LICENSEE, FOR ITSELF AND ON BEHALF OF ITS AFFILIATES AND THEIR RESPECTIVE SHAREHOLDERS, DIRECTORS, OFFICERS,

BEHALF OF ITS AFFILIATES, AND THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, AND ON BEHALF OF THE EQUITY OWNERS, HEREBY (I) RELEASES AND FOREVER DISCHARGES LICENSOR AND ITS AFFILIATES, AND THEIR RESPECTIVE DIRECTORS, OFFICERS, EMPLOYEES, AGENTS, REPRESENTATIVES AND ATTORNEYS, AND THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, FROM ANY AND ALL CLAIMS, DEMANDS AND CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, OF ANY KIND OR NATURE, ABSOLUTE OR CONTINGENT, IF ANY, AT LAW OR IN EQUITY, ARISING PRIOR TO EXECUTION OF THIS AGREEMENT ON THE EFFECTIVE DATE, AND (II) AGREES THAT NONE OF THEM WILL INSTITUTE ANY LITIGATION OR OTHER LEGAL ACTION OR PROCEEDING, AT LAW OR IN EQUITY, AGAINST LICENSOR OR ITS AFFILIATES AND THEIR DIRECTORS, OFFICERS, EMPLOYEES, AGENTS, REPRESENTATIVES AND ATTORNEYS, AND THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, DIRECTLY OR INDIRECTLY, RELATING TO ANY CLAIM OR DEMAND RELEASED UNDER THIS SECTION 18.3.8. LICENSEE SHALL TAKE WHATEVER ACTIONS ARE NECESSARY OR APPROPRIATE TO CARRY OUT THE TERMS OF THIS RELEASE AND COVENANT NOT TO SUE UPON LICENSOR'S REQUEST. THIS SECTION 18.3.8 SHALL SURVIVE THE EXPIRATION OR TERMINATION OF THIS AGREEMENT.

THE UNDERSIGNED IS REQUESTED TO NOTIFY THE GENERAL COUNSEL OF LICENSOR'S FRANCHISE DIVISION AND NOT SIGN THIS AGREEMENT IF THE UNDERSIGNED HAS ANY REASON TO BELIEVE THAT THE PROVISIONS OF THESE ACKNOWLEDGMENTS ARE NOT ACCURATE IN ANY RESPECT.

## ARTICLE 19
## GENERAL PROVISIONS

19.1　_Governing Law_. This Agreement shall be construed under the laws of the State of Maryland, provided the foregoing shall not constitute a waiver of any of Licensee's rights under any applicable franchise law

Element 03/2007
L:\03 - Application\element IL Chicago O'Hare\Contract\License Agreement\2007 06 19 element License Agreement 2007 Chicago O'Hare.doc

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of Starwood Hotels and Resorts. Please contact Therese Pritchard at (202) 508-6252 should any request be made for production of this document.

SHRW 00045

of another state. Otherwise, in the event of any conflict of law, Maryland law will prevail, without regard to its conflict of law principles. However, if any provision of this Agreement would not be enforceable under Maryland law, and if the Hotel is located outside of Maryland and such provision would be enforceable under the laws of the state in which the Hotel is located, then such provision shall be construed under the laws of that state. Nothing in this Section 19.1 is intended to subject this Agreement or the Parties to any franchise or similar Applicable Law of the State of Maryland or any other state to which it otherwise would not be subject.

19.2 **Construction of Agreement.** The Parties intend that the following principles (and no others inconsistent with them) be applied in construing and interpreting this Agreement:

19.2.1 <u>No Further Obligations</u>. Licensor is not obligated, for any reason, to do any act or to provide anything to Licensee, except as expressly provided in this Agreement.

19.2.2 <u>Claims Limited to Contract</u>. Neither Party shall assert against the other Party any contractual claim arising out of this Agreement, unless the claim is based upon the express terms of this Agreement and does not seek to vary, and is not in conflict with, those express terms.

19.2.3 <u>Presumption Against a Party</u>. The terms and provisions of this Agreement shall not be construed against or in favor of a Party hereto merely because such Party is the Licensor hereunder or such Party or its counsel is the drafter of this Agreement.

19.2.4 <u>Severability</u>. If any term or provision of this Agreement is held invalid, illegal or unenforceable by a court of competent jurisdiction for any reason, the remainder of this Agreement shall in no way be affected and shall remain valid and enforceable for all purposes, each Party hereby declaring that it (i) would have executed this Agreement without inclusion of such term or provision, and (ii) execute and deliver to the other Party any additional documents that may be reasonably requested by a Party to fully effectuate this Section 19.2.4. Notwithstanding the foregoing, if any part of Articles 3, 7, 8 or 11 shall be declared invalid, illegal or unenforceable for any reason, Licensor shall have the option, by giving written notice to Licensee within 30 days thereafter, to terminate this Agreement, with no further duties or obligations to Licensee.

19.2.5    Additional Requirements under Franchise Law. If any Applicable Law requires a longer period to cancel, terminate or refuse to renew this Agreement or any successor franchise than is required hereunder, a different standard of "good cause", or the taking of some other action not required hereunder, the prior notice, "good cause" standard and/or other action required by such Applicable Law shall be substituted for the comparable provisions in this Agreement to the extent required. If any provision of this Agreement or any specification, standard or operating procedure prescribed by Licensor is invalid, illegal or unenforceable under Applicable Law, Licensor has the right, in its sole and absolute discretion, to modify such invalid, illegal or unenforceable provision, specification, standard or operating procedure to the extent required to make it valid, legal and enforceable.

19.2.6    Certain Words and Phrases. All words in this Agreement shall be deemed to include any number or gender as the context or sense of this Agreement requires. The words "will," "shall," and "must" in this Agreement indicate a mandatory obligation. The use of the words "include," "includes," and "including" followed by one or more examples is intended to be illustrative and is not a limitation on the scope of the description or term for which the examples are provided. All dollar amounts set forth in this Agreement are stated in United States dollars, unless otherwise specified. The words "day" and "days" refer to calendar days unless otherwise stated. The words "month" and "months" refer to calendar months unless otherwise stated. The words "hereof", "hereto" and "herein" refer to this Agreement, and are not limited to the article, section, paragraph or clause in which such words are used.

19.2.7    Headings. The table of contents, headings and captions contained herein are for the purposes of convenience and reference only and are not to be construed as a part of this Agreement. All references to any article, section or exhibits in this Agreement are to articles, sections or exhibits of this Agreement, unless otherwise noted.

41

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of            SHRW 00046
Starwood Hotels and Resorts.  Please contact Therese Pritchard at (202) 508-6252
should any request be made for production of this document.

19.2.8  <u>Entire Agreement</u>. This Agreement (including the attached Exhibits), constitutes the entire agreement between the Parties with respect to the subject matter contemplated herein and supersedes all prior agreements and understandings, written or oral. No undertaking, promise, duty, obligation, covenant, term, condition, representation, warranty, certification or guaranty shall be deemed to have been given or be implied from anything said or written in negotiations between the Parties prior to the execution of this Agreement, except as expressly set forth in this Agreement. Neither Party shall have any remedy in respect of any untrue statement made by the other Party on which that Party relied in entering into this Agreement (unless such untrue statement was made fraudulently), except to the extent that such statement is expressly set forth in this Agreement and the Application.

19.2.9  <u>Third-Party Beneficiary</u>. No third party shall be a beneficiary of Licensee's rights or benefits under this Agreement.

19.2.10  <u>Time of the Essence</u>. Time is of the essence for all purposes of this Agreement.

19.2.11  <u>Remedies Cumulative</u>. Except as otherwise expressly provided in this Agreement, the remedies provided in this Agreement are cumulative and not exclusive of the remedies provided by Applicable Law, and a Party's exercise of any one or more remedies for any default shall not preclude the Party from exercising any other remedies at any other time for the same default.

19.2.12  <u>Business Judgment</u>. Whenever Licensor has expressly reserved in this Agreement, or otherwise is deemed to have, a right or the discretion to grant or withhold any consent or approval, or act or permit any action to be taken, then except as otherwise expressly provided in this Agreement, Licensor shall have the right to make its decision or exercise its right or discretion on the basis of its judgment of what is in Licensor's best interests, including its judgment of what is in the best interests of the System or the Brand, at the time its decision is made or its right or discretion is exercised, without regard to whether (i) other reasonable alternatives decisions or actions could have been made by Licensor, (ii) Licensor's decision or the action it takes promotes its financial or other individual interest, (iii) Licensor's decision or the action it takes applies differently to Licensee and one or more other hotels under the Brand, or (iv) Licensor's decision or the exercise of its right or discretion is adverse to Licensee's interests. The Parties intend that the exercise of Licensor's right or discretion will not be subject to

limitation or review, and except as otherwise expressly provided under Applicable Law, Licensor shall have no liability to Licensee for any such decision or action.

19.2.13 <u>Amendments</u>. Neither this Agreement nor any of its terms or provisions may be amended, modified, changed, waived or discharged, except (i) for Licensor's right to make unilateral changes to the Standards and Policies, Manuals, System Programs and Services and other changes permitted under this Agreement, and (ii) by an instrument in writing signed by the Party against whom the enforcement of the amendment, modification, change, waiver or discharge is sought.

19.2.14 <u>Survival</u>. The expiration or termination of this Agreement does not terminate or affect Licensor's or Licensee's covenants and obligations that either expressly or by their nature survive the expiration or termination of this Agreement.

19.3 <u>**Limitation on Licensor's Liabilities**</u>.

19.3.1 <u>Technical Advice</u>. Licensee acknowledges that any review, advice, assistance, recommendation or direction provided by Licensor with respect to the design, construction, equipping, furnishing, decoration, alteration, improvement, renovation or refurbishing of the Hotel (including the construction) (i) is intended solely to assist Licensee in the development, construction, maintenance, repair and upgrading of the Hotel in compliance with Licensee's obligations under this Agreement, and (ii) does not constitute any representation, warranty, certification or guaranty of any kind whatsoever that (A) there are no errors in the plans and specifications, (B) there are no defects in the design or construction of the Hotel or installation of any building systems or FF&E therein, or (iii) the plans, specifications, construction and installation will comply with all Applicable Laws, including the Americans with Disabilities Act or similar laws or regulations governing public accommodation for individuals with disabilities. Accordingly, Licensee agrees that neither Licensor nor its Affiliates shall have any liability whatsoever to Licensee or any third party for any (1) errors in plans or

42

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of
Starwood Hotels and Resorts. Please contact Therese Pritchard at (202) 508-6252
should any request be made for production of this document.

SHRW 00047

specifications, (2) defects in the design or construction of the Hotel or installation of any building systems or FF&E therein, or (3) noncompliance with engineering and structural design standards or any Applicable Laws.

19.3.2 <u>Approvals and Recommendations</u>. Licensee acknowledges that in granting any consents, approvals or authorizations under this Agreement, and in providing any advice, assistance, recommendation or direction under this Agreement, neither Licensor nor its Affiliates guaranty success or a satisfactory result from the subject of such consent, approval, authorization, advice, assistance, recommendation or direction. Accordingly, Licensee agrees that neither Licensor nor its Affiliates shall have any liability whatsoever to Licensee or any third person by reason of (i) any consent, approval or authorization, or advice, assistance, recommendation or direction, given or withheld by Licensor, or (ii) any delay or failure by Licensor to provide any consent, approval, authorization, advice, assistance, recommendation or direction.

19.4 <u>Waivers</u>. Except as set forth in Section 17.1.4, no failure or delay by a Party to insist upon the strict performance of any term of this Agreement, or to exercise any right or remedy consequent on a default thereof, shall constitute a waiver of any default or any subsequent default of such term. No failure of Licensor to exercise any right given to Licensor under this Agreement or to insist upon strict compliance by Licensee with any obligations under this Agreement, and no custom or practice of the Parties that is inconsistent with the terms of this Agreement shall constitute a waiver of Licensor's right to demand full and exact compliance by Licensee with such terms. Any waiver by Licensor of any particular default by Licensee shall not affect or impair Licensor's rights with respect to any subsequent default of the same or of a different nature, nor shall any delay or omission of Licensor to exercise any right arising from such default affect or impair Licensor's rights as to such default or any subsequent default. No waiver of any default shall affect or alter this Agreement, but each and every term of this Agreement shall continue in full force and effect with respect to any other then existing or subsequent default.

19.5 <u>Notices</u>. All notices, consents, determinations, requests, approvals, demands, reports, objections, directions and other communications required or permitted to be given under this Agreement shall be in writing and shall be delivered by (i) personal delivery, (ii) overnight DHL, FedEx, UPS or other similar courier service, or (iii) United States Postal Service as Express Mail or certified mail, postage prepaid, return receipt requested, addressed to the Parties at the addresses specified below, or at such other address as the Party to whom the notice is sent has

designated in accordance with this Section 19.5, and shall be deemed to have been received by the Party to whom such notice or other communication is sent upon (A) delivery to the address of the recipient Party, provided that such delivery is made prior to 5:00 p.m. local time on the recipient Party) on a business day, otherwise the following business day, or (B) the attempted delivery of such Notice if such recipient Party refuses delivery, or such recipient Party is no longer at such address number, and failed to provide the sending Party with its current address pursuant to this Section 19.5.

| | |
|---|---|
| Licensor notice address: | Westin Hotel Management, L.P. |
| | c/o Starwood Hotels and Resorts Worldwide, Inc. |
| | 1111 Westchester Avenue |
| | White Plains, New York 10604 |
| | Attn: General Counsel |
| With a copy, which shall not constitute notice, to: | Westin Hotel Management, L.P. |
| | 600 Galleria Parkway, Suite 1700 |
| | Atlanta, Georgia 30339 |
| | Attn: General Counsel – Franchise Division |
| Licensee notice address: | Upscale Hospitality, LLC |
| | 1314 S. Plymouth Ct. |
| | Chicago, IL 60605 |
| | Attn: Anshoo Sethi |

19.6 **Licensee's Representative**. Licensee, for itself and all of the Equity Owners, shall designate an Individual to act as representative for Licensee and the Equity Owners ("Licensee's Representative"), and Licensor shall have the right to rely on all actions by, and communications with, Licensee's Representative as binding on

43

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of Starwood Hotels and Resorts. Please contact Therese Pritchard at (202) 508-6252 should any request be made for production of this document.

SHRW 00048

Licensee and the Equity Owners. In addition, Licensor shall have the right to communicate directly with the management company, general manager or executive personnel at the Hotel with respect to the Operation of the Hotel, and the Management Company and general manager shall have the responsibility to keep Licensee informed of any such communication. Licensee shall provide to Licensor the name, address, telephone and fax numbers, email address and other relevant contact information for the Licensee's Representative, management company, general manager as of the Effective Date and within 10 days of any change thereto.

19.7    **Further Assurances.** The Parties shall do and cause to be done all such acts, matters and things and shall execute and deliver all such documents and instruments as shall be required to enable the Parties to perform their respective obligations under, and to give effect to the transactions contemplated by, this Agreement. Without limiting the generality of the foregoing, Licensee, on behalf of itself and its Affiliates, and their respective principals, partners, members, officers, successors and assigns, agrees, at the request of Licensor, to complete, execute and provide to Licensor such questionnaire or forms as may be required for Licensor's or any of its Affiliate's compliance with any Gaming Laws or to be used or filed with any Governmental Authority that regulates franchising.

19.8    **Relationship of the Parties.** Licensee acknowledges and agrees that Licensee is an independent contractor and is not authorized to enter into any agreement, make any representation or warranty, incur any liability or create any obligation on behalf of Licensor. Nothing in this Agreement is intended by the Parties to create a fiduciary relationship between them or to make Licensee an agent, legal representative, joint venturer, partner, employee or servant of Licensor for any purpose whatsoever. In all dealings with third parties, including employees, suppliers, customers and public officials, Licensee shall disclose in an appropriate manner acceptable to Licensor that Licensee is an independent Entity operating under license from Licensor, and shall place notices of independent ownership on the Premises used by Licensee and on such signs, forms, agreements, checks, advertising and other material as Licensor may require from time to time. Licensee acknowledges that (i) Licensee is solely responsible for determining the manner in which its rights are exercised and obligations are fulfilled, in the exercise of its business interest and day-to-day control of the Hotel, (ii) Licensee will conduct its business in its own name, using names and Licensed Marks which are part of the System solely in order to identify the Hotel as a facility which makes use of the rights granted in this License, and (iii) Licensor has no authority to hire, fire or determine the working conditions or compensation of any of Licensee's employees.

working conditions or compensation of any of Licensee's employees.

**19.9** **Force Majeure.** In the event of a Force Majeure, the Parties shall be relieved of their respective obligations affected by such Force Majeure (other than an obligation to pay any fees or other amounts) to the extent such Parties are necessarily prevented, hindered, or delayed in the performance of such obligations during the period of such Force Majeure. The Party whose performance is affected by Force Majeure shall give prompt, written notice of such Force Majeure to the other Party. If a Force Majeure occurs that Licensor considers to be economically harmful or otherwise detrimental to the System or to Licensor or any of its Affiliates, Licensor shall have the right to terminate this Agreement upon 30 days written notice to Licensee provided that such notice shall be withdrawn by Licensor if, within such 30-day period, Licensor determines that the economically harmful or otherwise detrimental effect has ceased.

**19.10** **Notice of Material Developments.** Licensee shall give Licensor notice of any incident or legal action or proceeding (including the commencement of a legal action or proceeding, the issuance of any order, writ, injunction, award or decree of any court or Government Authority) that could materially affect the Operation or financial condition of the Hotel, Licensee or its Affiliates, or that names Licensee or its Affiliates as a party, as soon as practicable, but in any event within 24 hours of such an incident and three days of such a legal action or proceeding. Licensee shall deliver to Licensor, within three days of receipt by Licensee, copies of all notices from any Governmental Authority, including reports, warnings or ratings that the Hotel fails to meet governmental standards or comply with Applicable Laws.

**19.11** **Investigations by Licensor.**

**19.11.1** **Consent to Investigation.** Licensee acknowledges that (i) in connection with this Agreement, Licensee has submitted to Licensor a completed Application used by Licensor to conduct an investigation into the background of Licensee and Licensee's Principals, and (ii) this background investigation is necessary to insure that that Licensee meets Licensor's criteria for new licensees, and execution of this Agreement

44

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of
Starwood Hotels and Resorts. Please contact Therese Pritchard at (202) 508-6252
should any request be made for production of this document.

SHRW 00049

will not adversely affect the compliance by Licensor or its Affiliates with any Gaming Laws. Accordingly, Licensee consents to any investigations and inquiries of such Persons as Licensor deems appropriate concerning the credit standing, character, and personal qualifications of Licensee and its Principals; provided, however, that Licensor shall comply with any Applicable Laws in conducting such investigations and inquiries.

19.11.2 <u>Termination of Agreement</u>. If Licensor has not completed its background investigation as of the Effective Date, and after completion, Licensor determines, in its sole and absolute discretion, that Licensee does not satisfy its requirements for new licensees or the execution of this Agreement could affect the compliance by Licensor or any Affiliates with any Gaming Laws, Licensor shall have the right to terminate this Agreement effective upon seven days notice. Licensee shall cause all of the Equity Owners, and all officers, directors, partners, trustees, and members of Licensee, to provide such information as Licensor may request for Licensor to comply and determine compliance with its requirements for new licensees and all Gaming Laws.

19.12  <u>Terms of Other License Agreements</u>. Licensor makes no representation or warranty that any past or future forms of its license agreements for Brand hotels do or will include terms substantially similar to those in this Agreement. In addition, Licensee acknowledges and agrees that Licensor may, due to local business conditions or otherwise, waive or modify comparable terms of other license agreements for Brand hotels heretofore or hereafter entered into by Licensor or its Affiliates.

19.13  <u>Translations</u>. Licensee shall pay the cost of any translation of this Agreement and of any other documents related to the System, including the Manuals. Licensee acknowledges and agrees that all such translated versions shall be the property of Licensor.

19.14  <u>Execution of Guarantee</u>. Licensee shall cause the Guarantors (if any) to execute and deliver to Licensor the Guarantee in Exhibit I concurrently with the execution of this Agreement, and this Agreement shall have no force or effect until the Guarantors (if any) execute and deliver the Guarantee.

19.15  <u>Execution of Agreement</u>. This Agreement may be executed in counterparts, each of which when executed and delivered shall be deemed an original, and such counterparts together shall constitute one and the same

ARTICLE 20
SPECIAL STIPULATIONS

20.1 **Confidential Information**. Licensee acknowledges that this Article 20 contains Confidential Information and, like the balance of the Agreement, is to be treated confidentially pursuant to Section 8.1. In the event Licensee defaults in its confidentiality obligations hereunder, Licensee will receive written notice of said default and, without limiting remedies, all of Licensee's rights pursuant to this Article 20 shall immediately terminate and be of no further force and effect.

20.2 **Site Control.** Licensee agrees the legal right to possess and control the Hotel and Premises by Licensee is an essential requirement of the License Agreement. Licensee shall promptly give Licensor a copy of the recorded deed, lease or other recorded document that gives Licensee the right to possess and control the Hotel and Premises. Unless Licensor receives a copy of the recorded deed, lease or other documentary evidence satisfactory to Licensor that Licensee has the legal right to possess and control the Hotel and Premises for the Term of the License Agreement by the earlier of thirty (30) days from the Effective Date of this Agreement or prior to the opening of the Hotel as a Brand hotel, Licensor shall have the right, exercisable any time thereafter, to terminate this Agreement by written notice to Licensee pursuant to Section 16.2.2.

*Signatures on the following page.*

45

Element 03/2007
L:\03 - Applications\element IL Chicago O'Hare\Contract\License Agreement\2007 06 19 element License Agreement 2007 Chicago O'Hare.doc

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of          SHRW 00050
Starwood Hotels and Resorts.  Please contact Therese Pritchard at (202) 508-6252
should any request be made for production of this document.

**IN WITNESS WHEREOF**, the Parties hereto have duly executed this Agreement in Atlanta, Georgia as of the Effective Date.

**LICENSOR:**

**WESTIN HOTEL MANAGEMENT, L.P.**

By: _William And_

Name: _William Anderson_

Title: _Vice President & Assistant Secretary_

_June 29, 2001_
(date signed by Licensor, constituting the "Effective Date")

**LICENSEE:**

**UPSCALE HOSPITALITY, LLC**
By its Managing Member,

By: _Sethi_

Name: _ANSHOO SETHI_

Title: _MANAGING MEMBER_

_____
(date signed by Licensee)

Attest: _____

46

Element 03/2007
L:\03 - Applications\element IL Chicago O'Hare\Contract\License Agreement\2007 06 19 element License Agreement 2007 Chicago O'Hare.doc

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of
Starwood Hotels and Resorts.  Please contact Therese Pritchard at (202) 508-6252
should any request be made for production of this document.

SHRW 00051

## EXHIBIT A TO LICENSE AGREEMENT

### HOTEL AND LICENSEE INFORMATION

**I**    **Hotel Information**

   **A.**    Address and Description of Premises (metes and bounds).

     **Address: 8201 W. Higgins Road, Chicago, IL 60631**

     **A legal description of the Premises shall be attached hereto.**

   **B.**    Name(s) and address(es) of holder(s) of record fee title to Hotel Premises:

     **A&A Hospitality, LLC**
     **335 E.51ˢᵗ Street**
     **Chicago, IL 60615**

   **C.**    If Licensee is not holder of record fee title,

     1.    Owner of Fee Title to the Premises: A&A Hospitality, LLC

     2.    Interest of Licensee in Premises: Lease

     3.    Term of Lease (or Other Tenancy): 20 years commencing at 12:00 noon on January 1, 2008 with an option to renew the term 60 days prior to expiration

   **D.**    Components of Hotel. The Hotel consists of the following components:

| | |
|---|---|
| Total Guest Rooms | 320 |
| - Standard Rooms | 30 |
| - Suites | 290 |
| Meeting Space | 15,000 sq. ft. |
| Total Floors | 17 |
| Total Parking Spaces | |
| Food & Beverage Facilities | |
| Other Facilities & Amenities | |
| Year Built | 2009 |

II     **Licensee Information**. The following Persons, own, either legally or beneficially, the following Ownership Interests in Licensee and Parent Companies, if any

| Name | Address | Ownership Interest (Direct or Beneficial) | Percentage of Ownership Interest |
|---|---|---|---|
| Anshoo Sethi* | 1314 S. Plymouth Ct., Chicago, IL 60605 | Direct | 50% |
| Ravinder Sethi | 1314 S. Plymouth Ct., Chicago, IL 60605 | Direct | 50% |

Those Persons noted with an *, either singly or in combination with the others, so designated have the right to direct or control the management of the day-to-day Operations of the Hotel and to direct the management and policies of Licensee, including those related to payment of financial obligations of Licensee.

A-1

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of Starwood Hotels and Resorts. Please contact Therese Pritchard at (202) 508-6252 should any request be made for production of this document.

SHRW 00052

III     **Name of Hotel**. The approved name of the Hotel is:  **Element Chicago O'Hare Airport**

IV      **Management of Hotel**.  The Hotel shall be managed by a management company in accordance with Section 5.16.

A-2

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of Starwood Hotels and Resorts. Please contact Therese Pritchard at (202) 508-6252 should any request be made for production of this document.

SHRW 00053

## EXHIBIT B TO LICENSE AGREEMENT

### DEFINITIONS

**Affiliate** – any Person that, directly or indirectly, controls, is controlled by, or is under common control with, the referenced Party or other Person. The term "Control" shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of any Person, or the power to veto major policy decisions of any Person, whether through the ownership of voting securities, by agreement, or otherwise.

**Agreement** – this License Agreement between Licensor and Licensee, including all Exhibits thereto, and all amendments and modifications entered into pursuant to Section 19.2.13.

**Anticipated Opening Date** – **June 1, 2009**

**Anti-Terrorism Laws** – all present and future Applicable Laws addressing or in any way relating to acts of war, terrorist acts, financing of terrorist activities, drug trafficking, money laundering or similar activities that threaten the security of the United States of America, including (i) The United and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Action (the "Patriot Act"), (ii) The Trading with the Enemies Act, (iii) all rules and regulations issued by the U.S. State Department or U.S. Treasury Department's Office of Foreign Assets Control and (iv) Executive Order 13224 and similar Executive Orders issued by the President of the United States.

**Applicable Law** – all (i) statutes, laws, rules, regulations, ordinances, codes or other legal requirements of any federal, state or local governmental authority, board of fire underwriters and similar quasi-Governmental Authority, including any legal requirements under any Approvals, and (ii) judgments, injunctions, orders or other similar requirements of any court, administrative agency or other legal adjudicatory authority, in effect at the time in question and in each case to the extent the Hotel or Person in question is subject to the same. Without limiting the generality of the foregoing, references to Applicable Law shall include any of the matters described in clause (i) or (ii) above relating to employees, zoning, building, health, safety and environmental matters and accessibility of

(ii) Laws relating to employees, zoning, building, health, safety and environmental matters and accessibility of public facilities.

**Application** – the application and all supporting documentation and information submitted to Licensor, including the "Development and Major Transactions Background Information" questionnaire, to obtain Licensor's approval of Licensee as a licensee under this Agreement.

**Application Fee** – $128,000.00

**Approvals** – all licenses, permits, approvals, certificates and other authorizations granted or issued by any Governmental Authority for the matter or item in question.

**Approved Suppliers** – suppliers (including Licensor and/or its Affiliates) of FF&E and Supplies that Licensor has approved.

**Approved Transfer** – as defined in 11.2.3.

**Assignment** – any assignment, conveyance, delegation, pledge or other transfer, in whole or in part, of this Agreement or any rights, remedies, duties or obligations under this Agreement, whether voluntary, involuntary, by operation or law or otherwise (including as a result of any divorce, bankruptcy, insolvency or dissolution proceedings, by declaration of or transfer in trust, or under a will or the laws of intestate succession), but expressly excluding any sublicense or subfranchise, which are expressly prohibited under this Agreement.

B-1

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of Starwood Hotels and Resorts. Please contact Therese Pritchard at (202) 508-6252 should any request be made for production of this document.

SHRW 00054

Brand – the "Element$^{SM}$" brand. A separate mark modified by the words "by Element" or similar type modifier, or other means of distinguishing between two marks appearing together, such as by relative size, positioning, prominence in appearance, etc, for example "Element" being the smaller of two marks appearing together, shall be a brand in the Other Starwood Brands, not the Element$^{SM}$ brand. The mark "Element" used in close proximity to the mark "Westin" shall refer to the "Element" brand not the Westin brand, which is part of the Other Starwood Brands.

Building Capital Improvements – all repairs, alterations, improvements, replacements, renewals, and additions to the Premises that are capitalized under GAAP and depreciated as real property, but expressly excluding ROI Capital Improvements.

Business Interruption Insurance – insurance coverage against "Business Interruption and Extra Expense" (as that phrase is used within the United States insurance industry for application to transient lodging facilities), which complies with the Insurance Requirements.

Casualty – any fire, flood or other act of God or casualty that results in damage or destruction to the Hotel.

Claims – claims; demands, suits, criminal or civil actions or similar proceedings that might be alleged by a third party (including enforcement proceedings by any Governmental Authority) against any Indemnified Party, and all liabilities, damages, fines, penalties, costs or expenses (including reasonable attorneys fees and expenses and other reasonable costs for defense, settlement and appeal) that any Indemnified Party might incur, become responsible for, or pay out for any reason, related to this Agreement, the development, construction, ownership or Operation of the Hotel or arising from any business conducted by Licensee or others from the Hotel or on the Premises.

Competitor – any Person that owns, or is an Affiliate of a Person that owns a hotel brand, trade name or service mark for a system of at least four hotels with an average daily room rate for all or substantially all of such hotels located in the United States of America during the then-most recent calendar year that is at least 60% of the average daily room rate for all or substantially all of the Brand hotels located in the United States of America during

such year, as reasonably determined by Licensor.

condemnation or making all or any portion of the Hotel by any Governmental Authority by condemnation or power of eminent domain for any purpose whatsoever, and a conveyance by Licensee in lieu or under threat of such taking.

Confidential Information – information relating to the System or Licensor's business that derives value, actual or potential, from not being generally known to others, including the terms of this Agreement, the Manuals, Guest Data, Licensor Technology, fees and terms of all System Programs and Services, and any documents or information specifically designated by Licensor orally or in writing as confidential or by its nature would reasonably be understood to be confidential or proprietary.

Consequential Termination – when any of the following have a nexus with the termination of the Agreement (i) a Transfer to a Competitor, (ii) 3 or more license agreements (including this Agreement) between Licensee and Licensor, or the respective Affiliates of either, are terminated within a 12-month period (including the termination of this Agreement) for any reason by Licensee or its Affiliates, or (iii) the Hotel was sold or transferred to Licensee or its Affiliates by Licensor or its Affiliates, this Agreement was entered into as part of such sale or transfer, and this Agreement is either terminated by Licensee for any reason other than Licensor's uncured default under Section 16.3.3 or terminated by Licensor for Licensee's default under Section 16.2.1 of the Agreement or uncured default under Section 16.2.2 of the Agreement.

Content – as defined in Section 9.11.

Conversion – the process of changing the Hotel from its previous status to a Brand hotel open for business with Licensor's approval as required hereunder (including any work to be completed after opening of the Hotel as expressly permitted by Licensor under Section 6.3).

B-2

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of Starwood Hotels and Resorts. Please contact Therese Pritchard at (202) 508-6252 should any request be made for production of this document.

SHRW 00055

Corporate Personnel – any personnel from the corporate or divisional offices of Licensor or its Affiliates who perform activities at or on behalf of the Hotel in connection with the services provided by Licensor under this Agreement.

Design Plan and Construction Review Fee – the fee that Licensor will charge under Section 6.4.2 for a review of Licensee's design and construction plans that vary substantially from Licensor's prototypical plans will vary between $5,000 and $25,000 based on the amount of time Licensor reasonably spent on its review.

Designated Brand Vendor – as defined in Section 2.2.3(a).

Effective Date – the date Licensor countersigns the Agreement, as set forth next to its signature line at the end of the Agreement.

Entity – a partnership, a corporation, a limited liability company, a Governmental Authority, a trust, an unincorporated organization or any other legal entity of any kind.

Equity Owners – the Individuals holding at least a 5% Ownership Interest in Licensee or any of its Parent Companies, if any.

Expiration Date – at 11:59 p.m. (U.S. East Coast Time) on the date which is the 20th anniversary of the Opening Date and confirmed by execution of the Expiration Date Confirmation in Exhibit F.

Expiration Date Confirmation – the expiration date confirmation attached as Exhibit F.

FF&E – furniture, fixtures, equipment, audio and visual systems, lighting, interior and exterior signs, as well as other improvements and personal property used in the Operation of the Hotel that are not Supplies.

Fire and Life Safety Manuals – as defined in the Life Safety Certification.

Food & Beverage – any restaurant, catering, banquet rooms, bar/lounge, entertainment, room services, retail food or beverage operation, and similar services.

Force Majeure – any of the following having an effect lasting beyond 30 days (i) casualty or condemnation, (ii) storm, earthquake, hurricane, tornado, flood or other act of God, (iii) war, insurrection, epidemics, quarantine restrictions, civil commotion or act of terrorism, (iv) strikes or lockouts, (v) embargoes, lack of water, materials, power or telephone transmissions specified or reasonably necessary in connection with the construction, refurbishment, equipping, ownership or management of the Hotel, or (vi) failure of any applicable Governmental Authority to issue any Approvals, or the suspension, termination or revocation of any material Approvals, required for the Operation of the Hotel.

Gaming Laws – any Applicable Law regulating or otherwise pertaining to casinos, legal gaming or gambling.

Generally Accepted Accounting Principles or GAAP – those conventions, rules, procedures and practices, consistently applied, affecting all aspects of recording and reporting financial transactions which are generally accepted by major independent accounting firms in the United States at the time in question. Any financial or accounting terms not otherwise defined herein shall be construed and applied according to GAAP.

Global Preference Program – the program for providing special customer rates for selected Entities, as negotiated by Licensor or any of its Affiliates and set forth in the Manuals.

Global Sales Program or Global Sales Organization (GSO) – the organization or program by which Licensor or any of its Affiliates sells group, corporate or leisure business under terms established by Licensor or its Affiliates.

B-3

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of Starwood Hotels and Resorts. Please contact Therese Pritchard at (202) 508-6252 should any request be made for production of this document.

SHRW 00056

Governmental Authority – any government or political subdivision, or an agency or instrumentality thereof.

Gross Food & Beverage Sales – gross revenues attributable to the sale of all Food & Beverage at the Hotel, including all credit transactions, whether or not collected, but excluding federal, state and local sales, occupancy and use taxes.

Gross Rooms Sales – gross revenues attributable to, or payable for, rentals of Guest Rooms at the Hotel, or collected from business interruption insurance in lieu of rentals of Guest Rooms at the Hotel, including all credit transactions and "no show" and early departure charges, whether or not collected, but excluding separate charges to guests for Food & Beverage, telephone, and federal, state and local sales, occupancy and use taxes.

Guarantors – the signatories to the Guarantee (if any).

Guarantee or Guaranty – the guarantee attached hereto as Exhibit I.

Guest Data – all guest or customer profiles, contact information (e.g., addresses, phone numbers, facsimile numbers, email addresses, and SMS addresses), histories, preferences and any other guest or customer information in any database of the Hotel, Licensee, or Starwood or its Affiliates, whether obtained or derived by Licensee, or Licensor or its Affiliates from (i) guests or customers of the Hotel or any facility or system (including the Reservation System) associated with the Hotel, (ii) guests or customers of any other hotel or lodging property (including any condominium or interval ownership properties) owned, leased, operated, licensed or franchised by Licensor or its Affiliates, or any facility associated with such hotels or other properties (including restaurants, golf courses and spas), or (iii) any other sources and databases, including websites, central reservations database, operational database store (ODS), property management system, Starwood Preferred Guest Program, Starwood Vacation Ownership, and Starwood Integrated Property System.

Guest Room – each rentable unit in the Hotel consisting of a room or suite of rooms generally used for overnight guest accommodations, entrance to which is controlled by one key. Adjacent rooms with connecting doors that can be locked and rented as separate units shall be deemed to be separate Guest Rooms.

Hardware – all computer and telecommunications equipment including routers, servers, circuits, portals and networks designated by Licensor or its Affiliates (including Starwood) for use as part of the System.

Hotel – the hotel located on the Premises and described in Exhibit A, including all buildings, improvements, structures, facilities, FF&E, exterior signage, common areas, parking, pool and other areas located on the Premises, and all easements, appurtenances, entry and exit rights benefiting the Premises.

Hotel Transfer – (i) any sale, disposition, conveyance, gift, foreclosure of a mortgage, deed in lieu of foreclosure, appointment of a receiver or other transfer, in whole or in part, of any right, title or interest in the Hotel or any portion thereof, including the expiration or termination of an underlying ground lease, or (ii) the loss of any right to direct or control the management of the day-to-day Operations of the Hotel, including the right of possession, use or occupancy of the Hotel (other than the delegation of such control pursuant to a management agreement entered into in accordance with Section 5.15), in each case whether voluntary, involuntary, by operation or law or otherwise (including as a result of any divorce, bankruptcy, insolvency or dissolution proceedings, by declaration of or transfer in trust, or under a will or the laws of intestate succession).

Indemnified Party – as defined in Section 12.3.1.

Individual – a natural person, whether acting for himself or herself, or in a representative capacity.

Insurance Requirements – the minimum coverage, limits, deductibles and other requirements required by Licensor as set forth in the Manuals or otherwise in writing.

Intellectual Property Rights – any rights available under patent, copyright, trademark, service mark, trade name, product configuration, industrial design, or trade secret law or any other statutory provision or common law

B-4

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of Starwood Hotels and Resorts. Please contact Therese Pritchard at (202) 508-6252 should any request be made for production of this document.

SHRW 00057

doctrine with respect to intellectual property rights, including rights in or to designs, formulas, algorithms, procedures, methods, techniques, ideas, know-how, programs, subroutines, tools, inventions, creations, improvements, works of authorship, other similar materials, and all recordings, graphs, drawings, reports, analyses, other writings, and any other embodiment of the above, in any form whether or not specifically listed herein, which may subsist in any part of the world, for the full term of such rights including any extension to the term of such rights.

License – as defined in Section 2.1.

License Fee – the amount equal to 5.5% of the Gross Rooms Sales, for each month (or partial month) of the Term, starting from and after the Opening Date.

Licensed Marks – all current and future trademarks, service marks, trade names, designs, logos, slogans, symbols, product configuration, industrial design, trade dress or indicia of origin for the Brand that are licensed to Licensee under this Agreement, and which currently includes the marks listed in the Manuals.

Licensee – as defined in the introduction of this Agreement.

Licensee's Representative – as defined in Section 19.6.

Licensor – as defined in the introduction of this Agreement, with the headquarters offices of its franchise division located at Six Hundred Galleria Parkway, Suite 1700, Atlanta, Georgia.

Licensor's Gross Negligence or Willful Misconduct – any gross negligence, knowingly willful misconduct, or fraud committed by Licensor, its Affiliates, or the Corporate Personnel in the performance of Licensor's obligations under this Agreement.

Licensor IPR – as defined in Section 7.3.

Life Safety Report – the report prepared by Licensor or a third party engaged or approved by Licensor with respect to the fire and life safety systems in the Hotel, including recommendations for work required to be completed in connection with the Conversion to comply with the Fire and Life Safety Manuals and Applicable Laws.

Manuals – all written, digitized, computerized or electronically formatted manuals and other documents and materials prepared and used by Licensor or any Affiliate thereof (including Starwood) for Brand hotels as instructions, requirements, guidance or policy statements with respect to the System, which are loaned or otherwise made available to Licensee, including StarwoodONE and design guides for the Brand.

Marketing Program – the national, regional and/or local marketing and advertising programs, market research and public relations by Licensor, or any Affiliate thereof (including Starwood), for the Brand hotels.

Materials – all tangible materials designed, created, prepared and/or used by Licensor its Affiliates (including Starwood) or third parties on behalf of Licensor or its Affiliates for Brand hotels or Other Starwood Brand hotels, which are made available to Licensee hereunder including, Manuals, Content, designs, prototypes, promotions, artwork, graphics, collateral and creative materials.

Mediator – as defined in Section 17.1.1.

B-5

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of
Starwood Hotels and Resorts. Please contact Therese Pritchard at (202) 508-6252
should any request be made for production of this document.

SHRW 00058

Mortgage – any real estate, leasehold, chattel mortgage, security agreement, deed of trust, security deed or similar document or instrument encumbering the Hotel or any part thereof, together with all promissory notes, loan agreements or other documents relating thereto.

Mortgagee – any holder or beneficiary of a Mortgage.

Opening Date – the date the Hotel opens for business as a Brand hotel accepting paying guests, as determined in accordance with Section 6.3, and confirmed by execution of the Opening Date Confirmation in Exhibit F.

Opening Date Confirmation – the opening date confirmation attached as Exhibit F.

Operate, Operating or Operation – to manage, operate, use, maintain, market, promote, and provide other management or operations services to a hotel.

Other Starwood Brands – the brands, other than the Brand, of lodging facilities owned, Operated or licensed by Starwood or any one or more of its Affiliates from time to time. As of the Effective Date, the brands of Starwood and its Affiliates (including the Brand) consist of Westin®, Sheraton®, Four Points®, W Hotels®, The Luxury Collection®, Le Meridien®, aloft℠, Element℠ and St. Regis®.

Ownership Interests – all forms of ownership, whether legal or beneficial, voting or non-voting, including stock, partnership interests, limited liability company membership or ownership interests, joint tenancy interests, proprietorship interests, trust beneficiary interests, proxy interests, power-of-attorney interests, and all options, warrants and instruments convertible into such other interests, and any other right, title or interest not included in this definition that Licensor determines to constitute a form of direct or indirect ownership in Licensee.

Parent Company – an Entity that holds any form of Ownership Interest in Licensee, whether directly or indirectly through an Ownership Interest in one or more other Entities holding an Ownership Interest in Licensee.

Party or Parties – as defined in the introduction of this Agreement.

Case: 1:13-cv-00982-Document #: 10-1 Filed: 02/06/13 Page 57 of 128 PageID #:469

Person – an individual and/or Entity, as the case may be.

PIP Fee – as defined in Section 6.1.

Placement Charge – as defined in Section 2.2.3(a).

Placement Program – as defined in Section 2.2.3(a).

Placement Rights – as defined in Section 2.2.3(b).

Pre-Opening Activities – as defined in Section 6.4.1.

Premises – the specific address of the Hotel, including the Hotel and all land and improvements used in connection with the Hotel as described on Exhibit A.

Program Fee – the fee Licensor charges from time to time for such programs, services and systems, or components thereof, it designates for coverage by this fee, including, without limitation, marketing, promotion and public relations, GSO services, reservations, technology and communications, and other aspects of developing, administering and maintaining System services. As of the Effective Date, the Program Fee is 4% of Gross Rooms Sales.

Property Improvement Plan or PIP – the list of upgrades and improvements, which Licensor prepares and provides to Licensee in connection with a Conversion or Renovation, or otherwise pursuant to this Agreement.

B-6

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of
Starwood Hotels and Resorts. Please contact Therese Pritchard at (202) 508-6252
should any request be made for production of this document.

SHRW 00059

Renovations or Renovation Plan– as defined in Section 5.9.3.

Reservation Data – as defined in Section 4.2.2.

Reservation Fee – the fee Licensor charges from time to time for the Reservation System services pursuant to Article 3. As of the Effective Date, the Reservation Fee is comprised of the following components: (i) a fee paid as part of the Program Fee, plus (ii) transactional fees of $3.00 per gross central reservation office booking or $3.00 per room reservation for group bookings, whichever is applicable, plus (iii) $5.50 per net reservation from third-party reservation systems (excluding Expedia – Direct Connect bookings, which are $1.50 per net booking) or $4.75 per net bookings via Starwood branded websites.

Reservation System –the system (as may be modified from time to time) for offering, booking, modifying and/or communicating reservations for guest rooms, meeting room, and other lodging and leisure related services for Brand hotels and Other Starwood Brand hotels and any other lodging and related facilities and services (e.g., spa, golf and health club facilities) owned, Operated or licensed by Licensor, or any Affiliate thereof (including Starwood), through such means as specified from time to time by Licensor, including Technology Systems, telephone, and Internet.

Reserve Fund – a separate account into which Licensee must set aside funds for payment for Routine Capital Improvements and Renovations to the Hotel, as set forth in Section 5.9.4.

Reserve Fund Contribution – the amount contributed monthly to the Reserve Fund equal to (i) 3% of Gross Rooms Sales for months 1 through 24 after the Opening Date (including any partial month in which the Opening Date occurs), and (ii) 4% of Gross Rooms Sales for all months thereafter.

Restoration – the activity of repairing, restoring, replacing, or rebuilding the Hotel as required under Article 15, after a Casualty or Condemnation, in accordance with the Standards and Policies and this Agreement.

Restricted Area – as defined in Section 2.2.1.

ROI Capital Improvements – all repairs, alterations, improvements, replacements, renewals and additions to the Premises that are capitalized under GAAP if they are material to a change in property and involve a material change in the primary use of, or a material physical expansion or alteration of, the Hotel (including adding or removing Guest Rooms or meeting rooms, or changing the configuration of the Hotel as set forth in Exhibit A hereto).

Routine Capital Improvements – all maintenance, repairs, alterations, improvements, replacements, renewals and additions to the Premises (including replacements and renewals of FF&E and Supplies), that are capitalized under GAAP and not depreciated as real property. For avoidance of doubt, Routine Capital Improvements expressly exclude Building Capital Improvements and ROI Capital Improvements.

Software – all software (including all software used in connection with the Reservation System and other Licensor Technology) and accompanying documentation, provided to Licensee by or through Licensor, its Affiliates (including Starwood) or third parties designated by Licensor or its Affiliates for use as part of the System, and all updates, upgrades, enhancements, improvements, substitutions or other modifications thereof.

SPG Fee – the fee Licensor charges from time to time for the SPG Program pursuant to Article 3. As of the Effective Date, the SPG Fee is 5% of an SPG member's qualified guest folio charges during his or her stay at the Hotel, provided, however, that if an SPG member enrolls in the SPG Program at the Hotel, there is no charge for such SPG member's initial stay at the Hotel upon enrollment.

SPG Program – the Starwood Preferred Guest program, or any other frequency guest or customer loyalty program established by Licensor or any of its Affiliates.

Standards and Policies – the standards and policies for the design, development and Operation of the Hotel in connection with the System, including, without limitation, the architectural design, FF&E, ambiance (for

B-7

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of Starwood Hotels and Resorts. Please contact Therese Pritchard at (202) 508-6252 should any request be made for production of this document.

SHRW 00060

example, "look and feel", décor, audio and visual systems, System Programs and Services, system and Hotel-specific services, guest services and amenities, and other aspects of the Hotel facilities and Operation, as established by Licensor, Starwood or any of their respective Affiliates, and provided in the Manuals or otherwise in writing, as in effect at the time in question.

Starwood – Starwood Hotels & Resorts Worldwide, Inc., a Maryland corporation, and its successors and assigns, including any successor parent company of Licensor.

Supplies – all products, materials, goods and services used in the Operation of the Hotel.

System – the business methods, designs, processes, and arrangements for developing and Operating Brand hotels, including the Standards and Policies, Materials (including Manuals), Licensed Marks, Technology (including the Reservation System and other Licensor Technology), the mandatory and optional System Programs and Services (including the Marketing Program and Starwood Preferred Guest Program), and other programs and procedures described in this Agreement, which distinguish or are unique to the Brand, as they exist at the time in question.

System Improvements – as defined in Section 7.6.

System Programs and Services – as defined in Section 4.1.

System Programs and Services Charges – as defined in Section 4.1.3.

Technology – as defined in Section 5.8.1.

Term – as defined in Section 2.3.1.

Third-Party Software – as defined in the STARS Agreement.

Transfer – any Assignment, Hotel Transfer or Transfer of Ownership Interests.

Transfer of Ownership Interests – any (i) sale, assignment, disposition, conveyance, gift, pledge or other transfer of all or any Ownership Interest in Licensee or in any Parent Companies, if any, including any change in the Equity Owners listed in Exhibit A, (ii) merger, consolidation, reorganization or other restructuring of Licensee or of any Parent Companies, if any, (iii) issuance of additional Ownership Interests in Licensee or in any Parent Companies, if any, that would have the effect of diluting voting rights or beneficial ownership of the Ownership Interests in Licensee or in any Parent Companies, if any, in each case whether voluntary, involuntary, by operation or law or otherwise (including as a result of any divorce, bankruptcy, insolvency or dissolution proceedings, by declaration of or transfer in trust, or under a will or the laws of intestate succession).

Transfer of Control – any Transfer of Ownership Interests that results in either (i) a transfer of 50% or more of the Ownership Interests in Licensee or in its Parent Companies, if any, or (ii) the loss of the right to direct or control the management of the day-to-day operations of Licensee.

Uniform System – the latest edition of the Uniform System of Accounts for the Lodging Industry that is published by the Hotel Association of New York City, Inc. and approved by the American Hotel & Motel Association (currently, the 9th Revised Edition, 1996).

B-8

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of Starwood Hotels and Resorts. Please contact Therese Pritchard at (202) 508-6252 should any request be made for production of this document.

SHRW 00061

## EXHIBIT C TO LICENSE AGREEMENT

### RESTRICTED AREA

The Restricted Area shall include all the land in Cook County, Illinois within the following boundary: commencing at the intersection of West Touhy Avenue and North Harlem Avenue; then proceeding south along the centerline of North Harlem Avenue to its intersection with West Irving Park Road; then proceeding west along the centerline of West Irving Park Road, which becomes Irving Park Road, then continuing west along the centerline of Irving Park Road to its intersection with US-19/US-45; then proceeding north along the centerline of US-19/US-45 East Touhy Avenue; then proceeding east along the centerline of East Touhy Avenue, which becomes West Touhy Avenue, then continuing east along the centerline of West Touhy Avenue to the point of beginning.

The description of the Restricted Area shall be construed as of April 16, 2007 notwithstanding any changes made by state governments, municipalities or other third parties to such description after April 16, 2007. If the description of the Restricted Area above does not close, the shortest straight line possible shall be used to close the description.

C-1

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of
Starwood Hotels and Resorts. Please contact Therese Pritchard at (202) 508-6252
should any request be made for production of this document.

SHRW 00062

**EXHIBIT E TO LICENSE AGREEMENT**

**LIFE SAFETY CERTIFICATION**

Reference is made to that certain Agreement dated $\underline{June\ 29}$ , 2007 between Westin Hotel Management, L.P. and Upscale Hospitality, LLC for the Hotel located at 8201 W. Higgins Road, Chicago, IL 60631 and Operating as a Brand hotel. All capitalized terms used without definition in this Exhibit E shall have the meanings assigned to such terms in the Agreement.

Licensee hereby certifies to Licensor that:

1.     The Hotel complies with the requirements set forth in the Starwood Fire and Life Safety Manuals, dated March 28, 2003 (the "Fire and Life Safety Manuals"); and

2.     All systems described in or required by the Fire and Life Safety Manuals are operational or have been made operational in accordance with the requirements in the Fire and Life Safety Manuals.

LICENSEE:

UPSCALE HOSPITALITY, LLC
By its Managing Member,

By: _____
Name: ANISHOD SETH I
Title: MANAGING MEMBER

Secretary

E-1

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of
Starwood Hotels and Resorts.  Please contact Therese Pritchard at (202) 508-6252
should any request be made for production of this document.

SHRW 00063

<u>EXHIBIT G TO LICENSE AGREEMENT</u>

**STATE RIDERS TO LICENSE AGREEMENT**

**ILLINOIS RIDER**
**TO**
**LICENSE AGREEMENT**

**BETWEEN WESTIN HOTEL MANAGEMENT, L.P.**

**and**

**UPSCALE HOSPITALITY, LLC**

This Rider is a part of the aforesaid LICENSE AGREEMENT, dated ___June 29___, 2007 as if

the sections below were set forth therein.

In recognition of the requirements of the Illinois Franchise Disclosure Act (the "Act"), the parties to the above License Agreement agree that to the extent any of the License Agreement provisions referenced below conflict with the provisions of the Act, the applicable paragraphs below shall be effective to the extent of such conflict, but only to the extent required by the applicable and enforceable Act and only as long as the Act remains in effect unchanged.

1. Sections 16.1 and 16.2 of the License Agreement, to the extent required by the Act, shall be modified so as not to conflict with the Act, which provides that termination of the License

Agreement by Licensor before the expiration of its term shall be only for "good cause," which shall include, but not be limited to:

(i)    the failure of Licensee to comply with any lawful provision of the License Agreement, following notice of default by Licensor giving a reasonable opportunity to cure, which such cure period need not exceed thirty (30) days; and

(ii)    without requiring notice and an opportunity to cure, when Licensee:

    (a)    makes an assignment for the benefit of creditors or a similar disposition of the assets of the licensed business,

    (b)    voluntarily abandons the licensed business,

    (c)    is convicted of a felony or other crime which substantially impairs the goodwill associated with Licensor's trademark, service mark, trade name or other commercial symbol, or

    (d)    repeatedly fails to comply with the lawful provisions of the License Agreement or other agreement with Licensor.

G-1

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of Starwood Hotels and Resorts. Please contact Therese Pritchard at (202) 508-6252 should any request be made for production of this document.

SHRW 00064

2. Sections 17.1.1, 17.4 and 19.1 of the License Agreement and the references to them in Items 17(u), 17(v) and 17(w) of the Uniform Franchise Offering Circular shall be modified so as not to conflict with the Act, which provides in Section 4 that any provision that designates jurisdiction or venue in a forum outside the State of Illinois is void provided that arbitrations may be provided in a forum outside the State of Illinois and Rule Section 200.608 prohibits a provision providing for a choice of law for any state other than Illinois.

3. Section 18.3 of this License Agreement shall be deleted in its entirety so as not to conflict with the Act. In substitution, Licensee will complete the Illinois Franchise Disclosure Questionnaire and deliver to Licensor.

4. Section 41 of the Act prohibits and voids any condition, stipulation or provision in an agreement purporting to bind any person acquiring any franchise to waive compliance with any provision of the Act or any other law of Illinois.

**LICENSOR:**

**WESTIN HOTEL MANAGEMENT, L.P.**

By: _William Anl_

Name: _william Anderson_

Title: _Vice President & Assistant Secretary_

**LICENSEE:**

**LICENSEE:**

**UPSCALE HOSPITALITY, LLS**
By Its Managing Member

By: _____

Name: ANSHOO SETHI

Title: MANAGING MEMBER

Attest: _____
Secretary

G-2

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of
Starwood Hotels and Resorts. Please contact Therese Pritchard at (202) 508-6252
should any request be made for production of this document.

SHRW 00065

**EXHIBIT H TO LICENSE AGREEMENT**

**GUARANTEE**

This Guarantee ("Guarantee") is given in consideration of and as an inducement to Westin Hotel Management, L.P., as Licensor, to enter into the license agreement as provided with Upscale Hospitality, LLC, as Licensee, dated June 29 , 2007 (the "Agreement"), for Operation of a Brand hotel at 8201 W. Higgins Road, Chicago, IL 60631 (the "Hotel"). Each of the undersigned (the "Guarantor(s)") has a financial or other interest in Licensee, and will derive substantial benefit from the execution of the Agreement by Licensor. (All capitalized terms used without definition in this Guarantee shall have the meanings assigned to such terms in the Agreement.)

1.     **Undertakings of Guarantor(s).** Each Guarantor hereby agrees to the following:

(a)     Each Guarantor individually and unconditionally guarantees to Licensor and its successors and assigns, for the Term of the Agreement and thereafter as provided in the Agreement, that (i) Licensee shall punctually pay and perform each and every undertaking, agreement, covenant, liability and obligation of Licensee set forth in the Agreement, the STARS Agreement and in any other agreement between Licensor or its Affiliates and Licensee, including any promissory note (collectively, "Agreements"), as the same may be amended from time to time; (ii) Guarantor shall render any payment and performance required of Licensee under the Agreements upon demand if Licensee fails or refuses punctually to do so; and (iii) Licensee's representations and warranties in the Agreements are true and correct.

(b)     Each Guarantor agrees to be bound personally by those provisions of the Agreements binding upon Licensee, its Affiliates or others associated with Licensee which involve proprietary rights, confidentiality, transfers, Gaming Laws, covenants not to compete, post-termination obligations, indemnification and governing law and dispute resolution.

2. **Waiver.** Each guarantor hereby irrevocably waives, to the fullest extent permitted under law, the following:

(a) acceptance and notice of acceptance by Licensor;

(b) notice of demand upon Licensee for payment of any indebtedness or nonperformance of any obligations hereby guaranteed;

(c) protest and notice of default to any party with respect to the indebtedness or nonperformance of any obligations hereby guaranteed;

(d) any right Guarantor may have to require that an action be brought against Licensee or any other person or Guarantor as a condition of liability;

(e) all rights to payments and claims for reimbursement or subrogation which any Guarantor may have against Licensee arising as a result of Guarantor's execution of and performance under this Guarantee, if Licensee still owes monies to Licensor or its affiliates;

(f) any Applicable Law that requires that Licensor make demand upon, assert claims against or collect from Licensee or any others, foreclose any security interest, sell collateral, exhaust any remedies or take any other action against Licensee or any others prior to making any demand upon, collecting from or taking any action against any Guarantor with respect to this Guarantee;

(g) any and all other notices and legal or equitable defenses to which Guarantor may be entitled; and

(h) any and all right to have any legal action or proceeding under this Guarantee decided by a jury.

H-1

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of Starwood Hotels and Resorts. Please contact Therese Pritchard at (202) 508-6252 should any request be made for production of this document.

SHRW 00066

3.   Nature of Obligations. Each Guarantor consents and agrees to the following:

   (a)   Guarantor's direct and immediate liability under this Guarantee shall be joint, several and primary;

   (b)   Guarantor's liability shall not be contingent or conditioned upon anything, including, without limitation, pursuit by Licensor of any remedies against Licensee or any other Person;

   (c)   No extension of time, credit or other indulgence which Licensor may from time to time grant to Licensee or to any other Person, including, without limitation, the acceptance of any partial payment or performance or the compromise or release of any claims, shall in any way modify or amend Guarantor's liability under this Guarantee;

   (d)   Monies received from any source by Licensor for application toward payment of obligations under the Agreements or this Guarantee may be applied in any manner or order deemed appropriate by Licensor;

   (e)   Guarantor's obligations under this Guarantee shall not be affected by the voluntary or involuntary liquidation, sale or other disposition of any of Licensee's assets, or the receivership, insolvency, bankruptcy, reorganization or similar proceedings involving Licensee, or any discharge of Licensee from any of its obligations under the Agreement or Agreements. This Guarantee shall remain in full force and effect or shall be reinstated if any payment by Licensee of any amount guaranteed hereunder is rescinded or is required to be returned under Applicable Law; and

   (f)   The Agreements may be amended from time to time, and Guarantor's obligations under this Guarantee will apply to such Agreements as amended. Each Guarantor hereby waives consent to and notice of any amendment to the Agreements.

4.   Parties.

   (a)   If any Guarantor ceases to be associated with Licensee prior to termination or expiration of all of

the Agreements, that Person agrees that his obligations under this Guarantee shall remain in force and effect unless Licensor, in its sole and absolute discretion, in writing, releases that Person from this Guarantee.

Case: 1:13-cv-00982 Document #: 10-1 Filed: 02/06/13 Page 73 of 128 PageID #:485

(b)     A release by Licensor of any Guarantor for any reason shall not affect the obligations of any other Guarantor.

(c)     Licensor's interests in and rights under this Guarantee are freely assignable, in whole or in part, by Licensor.

(d)     Any assignment by Licensor or Licensee of the Agreements or any of them shall not release any Guarantor from this Guarantee unless Licensor, in its sole and absolute discretion, in writing, releases that Person from this Guarantee.

5.     **Enforcement**.

(a)     Each Guarantor agrees to reimburse Licensor for all costs and expenses paid or incurred by Licensor in enforcing the Agreements or this Guarantee, including, but not limited to, reasonable accountants', attorneys', attorneys' assistants' and expert witness fees, cost of investigation and proof of facts, court costs, other litigation or dispute resolution expenses and travel and living expenses.

(b)     Article 17 and Sections 19.1 and 19.2 of the Agreement are hereby incorporated by reference and for this purpose each Guarantor shall be deemed a "Party" or "Licensee" in construing such Article and Sections.

(c)     The captions used in this Guarantee are for convenience only, and shall not affect the meaning of the terms hereof.

H-2

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of Starwood Hotels and Resorts. Please contact Therese Pritchard at (202) 508-6252 should any request be made for production of this document.

SHRW 00067

6.  **Duration.**

    (a)     This Guarantee shall survive the expiration or termination of the Agreement and/or Agreements.

    (b)     This Guarantee shall be binding upon each Guarantor and his successors and assigns, and shall inure to the benefit of Licensor and its Affiliates that are parties to the Agreements, if any, and their respective successors and assigns.

    (c)     Upon the death of a Guarantor, the estate of such Guarantor shall be bound by this Guarantee for Licensee's obligations to Licensor existing at the time of death, and the obligations of all other Guarantor(s) will continue in full force and effect.

7.  **Entire Agreement.**

    (a)     This writing is intended by the Guarantor(s) and Licensor as the final and complete expression of the terms of this Guarantee. No course of dealing, course of performance or trade usage, and no parole evidence of any nature shall be used to supplement or modify any terms of this Guarantee. This Guarantee may only be amended as to any Guarantor in a writing signed by Licensor and that Guarantor.

    *Signatures on the following page*

H-3

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of
Starwood Hotels and Resorts. Please contact Therese Pritchard at (202) 508-6252
should any request be made for production of this document.

SHRW 00068

IN WITNESS WHEREOF, each Guarantor has signed this Guarantee effective as of the Effective Date.

**GUARANTORS:**

_____
Witness

Ravinder Sethi, Individually

_____
Witness

Anshoo Sethi, Individually

**H-4**

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of
Starwood Hotels and Resorts. Please contact Therese Pritchard at (202) 508-6252
should any request be made for production of this document.

SHRW 00069

## FIRST AMENDMENT TO LICENSE AGREEMENT

This "AMENDMENT" is made and entered into as of this $\underset{\text{12}^{th}}{\overset{22^{nd}}{\phantom{x}}}$ day of ~~Sept~~ October, 2008, by and between Westin Hotel Management, LP, a Delaware limited partnership ("Licensor") and Upscale Hospitality, LLC, an Illinois limited liability company ("Licensee"). This Amendment supplements that certain License Agreement dated June 29, 2007 (the "Agreement") between the parties, relating to a license to operate an Element Hotel located at 8201 W Higgins Rd., Chicago, IL 60631 (the "Hotel").

To the extent there is any direct conflict between the Agreement and this Amendment, this Amendment shall govern and control, otherwise, the conflicting provisions in the Agreement and this Amendment shall be read to the extent possible to give effect to both.

1.    The Agreement is amended by deleting the present Section 2.2.1.

2.    The Agreement is amended by deleting the present Section 16.3.2.

3.    The Agreement is amended by deleting the present Exhibit C and replacing it with the attached Exhibit C.

4.    For valuable consideration, including but not limited to Licensor amending the License Agreement, the receipt and sufficiency of which consideration, is acknowledged by Licensee, Licensee for itself and its respective past, present and future principals, shareholders, representatives, investors, directors, officers, agents, employees, attorneys, successors and assigns, hereby releases and forever discharges Licensor, and its past, present and future principals, representatives, directors, officers,

agents, shareholders, employees, attorneys, parents, affiliates, subsidiaries (whether wholly-owned or not), successors and assigns, from any and all claims or liabilities arising, or which may arise or have arisen prior to this date, whether known or unknown, including, but not limited to any claims or liabilities arising out of or related to the Agreement, the Reservations and Technology Systems Agreement, the Licensor-Licensee relationship between Licensor and its affiliates and Licensee, relating to the Hotel, or any acts or omissions under either prior to the date hereof, and from any and all damages flowing therefrom.

5.   Except as expressly stated in this Amendment, no further additions, modifications or deletions to the Agreement are intended by the parties or made by this Amendment. All other terms and conditions of the Agreement remain in full force and effect.

*[Signatures commence on the following page]*

1

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of Starwood Hotels and Resorts. Please contact Therese Pritchard at (202) 508-6252 should any request be made for production of this document.

SHRW 00070

IN WITNESS WHEREOF, the parties have executed this Amendment as of the day and year first above written:

**LICENSOR:**

WESTIN HOTEL MANAGEMENT, L.P.

By: _William Anderson_
Name: William Anderson
Title: Vice President & Assistant Secretary

**LICENSEE:**

UPSCALE HOSPITALITY, LLC
By its Managing Member,

By: _Ravinder Sethi_
Name: Ravinder Sethi
Title: Mngmt. Partner

Attest:

2

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of
Starwood Hotels and Resorts. Please contact Therese Pritchard at (202) 508-6252
should any request be made for production of this document.

SHRW 00071

## EXHIBIT C TO LICENSE AGREEMENT

### RESTRICTED AREA

NOT APPLICABLE

C-1

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of Starwood Hotels and Resorts. Please contact Therese Pritchard at (202) 508-6252 should any request be made for production of this document.

SHRW 00072

## SECOND AMENDMENT TO LICENSE AGREEMENT

This "AMENDMENT" is made and entered into as of this 22nd day of OCTOBER , 2008, by and between Westin Hotel Management, LP, a Delaware limited partnership ("Licensor") and Upscale Hospitality, LLC, an Illinois limited liability company ("Licensee"). This Amendment supplements that certain License Agreement dated June 29, 2007 (the "Agreement") between the parties, relating to a license to operate an Element Hotel located at 8201 W Higgins Rd., Chicago, IL 60631 (the "Hotel").

To the extent there is any direct conflict between the Agreement and this Amendment, this Amendment shall govern and control, otherwise, the conflicting provisions in the Agreement and this Amendment shall be read to the extent possible to give effect to both.

1.     The Agreement is hereby amended by deleting the present Section 6.3 and replacing it with the following Section 6.3:

6.3   **Time for Completion**. Licensee shall begin construction, as defined in Section 6.2, on or before **June 1, 2009** and diligently and continuously complete or arrange for the completion of the construction of the Hotel in accordance with the approved final plans and specifications and in compliance with Standards and Policies, the Manuals, and Applicable Law and Approvals, and open the Hotel to the public not later than the Anticipated Opening Date. Licensee shall secure for Licensor and its agents the right to inspect the construction at any reasonable time; shall correct, upon Licensor's request and at Licensee's expense, any deviation from the approved site layout and plan and final plans and specifications; and shall furnish to Licensor a copy of the certificate of completion from Licensee's architect that the Hotel was built in accordance with the approved final plans and specifications, and in compliance with the Americans With Disabilities Act and obtain

Licensor's approval of the completed construction prior to opening all or any part of the Hotel for operation. Licensee acknowledges and agrees that Licensor's inspection will be limited to ensure that the construction complies with the Standards and Policies and design and operational elements of the final plans and specifications, but shall not constitute an inspection for compliance with Applicable Laws, Approvals or any structural or engineering requirements or standards. In the event Licensee desires to obtain a 90 day extension of the time set forth in this Section 6.3 for the commencement or completion of construction, Licensee must make such request in writing to Licensor not later than 30 days prior to the time stated herein for such event setting forth the reason for such request and the status of the construction of the Hotel and such other information as Licensor shall require in order to be able to consider Licensee's request. Licensor may grant or deny any such request for extension in its sole and absolute discretion. If any such extension of time is granted, Licensee shall pay to Licensor a fee $40,000 for each 90-day extension of either the commencement or completion date.

2.    The Agreement is hereby amended by adding the following Section 20.3:

20.3 **Submission of Additional Documents.** Licensee shall submit to Licensor (i) final renderings of the design layout of the Hotel and proof of full zoning and entitlement approvals by no later than December 31, 2008; (ii) proof of placement of equity for the project, financing letter of intent and description of the loan by no later than February 1, 2009; (iii) a copy of the finalized budget by no later than April 1, 2009; and (iv) a copy of the Letter of Commitment from the lender for senior debt, a copy of permits to begin demolition and construction and commence demolition by no later

1

L:\01 - Properties\Element IL Chicago O'Hare Airport 3189\Contract\License Agreement\2008 10 03 Element Chicago O'Hare 2nd amendment re dates.doc

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of Starwood Hotels and Resorts. Please contact Therese Pritchard at (202) 508-6252 should any request be made for production of this document.

SHRW 00073

than May 1, 2009. Failure to submit the above documents within the times specified by this Section 20.3 shall be deemed a default under the Agreement.

3.    The Agreement is hereby amended by deleting the present definition of "Anticipated Opening Date" in Exhibit B of the Agreement and replacing it with the following:

**<u>Anticipated Opening Date</u> – October 1, 2011**

4.    For valuable consideration, including but not limited to Licensor amending the License Agreement, the receipt and sufficiency of which consideration, is acknowledged by Licensee, Licensee for itself and its respective past, present and future principals, shareholders, representatives, investors, directors, officers, agents, employees, attorneys, successors and assigns, hereby releases and forever discharges Licensor, and its past, present and future principals, representatives, directors, officers, agents, shareholders, employees, attorneys, parents, affiliates, subsidiaries (whether wholly-owned or not), successors and assigns, from any and all claims or liabilities arising, or which may arise or have arisen prior to this date, whether known or unknown, including but not limited to any claims or liabilities arising out of or related to the Agreement, the Reservations and Technology Systems Agreement, the Licensor-Licensee relationship between Licensor and its affiliates and Licensee, relating to the Hotel, or any acts or omissions under either prior to the date hereof, and from any and all damages flowing therefrom.

5.    Except as expressly stated in this Amendment, no further additions, modifications or deletions to the Agreement are intended by the parties or made by this Amendment. All other terms and conditions of the Agreement remain in full force and effect.

*[Signatures commence on the following page]*

2

L:\01 - Properties\Element IL Chicago O'Hare Airport 3189\Contract\License Agreement\2008 10 03 Element Chicago O'Hare 2nd amendment re dates.doc

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of Starwood Hotels and Resorts. Please contact Therese Pritchard at (202) 508-6252 should any request be made for production of this document.

SHRW 00074

IN WITNESS WHEREOF, the parties have executed this Amendment as of the day and year first above written:

**LICENSOR:**

**WESTIN HOTEL MANAGEMENT, L.P.**

By: W. Allen Anderson

Name: William Anderson

Title: Vice President a Assistant Secretary

**LICENSEE:**

**UPSCALE HOSPITALITY, LLC**
By its Managing Member,

By: 

Name: ANSHOO SETHI

Title: PRESIDENT

Attest:

3

L:\01 - Properties\Element IL Chicago O'Hare Airport 3189\Contract\License Agreement\2008 10 03 Element Chicago O'Hare 2nd amendment re dates.doc

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of       SHRW 00075
Starwood Hotels and Resorts.  Please contact Therese Pritchard at (202) 508-6252
should any request be made for production of this document.

Exhibit 8

Felker Declaration



**STARWOOD**

HOTELS & RESORTS WORLDWIDE. INC.

September 11, 2009

*VIA OVERNIGHT DELIVERY*

Mr. Anshoo Sethi
1314 S. Plymouth CT.
Chicago, IL 60605

RE:     License Agreement between Upscale Hospitality, LLC ("Licensee") and Westin
Hotel Management, L.P. ("Licensor") dated June 29, 2007 as amended October 22,
2008 (the "Agreement") for the construction and operation of an Element hotel to be
located at 8201 W. Higgins Road, Chicago, IL 60631 (the "Hotel") (PIN# 3189)

Dear Mr. Sethi:

By letter dated August 10, 2009, we sent you a notice of default and termination advising that the
Agreement would be terminated thirty (30) days from the date of that letter unless you provided
proof of the equity placement for the project, a financing letter of intent and a description of the
loan; provide a copy of the finalized budget and commence construction as set forth in the
Agreement. We have determined that construction has not commenced and we have not received
any of the aforementioned documents, and as a result effective as of September 14, 2009, the
Agreement will be terminated. You should cease representation of the Hotel as an Element hotel
immediately, including but not limited to, referring to the Hotel as an Element hotel in oral or

written disclosures.

pursuant to Section 16.4 of the Agreement, liquidated damages in the sum of $1,152,000.00 are now due and payable. Licensor reserves all of its equitable rights and remedies, including the right to exercise appropriate proceedings at law or equity to obtain relief from injury, including recovery of damages and injunctive relief, resulting from Licensee's breach of this Agreement. Be advised that as a Guarantor, you along with Ravinder Sethi are personally liable for the obligations of License, and Licensor may exercise its rights under the Agreement to proceed against the Guarantors to satisfy any remaining obligations of Licensee.

This notice has no bearing on, and in no way supersedes or affects any current or future default and termination notices, if any, issued by Licensor relative to the subject Hotel other than for matters addressed in this letter.

Should you have any questions, please do not hesitate to contact me at 770-857-2032.



600 Galleria Parkway, Suite 1700, Atlanta, Georgia 30339
Tel: 770 867 2000   Fax: 770 857 2040

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of Starwood Hotels and Resorts. Please contact Therese Pritchard at (202) 508-6252 should any request be made for production of this document.

SHRW 00090

Mr. Anshoo Sethi
September 11, 2009
Page 2

Very truly yours,
WESTIN HOTEL MANAGEMENT, L.P.

Kathie S. Lee
Vice President and Associate General Counsel

09/11/09 AB Trk#0 100 129894
R#455 1498 138   PBRE  Inv#

UPS   1L 104      7.41
Wt:  0.00 lb

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of
Starwood Hotels and Resorts.  Please contact Therese Pritchard at (202) 508-6252
should any request be made for production of this document.

SHRW 00091

Exhibit 9

Felker Declaration

starwood
Hotels and
Resorts

600 galleria parkway, suite 1700
atlanta, ga 30339
T 770 857 2000
F 770 857 2040

November 19, 2009

*VIA OVERNIGHT DELIVERY*

Mr. Anshoo Sethi
1314 S. Plymouth CT.
Chicago, IL 60605

RE: License Agreement between Upsliding, Inc. ("Licensee") and The Sheraton LLC
("Licensor") dated June 29, 2007, as amended October 22, 2008 (the "Agreement")
for the construction and operation of a Four Points by Sheraton hotel to be located at
8201 W. Higgins Road, Chicago, IL 60631 (the "Hotel") (PIN# 3187)

Dear Mr. Sethi:

By letter dated October 5, 2009, we sent you a notice of default and termination advising that the
Agreement would be terminated thirty (30) days from the date of that letter if the default was not
cured. We have determined that construction has not commenced and we have not received any
of the aforementioned documents, and as a result effective as of November 20, 2009, the
Agreement will be terminated. You should cease representation of the Hotel as a Four Points by
Sheraton hotel immediately, including but not limited to, referring to the Hotel as a Four Points
by Sheraton hotel in oral or written disclosures.

Pursuant to Section 16.4 of the Agreement, liquidated damages in the sum of $1,425,493.00 are

now due and payable. Licensor reserves all of its legal and equitable rights, including the right to exercise appropriate proceedings at law or equity to obtain relief from any injury, including recovery of damages and injunctive relief, resulting from Licensee's breach of this Agreement. Be advised that as a Guarantor, you along with Ravinder Sethi are personally liable for the obligations of License, and Licensor may exercise its rights under the Agreement to proceed against the Guarantors to satisfy any remaining obligations of Licensee.

Further, pursuant to the Promissory Note, Licensee was to pay to Licensor $61,650.00 upon the earlier of (i) 90 days prior to the Opening Date of the Hotel as defined in the License Agreement or (ii) July 1, 2009. To date, Licensor has not received payment, which is now due and payable. In addition, failure to strictly observe or perform any obligation in any agreement between Licensor and/or Upsliding, Inc., Ravinder Sethi, and Anshoo Sethi is a default under the Promissory Note and pursuant to the terms of the Agreement.

This notice has no bearing on, and in no way supersedes or affects any current or future default and termination notices, if any, issued by Licensor relative to the subject Hotel other than for matters addressed in this letter.

Should you have any questions, please do not hesitate to contact me at 770-857-2032.

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of Starwood Hotels and Resorts. Please contact Therese Pritchard at (202) 508-6252 should any request be made for production of this document.

SHRW 00081

Mr. Anshoo Sethi
November 19, 2009
Page 2

Very truly yours,
THE SHERATON LLC

Kathie S. Lee
Vice President and Associate General Counsel

11/19/09 AB Trk#0100134244
R#4551498571  PBRE Inv#

UPS  IL 104   7.41
Wt: 0.00 lb

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of
Starwood Hotels and Resorts. Please contact Therese Pritchard at (202) 508-6252
should any request be made for production of this document.

SHRW 00082

## PROMISSORY NOTE

8201 W. Higgins Road
Chicago, IL 60631

July _____, 2007

PIN 3187

STATE OF GEORGIA )
                 )
COUNTY OF COBB   )

FOR VALUE RECEIVED, the Undersigned, Upstiding, Inc., an Illinois corporation, Ravinder Sethi, an individual and Anshoo Sethi, an individual, jointly and severally promises to pay to the order of The Sheraton LLC ("Payee" and together with any holder hereof, the "Holder"), at 600 Galleria Parkway, Suite 1700, Atlanta, GA 30339 or at any such other place as the Holder may designate in writing, the principal sum of Sixty-one thousand six hundred fifty dollars ($61,650.00), plus all accrued and unpaid interest on the unpaid balance of such principal amount at the rate of interest and terms and conditions set forth below until full and final payment.

No interest shall accrue on the unpaid principal balance hereof prior to the occurrence of any "Event of Default" (as herein defined). The Undersigned shall pay all costs of collection, including fifteen percent (15%) of the outstanding principal and interest as attorney's fees, if this Note is collected by legal action or through an attorney at law.

All principal and interest shall be paid in immediately available funds and in lawful money of the United States of America. Principal and interest shall be payable in full upon the earlier of (i) 90 days prior to the Opening

Date of the Hotel as defined in the License Agreement dated June 29, 2007 between The Sheraton LLC and Upsliding, Inc., or (ii) July 1, 2009.

The Undersigned shall have the right at any time to prepay the indebtedness represented by this Note in whole or in part without premium or penalty. If a prepaid payment is made while principal is scheduled to be repaid in installments, the partial prepayment shall be applied to installments of principal in reverse order of their maturity.

Upon the occurrence of one or more Events of Default as defined herein:

(a) any and all of the debts and liabilities of the Undersigned to the Holder, whether contained herein or otherwise, may, at the option of the Holder and without demand or notice of any kind, be declared and immediately become due and payable in full, and the Holder may exercise any rights available to it at law or in equity, or available under any agreement, relating to any liability of the Undersigned to the Holder; and

(b) interest shall accrue under this Note at eighteen percent (18%) per annum.

The following shall constitute "Events of Default" hereunder:

(1) the failure to pay when due any principal or interest hereunder; (2) the failure to strictly observe or perform any covenant, obligation, term or condition in any agreement between the Undersigned and the Holder or any of its parent, subsidiaries or affiliates; (3) the Undersigned, or any other person or party obligated on all or any portion of the indebtedness evidenced by this Note shall (i) make an assignment for the benefit of its creditors; (ii) admit in writing its inability to pay its debts when they become due; (iii) file or have filed against it a petition or any other pleading instituting a case under any bankruptcy, insolvency, reorganization, arrangement, or other debtor relief law; (iv) appoint or consent to the appointment of a receiver, conservator, liquidating agent, or committee; or

L:\01 - Properties\FP IL Chicago-O'Hare East 3187\2007 07 24 PROMNOTE.Non-Interest.doc

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of Starwood Hotels and Resorts. Please contact Therese Pritchard at (202) 508-6252 should any request be made for production of this document.

SHRW 00083

(v) take any action for the purpose of effecting any of the foregoing; (4) the Undersigned shall provide any representation, warranty or information to the Holder (A) that is materially false when made or provided or (B) that becomes materially false as a continuing representation or warranty or as continuing information; (5) the Undersigned or any other person or party obligated on all or any part of the indebtedness evidenced by this Note shall be insolvent on a cash flow or balance sheet basis; (6) the Undersigned shall become subject to any state or federal regulatory or agency order, directive, memorandum of understanding or proceeding, other than regulatory and agency actions of general applicability; or (7) the Undersigned shall (i) default (as principal of or guarantor or other surety) in the payment of any principal of, or premium, if any, or interest on, or other payment with respect to any indebtedness or (ii) default with respect to any of the terms of any of such indebtedness or of any agreement relating thereto, and such default or event of default gives the holder of the obligation (x) the right to accelerate such indebtedness (whether or not such holder has, in fact, accelerated such indebtedness), or (y) the right to take action with respect to any collateral therefor.

The failure or forbearance of the Holder to exercise any right hereunder, or otherwise granted to it by law or another agreement, shall not affect or release the liability of the Undersigned, and shall not constitute a waiver of such right unless so stated by the Holder in writing.

The Undersigned hereby consents to the jurisdiction of the Superior Court of Cobb County, Georgia (and to the jurisdiction of the United States District Court for the Northern District of Georgia) for any action relating to this Note and enforcement hereof, and the Undersigned hereby waives the right to sue or initiate proceedings other than in such courts. The Undersigned hereby agrees that such courts shall be the proper venue for any legal proceeding arising out of or related to this Note and the transactions given rise thereto, and the Undersigned hereby waives any objection to such venue.

Time is of the essence in the payment and performance of this Note. This Note shall be governed by and construed in accordance with the substantive laws of the State of Georgia.

THE UNDERSIGNED HEREBY WAIVES ALL RIGHTS TO PRESENTMENT, PROTEST AND NOTICE OF DISHONOR.

This Note is executed under the hand and seal of the Undersigned on the date first-above written.

Case: 1:13-cv-00982 Document #: 10-1 Filed: 02/06/13 Page 105 of 128 PageID #:517

UPSLIDING, INC.

By: _____

Name: ANSHOO SETHI

Title: MANAGING MGR

Attest: _____
Secretary

_____
Ravinder Sethi, individually

_____
Anshoo Sethi, individually

L:\01 - Properties\FF IL Chicago O'Hare East 3187\2007 07 24 PROMNOTE.Non-Interest.doc

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of
Starwood Hotels and Resorts. Please contact Therese Pritchard at (202) 508-6252
should any request be made for production of this document.

SHRW 00084

Exhibit 10

Felker Declaration



**STARWOOD**
HOTELS & RESORTS WORLDWIDE, INC.

June 2, 2010

*Via Overnight Delivery*

Mr. Anshoo Sethi
1314 S. Plymouth CT.
Chicago, IL 60605

        Re:    License Agreement between Upscale Hospitality, LLC ("Licensee") and Westin
Hotel Management, L.P. ( the "Licensor") dated June 29, 2007 as amended October
22, 2008 (the "Agreement") for the construction and operation of an Element hotel
to be located at 8201 W. Higgins Road, Chicago, IL 60631 (the "Hotel") (PIN#
3189)

Dear Mr. Sethi:

By letter dated September 11, 2009, we advised you that the above-referenced Agreement expired
on September 14, 2009. Pursuant to Section 16.4 of the Agreement, liquidated damages in the
amount of $1,152,000.00 are now due and payable. Licensor reserves all of its legal and
equitable rights and remedies, including the right to exercise appropriate proceedings at law or
equity to obtain relief from any injury, including recovery of damages and injunctive relief,
resulting from Licensee's breach of this Agreement. Please remit payment to Licensor by no later

than **June 14, 2010.** All payments should be sent via wire to:

Account Name:       Starwood Hotels & Resorts Worldwide, Inc.
Bank Name, Loc:     Bank of America, New York, NY
Bank ABA # (wires only):    026009593
Bank ABA # (ACH only):      111000012
Account #:          4426303552
SWIFT address:      BOFAUS3N
CHIPS address:      0959

Please send advance wire notice to remittance@starwoodhotels.com

Be advised that as a Guarantor, you along with Ravinder Sethi are personally liable for the obligations of Licensee, and Licensor will exercise its rights under the Agreement to proceed against the Guarantors to satisfy any remaining obligations of Licensee.

We hope that you will take the appropriate action making further action by us unnecessary. However, if you fail to remit payment by **June 14, 2010,** we are prepared to proceed against the Licensee and each Guarantor.

Should you have any questions, please contact me at 770-857-2032.



600 Galleria Parkway. Suite 1700, Atlanta, GA 30339
Tel: 770 857 2000   Fax: 770 857 2040

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of
Starwood Hotels and Resorts.  Please contact Therese Pritchard at (202) 508-6252
should any request be made for production of this document.

SHRW 00096

Anshoo Sethi
June 2, 2010
Page 2


Very truly yours,

*Kathie S. Lee* (signature)

Kathie S. Lee
Vice President and Associate General Counsel

cc:    Ravinder Sethi
       David Fish, Esq.


06/02/10 AB Trk#0 100 146820
R#455 149773 1   PBRE Inv#

UPS   1L  104    7.41
Wt:  0.00 lb

Anshoo Sethi

```
                                      R#455 1497731   PBRE  Inv#

                                      UPS   1L 104     7.41
                                      Wt:  0.00 lb
```

Fish

```
                                      06/02/10 AB Trk#0 100 146848
                                      R#455 1497731   PBRE  Inv#

                                      UPS   1L 104     7.41
                                      Wt:  0.00 lb
```

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of
Starwood Hotels and Resorts. Please contact Therese Pritchard at (202) 508-6252
should any request be made for production of this document.

SHRW 00097



# STARWOOD
HOTELS & RESORTS WORLDWIDE, INC.

June 2, 2010

*Via Overnight Delivery*
Mr. Anshoo Sethi
1314 S. Plymouth CT.
Chicago, IL 60605

RE: License Agreement between Upsliding, Inc. ("Licensee") and The Sheraton LLC
("Licensor") dated June 29, 2007, as amended October 22, 2008 (the "Agreement")
for the construction and operation of a Four Points by Sheraton hotel to be located at
8201 W. Higgins Road, Chicago, IL 60631 (the "Hotel") (PIN# 3187)

Dear Mr. Sethi:

By letter dated November 19, 2009 we advised you that the above-referenced Agreement
terminated on November 20, 2009. Pursuant to Section 16.4 of the Agreement, liquidated
damages in the amount of $1,425,493.00 is now due and payable. Licensor reserves all of its legal
and equitable rights and remedies, including the right to exercise appropriate proceedings at law
or equity to obtain relief from any injury, including recovery of damages and injunctive relief,
resulting from Licensee's breach of this Agreement. Please remit payment to Licensor by no later
than **June 14, 2010.** Further, pursuant to the Promissory Note, Licensee was to pay to Licensor
$61,650.00 upon the earlier of (i) 90 days prior to the Opening Date of the Hotel as defined in the
License Agreement or (ii) July 1, 2009. To date, Licensor has not received payment, which is
now due and payable. Please remit payment by no later than **June 14, 2010.**

All payments should be sent via wire to:

| | |
|---|---|
| Account Name: | Starwood Hotels & Resorts Worldwide, Inc. |
| Bank Name, Loc: | Bank of America, New York, NY |
| Bank ABA # (wires only): | 026009593 |
| Bank ABA # (ACH only): | 111000012 |
| Account #: | 4426303552 |
| SWIFT address: | BOFAUS3N |
| CHIPS address: | 0959 |

Please send advance notice of the wire to remittance@starwoodhotels.com.

Be advised that as a Guarantor, you along with Ravinder Sethi are personally liable for the obligations under the terms of the License Agreement, and Licensor may exercise its rights under the Agreement to proceed against the Guarantors to satisfy any remaining obligations of Licensee.

We hope that you will take the appropriate action making further action by us unnecessary. However, if you fail to remit payment by no later than June 14, 2010, we are prepared to proceed against the Licensee and each Guarantor.



600 Galleria Parkway, Suite 1700, Atlanta, GA 30339
Tel: 770 857 2000   Fax: 770 857 2040

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of Starwood Hotels and Resorts. Please contact Therese Pritchard at (202) 508-6252 should any request be made for production of this document.

SHRW 00098

Mr. Anshoo Sethi
June 2, 2010
Page 2

Should you have any questions, please contact me at 770-857-2032.

Very truly yours,
THE SHERATON LLC

*Kathie S. Lee*

Kathie S. Lee
Vice President and Associate General Counsel

cc:     Ravinder Sethi
        David Fish, Esq.

Confidential treatment requested pursuant to FOIA by Bryan Cave LLP on behalf of
Starwood Hotels and Resorts. Please contact Therese Pritchard at (202) 508-6252
should any request be made for production of this document.

SHRW 00099

Exhibit 11

Felker Declaration

LOCATION: Intersection of
Higgins Road
and Cumberland
Avenue
Chicago, IL 60631

LOCATION #: 14536

DATE: December 30, 2008

## STAYBRIDGE SUITES HOTEL
## LICENSE AGREEMENT

## WITH

## EXTENDED HOSPITALITY, INC.

## LICENSEE

SEC-IHG-E-0000005

1. The License: ............................................................................................................. 1
   A. THE HOTEL ........................................................................................................ 1
   B. THE SYSTEM ...................................................................................................... 2
2. Grant Of License: ...................................................................................................... 2
3. Licensee's Responsibilities: ...................................................................................... 3
   A. OPERATIONAL AND OTHER REQUIREMENTS ....................................................... 3
   B. UPGRADING OF THE HOTEL .............................................................................. 4
   C. FEES ................................................................................................................. 4
4. Licensor's Responsibilities: ...................................................................................... 6
   A. TRAINING .......................................................................................................... 6
   B. RESERVATION SERVICES .................................................................................... 7
   C. CONSULTATION ON OPERATIONS, FACILITIES AND MARKETING ........................ 7
   D. MAINTENANCE OF STANDARDS .......................................................................... 7
   E. APPLICATION OF MANUAL ................................................................................. 7
   F. OTHER ARRANGEMENTS FOR MARKETING, ETC. ................................................ 7
   G. LICENSOR'S USE OF OTHER ADVERTISING/PROMOTIONAL SUPPORT FUNDS ...... 8
   H. PERFORMANCE OF LICENSOR'S OBLIGATIONS ................................................... 8
5. Changes In The Manual: ............................................................................................ 8
6. IAHI: ........................................................................................................................ 8
   A. MEMBERSHIP .................................................................................................... 8
   B. FUNCTION OF COMMITTEES ............................................................................... 8
7. Proprietary Rights: .................................................................................................... 9
   A. OWNERSHIP OF SYSTEM .................................................................................... 9
   B. TRADEMARK DISPUTES ...................................................................................... 9
   C. PROTECTION OF NAME AND THE MARKS .......................................................... 10
   D. MODIFICATION OR DISCONTINUATION OF THE MARKS ...................................... 10
8. Records And Audits: ................................................................................................ 10
   A. MONTHLY STATEMENTS .................................................................................. 10

A. MONTHLY STATEMENTS. ........................................................... 10
B. PREPARATION AND MAINTENANCE OF RECORDS. ...................... 10
D. ANNUAL FINANCIAL STATEMENTS. ......................................... 11
9. Indemnity And Insurance: ............................................................ 11
A. INDEMNITY. .......................................................................... 11
B. INSURANCE. ........................................................................... 12
C. EVIDENCE OF INSURANCE. ...................................................... 12
10. Transfer: ..................................................................................... 13
A. TRANSFER BY LICENSOR. ........................................................ 13
B. TRANSFER BY LICENSEE. ......................................................... 13
C. TRANSFER OF EQUITY INTERESTS THAT ARE NOT PUBLICLY TRADED. ... 14
D. TRANSFERS OF PUBLICLY-TRADED EQUITY INTERESTS. ............... 14
E. TRANSFER OF THE LICENSE. ..................................................... 14
F. TRANSFERS OF AN EQUITY INTEREST IN THE LICENSEE UPON DEATH TO FAMILY MEMBERS. ... 15
G. REGISTRATION OF A PROPOSED TRANSFER OF EQUITY INTERESTS. ... 16
H. CHANGE OF OWNERSHIP. .......................................................... 16
I. TRANSFER OF REAL ESTATE. ..................................................... 17
J. MANAGEMENT OF THE HOTEL. ................................................... 17
11. Condemnation And Casualty: ......................................................... 17
A. CONDEMNATION. .................................................................... 17
B. CASUALTY. ............................................................................ 17
C. NO EXTENSIONS OF TERM. ....................................................... 18
12. Termination: ................................................................................ 18
A. EXPIRATION OF TERM. ............................................................ 18
B. TERMINATION BY LICENSOR ON ADVANCE NOTICE. .................... 18
C. IMMEDIATE TERMINATION BY LICENSOR. .................................. 19
D. DE-IDENTIFICATION OF HOTEL UPON TERMINATION. .................... 20
E. PAYMENT OF LIQUIDATED DAMAGES. ....................................... 20
13. Relationship Of Parties: ................................................................ 21
A. NO AGENCY RELATIONSHIP. ..................................................... 21

i

ST08

SEC-IHG-E-0000006

    B.   LICENSEE'S NOTICES TO PUBLIC CONCERNING INDEPENDENT STATUS. ... 21
14.  Miscellaneous: ... 22
    A.   SEVERABILITY AND INTERPRETATION. ... 22
    B.   BINDING EFFECT. ... 22
    C.   EXCLUSIVE BENEFIT. ... 22
    D.   ENTIRE AGREEMENT. ... 22
    E.   LICENSOR WITHHOLDING CONSENT. ... 22
    F.   NOTICES. ... 23
    G.   AUTHORITY. ... 23
    H.   GENERAL RELEASE AND COVENANT NOT TO SUE. ... 23
    I.   PERFORMANCE OF THE WORK. ... 24
    J.   REIMBURSEMENT OF EXPENSES. ... 24
    K.   BUSINESS JUDGMENT. ... 24
    L.   DESCRIPTIVE HEADINGS. ... 25
M. Terrorism. ... 25
N. Capital Reserve. ... 25
15.  SPECIAL STIPULATIONS: ... 25
GUARANTY ... 30

ii

ST08

SEC-IHG-E-0000007

**Holiday Hospitality Franchising, Inc.**
**Three Ravinia Drive, Atlanta, Georgia 30346**
**Staybridge Suites Hotel**
**License Agreement**
**New Development**

This License dated ⟨December 30⟩, 2008 (the "Term Commencement Date") is between Holiday Hospitality Franchising, Inc., a Delaware corporation ("Licensor"), and Extended Hospitality, Inc., an Illinois corporation ("Licensee") whose address is 8171 W. Higgins Rd., Chicago, IL 60631.

**The Parties Agree As Follows:**

## I.     The License:

Licensor operates and licenses a system (the "System" as defined in paragraph 1.B below) designed to provide a distinctive, high quality hotel service to the public under the name Staybridge Suites®. High standards established by Licensor are the essence of the System. Future investments may be required of Licensee under this License Agreement ("License"). Licensee has independently investigated the risks of the business to be operated hereunder,

including current and potential market conditions, competitive factors and risks; has read ~~Licensor's Franchise Disclosure Document for prospective Staybridge Suites brand group~~ franchisees; and has made an independent evaluation of all such facts. Neither Licensor nor any other person on Licensor's behalf has made any representation to Licensee concerning this License not fully set forth herein. Aware of the relevant facts, Licensee desires to enter into this License in order to obtain a license to use the System in the operation of a Staybridge Suites branded Hotel (the "Hotel") to be located at the intersection of Higgins Road and Cumberland Avenue, Chicago, IL 60631.

## A. The Hotel.

The Hotel comprises all structures, facilities, appurtenances, furniture, fixtures, equipment, and entry, exit, parking and other areas from time to time located on the land identified by Licensee to Licensor in anticipation of this License, or located on any land from time to time approved by Licensor for additions, signs or other facilities. The Hotel now includes the facilities listed on Attachment "A" hereto. No change in the number of approved guest suites and no other significant change in the Hotel or in the manner in which the Hotel suites and services are offered to the public (including timesharing and condominium Hotel projects and other projects not involving short term stays by transient guests) may be made without Licensor's approval. Licensee represents that it is entitled to possession of the Hotel during the entire license term without restrictions that would interfere with anything contemplated in this License.

SEC-IHG-E-0000008

## B. The System.

The System includes all elements which are designed to identify "Staybridge Suites" branded Hotels to the consuming public or are designed to be associated with those hotels or to contribute to such identification or association and all elements which identify or reflect the quality standards and business practices of such hotels, all as specified in this License or as designated from time to time by Licensor. The System at present includes, but is not limited to, the principal trade and/or service mark "Staybridge Suites", the service mark "Holidex®" and the other Marks (as defined in paragraph 7.B below) and intellectual property rights made available to licensees of the System by reason of a license; all rights to domain names and other identifications or elements used in electronic commerce as may be designated from time to time by Licensor in accordance with Licensor's specifications to be part of the System; access to a reservation service operated in accordance with specifications established by Licensor from time to time; distribution of advertising, publicity and other marketing programs and materials; the furnishing of training programs and materials; confidential or proprietary information, standards, specifications and policies for construction, furnishing, operation, appearance and service of the Hotel, and other requirements as stated or referred to in this License and from time to time in Licensor's Standards Manual (the "Manual") or in other communications to Licensee; and programs for inspecting the Hotel, measuring and assessing service, quality and consumer opinion, and consulting with Licensee. Licensor may add elements to the System or modify, alter or delete elements of the System in its sole discretion from time to time.

Licensor hereby grants to Licensee a non-exclusive license to use the System only at the Hotel, but only in accordance with this License and only during the "License Term" beginning with the Term Commencement Date and terminating as provided under paragraph 12 hereof. The License applies to the location specified herein and to no other location. Licensee acknowledges that Licensor, its divisions, subsidiaries, affiliates and parents are and may in the future be engaged in other business activities, including lodging and related activities, and that Licensee is acquiring no rights hereunder other than the right to use the System as specifically defined herein in accordance with the terms of this License.

This License does not limit Licensor's right, or the rights of any parent, subsidiary or affiliate of Licensor, to use or license the System or any part thereof, or to engage in or license any business activity at any other location, including, without limitation, the licensing, franchising, ownership, operation and/or management of lodging facilities and related activities under the names and marks associated with the System and/or any other names and marks. Licensee acknowledges that Licensor's rights to use and/or license the System, referenced immediately above, pre-date this License and are not limited or changed by the terms of this License. Licensee agrees that by acknowledging those rights, the parties do not intend to make Licensor's exercise of such rights subject to rules applicable to contractual performance or the exercise of contractual discretion under this License.

2

ST08

SEC-IHG-E-0000009

3.    **Licensee's Responsibilities:**

**A. Operational and Other Requirements.**

During the License Term, Licensee will:

(1)    maintain a high moral and ethical standard and atmosphere at the Hotel;

(2)    maintain the Hotel in a clean, safe and orderly manner and in first class condition;

(3)    provide efficient, courteous and high-quality service to the public;

(4)    operate the Hotel 24 hours a day every day except as otherwise permitted by Licensor based on special circumstances;

(5)    strictly comply in all respects with the Manual (as it may from time to time be modified or revised by Licensor) and with all other policies, procedures and requirements of Licensor which may be from time to time communicated to Licensee (which communication, at Licensor's option, may be in hard paper copy or digital, electronic or computerized form and Licensee must pay any costs to retrieve, review, use or access such digital, electronic or computerized communication);

(6)    strictly comply with all of Licensor's standards and specifications for goods and services used in the operation of the Hotel and other reasonable requirements to protect the System and the Hotel from unreliable sources of supply;

(7)    strictly comply with Licensor's requirements as to: