(b) Licensor gives written consent, which consent will not be unreasonably

(c) the transferee is one or more of the decedent's spouse, parents, siblings, nieces, nephews, descendants, or spouse's descendants; and

(d) Licensee's heirs or legatees promptly advise Licensor and the transferee promptly executes a new license agreement for the unexpired term of this License, on the standard form then being used to license new Hotels under the System, except the fees charged thereunder shall be the same as contained herein including any adjustments to such fees as may have been implemented from time to time in accordance with the terms of this License.

## F. Transfers of an Equity Interest in the Licensee Upon Death To Family Members.

(1) If an Equity Interest is owned by a natural person, the Equity Interest will pass upon such person's death, in accordance with such person's will, or, if such person dies intestate, in accordance with the laws of intestacy governing the distribution of such person's estate, provided that:

(a) adequate provision is made for management of the Hotel; and

(b) Licensor gives written consent, which consent will not be unreasonably withheld; and

(c) the transferee is one or more of the decedent's spouse, parents, siblings, nieces, nephews, descendants, or spouse's descendants; and

(d) the transferee assumes, in writing, on a continuing basis, the decedent's guarantee, if any, of the Licensee's obligations hereunder.

15

ST08

SEC-IHG-E-0000021

## G. Registration of a Proposed Transfer of Equity Interests.

If a proposed transfer of an Equity Interest in the Licensee requires registration under any federal or state securities law, Licensee shall:

(1) Request the Licensor's consent at least 45 days before the proposed effective date of the registration; and

(2) Accompany such request with one payment of a non-refundable fee of $25,000; and

(3) Reimburse Licensor for expenses incurred by Licensor in connection with review of the materials concerning the proposed registration, including without limitation, attorney's fees and travel expenses; and

(4) Agree in writing, and all participants in the proposed offering subject to registration agree in writing, to fully indemnify Licensor in connection with the registration; furnish the Licensor all information requested by Licensor; avoid any implication of Licensor's participation in, or endorsing of the offering; and use the Licensor's service marks and trademarks only as authorized by Licensor.

## H. Change of Ownership.

(1) This License is not transferable. If Licensee (i) receives an offer to purchase or lease the Hotel or any portion thereof, (ii) desires to sell or lease the Hotel or any

portion thereof, or (iii) wishes to convey the Hotel, Hotel site, or any Equity Interest in the Hotel, Licensee shall give prompt written notice thereof to Licensor, stating the identity of the prospective transferee, purchaser or lessee and the terms and conditions of the conveyance, including a copy of any proposed agreement and all other information with respect thereto, which Licensor may reasonably require.

(2) Under the provisions of this License, (i) any Transfer of Equity Interests (other than a permitted Transfer) or (ii) Transfer of all or a substantial part of the Hotel or Hotel site (if the Hotel or Hotel site is owned directly or indirectly by Licensee or by an individual or Entity that owns any Equity Interest in Licensee), to a new owner who desires to continue to operate the Hotel as a Staybridge Suites, shall constitute a change of ownership requiring submittal of an application for a new license.

(3) Licensor shall process such change of ownership application in accordance with Licensor's then current procedures, criteria and requirements regarding fees, upgrading of the Hotel, credit, operational abilities and capabilities, prior business dealings, market feasibility and other factors deemed relevant by Licensor. If such change of ownership application is approved, Licensor and the new owner shall, upon surrender of the License, enter into a new license agreement. The new license agreement shall be on Licensor's then current form and contain Licensor's then current terms (except for duration), and if applicable, the new license agreement will contain specified upgrading and other requirements.

SEC-IHG-E-0000022

(4)     If a change of ownership application for the proposed new owner is not approved by Licensor and the conveyance of the Hotel, Hotel site, or any Equity Interest in the Hotel or Licensee or Equity Interest to the proposed new owner occurs, then this License shall terminate pursuant to paragraph 12.C hereof and Licensor shall be entitled to all of its remedies.

## I.  Transfer of Real Estate.

If the real property used in the operation of the Hotel is owned directly or indirectly by Licensee or by an individual or Entity that owns any Equity Interest in Licensee and Licensee, or that individual or Entity proposes to transfer all or a substantial part of such property to a third party, such transfer shall constitute a transfer under the provisions of this License requiring an application for a new license agreement, unless Licensee receives Licensor's prior written consent for the transaction.

## J.  Management of the Hotel.

Licensee must at all times retain and exercise direct management control over the Hotel's business.  Licensee shall not enter into any lease, management agreement, or other similar arrangement for the operation of the Hotel or any part thereof (including, without limitation, food and/or beverage service facilities) with any individual or entity other than Licensee, without the prior written consent of Licensor.

## 11. Condemnation And Casualty:

### A. Condemnation.

Licensee shall, at the earliest possible time, give Licensor full notice of any proposed taking by eminent domain. If Licensor acknowledges that the Hotel or a substantial part thereof is to be taken, Licensor will give due and prompt consideration, without any obligation, to transferring the License to a nearby location selected by Licensee and approved by Licensor as promptly as reasonably possible and in any event within four months of the taking, provided that Licensee has promptly filed an application to transfer the License to such new location. If the new location is approved by Licensor, and the transfer authorized by Licensor, and if Licensee opens a new hotel at the new location in accordance with Licensor's specifications within two years of the closing of the Hotel, the new hotel will thenceforth be deemed to be the Hotel licensed under this License. If a condemnation takes place and a new hotel does not, for whatever reason, become the Hotel under this License in strict accordance with this paragraph (or if it is reasonably evident to Licensor that such will be the case), the License will terminate forthwith upon notice thereof by Licensor to Licensee.

### B. Casualty.

If the Hotel is damaged by fire or other casualty, Licensee will expeditiously repair the damage. If the damage or repair requires closing the Hotel, Licensee will immediately notify Licensor; will repair or rebuild the Hotel in accordance with Licensor's standards; will commence reconstruction within four months after closing; will expeditiously

17

SEC-IHG-E-0000023

continue on an uninterrupted basis with such reconstruction; and will reopen the Hotel for continuous business operations as soon as practicable (but in any event within 24 months after closing of the Hotel), giving Licensor ample advance notice of the date of reopening. If the Hotel is not reopened in accordance with this paragraph, the License will forthwith terminate upon notice thereof by Licensor to Licensee. Notwithstanding anything else herein to the contrary, during the time the Hotel is closed, Licensee shall pay Licensor a monthly royalty of 2% of Gross Rooms Revenue based on the average monthly Gross Suites Revenue for the preceding 12 months prior to the date of closing or, if the Hotel has not been in the System for 12 months, based on the average monthly Gross Suites Revenue for the period during which the Hotel has been in operation in the System. Said payment shall be in lieu of all other System fees under paragraph 3.C of this License.

The License may be replaced by a new license agreement as provided in paragraph 10 and the License may terminate as provided in this paragraph 11 without liquidated damages.

## C. No Extensions of Term.

Nothing in this paragraph 11 will extend the License Term but Licensee shall not be required to make any payments pursuant to paragraph 3.C (1) and (3), except as provided in paragraph 11.B above, for periods during which the Hotel is closed by reason of condemnation or casualty.

**12. Termination:**

### A. Expiration of Term.

This License will expire without notice **ten (10) years** from the date of opening of the Hotel under the System, subject to earlier termination as set forth herein. This License is not renewable, and Licensee acknowledges and agrees that this License confers upon Licensee absolutely no rights of license renewal following the expiration of the License Term.

### B. Termination by Licensor on Advance Notice.

(1) In accordance with notice from Licensor to Licensee, this License will terminate (without any further notice unless required by law), provided that:
  (a) the notice is mailed at least 30 days (or longer, if required by law) in advance of the termination date; and
  (b) the notice reasonably identifies one or more breaches of the Licensee's obligations; and
  (c) the breach(es) are not fully remedied within the time period specified in the notice.

(2) If Licensee shall have engaged in a violation of this License, for which a notice of termination was given and termination failed to take effect because the default was remedied during the then preceding 12 months, the period given to remedy defaults will, if and to the extent permitted by applicable law, thereafter be 10

18                                                          ST08

SEC-IHG-E-0000024

days instead of 30 (provided, however, if there have been two or more violations of the License in the preceding twelve months for which notices of termination were given, upon the next violation, if and to the extent permitted by applicable law, the License may be terminated by Licensor immediately upon notice).

(3)     In any judicial proceeding in which the validity of termination is at issue, Licensor will not be limited to the reasons set forth in any notice sent under this paragraph.

(4)     Licensor's notice of termination or suspension of services shall not relieve Licensee of its obligations under this License.

### C. Immediate Termination by Licensor.

This License may be terminated by Licensor immediately (or at the earliest time permitted by applicable law) if:

(1)     (a) Licensee or any guarantor of Licensee's obligations hereunder shall generally not pay its debts as they become due, or shall admit in writing its inability to pay its debts, or shall make a general assignment for the benefit of creditors; or

        (b) Licensee or any such guarantor shall commence any case, proceeding or other action seeking reorganization, arrangement, adjustment, liquidation, dissolution or composition of it or its debts under any law relating to bankruptcy, insolvency, reorganization or relief of debtors, or seeking

(c) Licensee or any such guarantor shall take any corporate or other action to authorize any of the actions set forth above in paragraphs (a) or (b); or

(d) any case, proceeding or other action against Licensee or any such guarantor shall be commenced seeking to have an order for relief entered against it as debtor, or seeking reorganization, arrangement, adjustment, liquidation, dissolution or composition of it or its debts under any law relating to bankruptcy, insolvency, reorganization or relief of debtors, or seeking appointment of a receiver, trustee, custodian or other similar official for it or for all or any substantial part of its property, and such case, proceeding or other action: (i) results in the entry of any order for relief against it which is not fully stayed within seven business days after the entry thereof or (ii) remains undismissed for a period of 45 days; or

(e) an attachment remains on all or a substantial part of the Hotel or of Licensee's or any such guarantor's assets for 30 days; or

(f) Licensee or any such guarantor fails, within 60 days of the entry of a final judgment against Licensee in any amount exceeding $50,000, to discharge, vacate or reverse the judgment, or to stay execution of it, or if appealed, to discharge the judgment within 30 days after a final adverse decision in the appeal; or

(2) Licensee voluntarily or involuntarily loses possession or the right to possession of all or a significant part of the Hotel, except as otherwise provided in paragraph 11; or

19

ST08

SEC-IHG-E-0000025

(3) Licensee, or any entity or individual having a direct or indirect ownership interest in it, contests in any court or proceeding Licensor's ownership of the System or any part of it, or the validity of any of the Marks or other trademarks or service marks or other intellectual property associated with Licensor's businesses; or

(4) A breach of paragraph 10 occurs; or

(5) Licensee fails to continue to identify the Hotel to the public as a System hotel, engages in any action that violates Licensor's proprietary rights under paragraph 7 or ceases to operate the Hotel as a System hotel; or

(6) Any action is taken toward dissolving or liquidating Licensee or any guarantor hereunder, if it is an Entity, except for any such actions resulting from the death of a partner; or

(7) Licensee (or any principal stockholder, owner, member or partner of Licensee as the case may be) is, or is discovered to have been, convicted of a felony (or any other offense if it is likely to adversely reflect upon or affect the Hotel, the System or Licensor in any way); or

(8) Licensee maintains false books and records of account or submits false reports or information to Licensor; or

(9) Licensee knowingly fails to comply with the requirements of the License and/or the Manual on safety, security, or privacy for its guests at the Hotel or on the reputation of the management, employees or operation of the Hotel, and such failure may significantly adversely reflect upon or affect the Hotel, the System or Licensor, its parents, subsidiaries and/or affiliates in any way; or

(10) A breach of paragraph 14.M occurs

## D. De-Identification of Hotel Upon Termination.

Licensee will take whatever action is necessary to assure that no use is made of any part of the System at or in connection with the Hotel after the License Term ends. This will involve, among other things, returning to Licensor the Manual and all other materials proprietary to Licensor, ceasing the use of any of Licensor's trademarks or service marks, physical changes of distinctive System features of the Hotel, including removal of the primary freestanding sign down to the structural steel, and all other actions required to preclude any possibility of confusion on the part of the public and to ensure that the Hotel is no longer using all or any part of the System or otherwise holding itself out to the public as a Staybridge Suites hotel. Anything not done by Licensee in this regard within 30 days after termination, may be done at Licensee's expense by Licensor or its agents who may enter upon the premises of the Hotel for that purpose.

## E. Payment of Liquidated Damages.

The parties recognize the difficulty of ascertaining damages to Licensor resulting from premature termination of this License, and have provided for liquidated damages, which liquidated damages represent the parties' best estimate as to the damages arising from the circumstances in which they are provided and which are only damages for the premature termination of this License, and not as a penalty or as damages for breaching this License or in lieu of any other payment. If the License terminates pursuant to paragraphs 12.B or 12.C above, Licensee will promptly pay to Licensor a lump sum equal to the total amounts required under paragraphs 3.C (1) (3) and (4) during the 36 calendar months of

SEC-IHG-E-0000026

operation preceding the termination; or such shorter period as equals the unexpired License Term at the time of termination or if the Hotel has not been in operation in the System for 36 months, the greater of:

(1) 36 times the monthly average of such amounts for the period during which the Hotel has been in operation in the System, or

(2) 36 times such amounts as are due for the one month preceding such termination.

### 13. Relationship Of Parties:

#### A. No Agency Relationship.

Licensee is an independent contractor. Neither party is the legal representative nor agent of, or has the power to obligate (or has the right to direct or supervise the daily affairs of) the other for any purpose whatsoever. Licensor and Licensee expressly acknowledge that the relationship intended by them is a business relationship based entirely on and circumscribed by the express provisions of this License and that no partnership, joint venture, agency, fiduciary or employment relationship is intended or created by reason of this License.

#### B. Licensee's Notices to Public Concerning Independent Status.

Licensee will take such steps as are necessary and such steps as Licensor may from time to time reasonably request to minimize the chance of a claim being made against Licensor for anything that occurs at the Hotel or for acts, omissions or obligations of Licensee or anyone associated or affiliated with Licensee or the Hotel. Such steps may, for example, include giving notice in guest suites, public rooms and advertisements and on business forms and stationery, etc., making clear to the public that Licensor is not the owner or operator of the Hotel and is not accountable for what happens at the Hotel. Unless required by law, Licensee will not use Licensor's name, the Marks or any other trademarks, service marks or other intellectual property owned or licensed by Licensor or any of its affiliates or any similar word in its corporate, partnership or trade name, nor authorize or permit such use by anyone else. Licensee will not use Licensor's name, the Marks or any other trademarks, service marks or other intellectual property owned or licensed by Licensor or any of its affiliates to incur any obligation or indebtedness on behalf of Licensor.

Licensee shall not register Licensor's name, the Marks or any other trademarks, service marks or other intellectual property owned or licensed by Licensor or any of its affiliates as part of any internet domain name or Uniform Resource Locator (URL), and may not display or use any of the marks or other intellectual property rights related to the System in connection with any web site. Licensee shall not promote, maintain, implement or be responsible for any web site in connection with the licensed Hotel without the prior written approval of Licensor, and if approved by Licensor, any such web site shall comply with all of Licensor's web site requirements as set forth in the Manual or otherwise.

ST08

SEC-IHG-E-0000027

14. **Miscellaneous**:

### A. Severability and Interpretation.

The remedies provided in this License are not exclusive. In the event any provision of this License is held to be unenforceable, void or voidable as being contrary to the law or public policy of the United States or any other jurisdiction entitled to exercise authority hereunder, all remaining provisions shall nevertheless continue in full force and effect, unless deletion of the provision(s) deemed unenforceable, void or voidable, impairs the consideration for this License in a manner which frustrates the purpose of the parties or makes performance commercially impracticable. In the event any provision of this License requires interpretation, such interpretation shall be based on the reasonable intention of the parties in the context of this transaction without interpreting any provision in favor of, or against, any party hereto by reason of the draftsmanship of the party or its position relative to the other party.

### B. Binding Effect.

This License shall become valid when executed and accepted by Licensor at Atlanta, Georgia. It shall be deemed made and entered into in the State of Georgia, and shall be governed and construed under, and in accordance with, the laws and decisions (except any conflicts of law provisions) of the State of Georgia. In entering into this License,

Licensee acknowledges that it has sought, voluntarily accepted and become associated with Licensor, who is headquartered in Atlanta, Georgia. The choice of law designation permits, but does not require, that all suits concerning this License shall be filed in the State of Georgia.

### C. Exclusive Benefit.

This License is exclusively for the benefit of the parties hereto, and it may not give rise to liability to a third party. No agreement between Licensor and anyone else is for the benefit of Licensee.

### D. Entire Agreement.

This is the entire agreement between the parties pertaining to the licensing of the Hotel and supersedes all previous negotiations and agreements between the parties pertaining to the licensing of the Hotel to be operated as a Staybridge Suites branded hotel. No change in this License will be valid unless in writing signed by both parties. No failure to require strict performance or to exercise any right or remedy hereunder will preclude requiring strict performance or exercising any right or remedy in the future.

### E. Licensor Withholding Consent.

Licensor's consent, whenever required, may be withheld if any breach by Licensee exists under this License. Approvals and consents by Licensor will not be effective unless evidenced by a writing duly executed on behalf of Licensor.

ST08

SEC-IHG-E-0000028

## F. Notices.

Notices will be effective hereunder when and only when they are reduced to writing and delivered personally or mailed by Federal Express or comparable overnight or express delivery service or by certified mail to the appropriate party at its address, hereinafter set forth, or to such person and at such address as may subsequently be designated by one party to the other.

|  |  |
|---|---|
| Licensor: | Holiday Hospitality Franchising, Inc. |
|  | Three Ravinia Drive, Suite 100 |
|  | Atlanta, Georgia 30346 |
| Attn: | Vice President, Franchise Administration |
|  |  |
| Licensee: | Extended Hospitality, Inc. |
|  | c/o: Anshoo Sethi |
|  | 1314 S. Plymouth Ct. |
|  | Chicago, IL 60605 |

## G. Authority.

Licensee represents and warrants to Licensor that the entities and persons signing this License on behalf of Licensee are duly authorized to do so and to bind Licensee to

License on behalf of Licensee are duly authorized to do so and to bind Licensee to enter into and perform this License. Licensee further represents and warrants to Licensor that Licensee and the entities and persons signing this License on behalf of Licensee have obtained all necessary approvals and that their execution, delivery and performance of this License will not violate, create a default under or breach any charter, bylaws, agreement or other contract, license, permit, order or decree to which they are a party or to which they are subject or to which the Hotel is subject. If Licensee has not already done so prior to the execution of this License, Licensee agrees to submit to Licensor by the date specified by Licensor all of the documents and information that Licensor required or requested in the license application and in connection with the licensing process. Licensee acknowledges that its breach of the representations and warranties in this paragraph; its failure to comply with Licensor's requirements for the submission of information and documents; or any omission or misrepresentation of any material fact in the information or documents submitted to Licensor in connection with the license application and/or the licensing process will constitute a material breach of Licensee's obligations under this License.

## H. General Release and Covenant Not to Sue.

Licensee and its respective heirs, representatives, successors and assigns, hereby release, remise and forever discharge Licensor and its parents, subsidiaries and affiliates and their directors, employees, agents, successors and assigns from any and all claims, whether known or unknown, of any kind or nature, absolute or contingent, if any there be, at law or in equity, from the beginning of time to, and including, the date of Licensor's execution of this License, and Licensee and its respective heirs, representatives, successors and assigns do hereby covenant and agree that they will not institute any suit

ST08

SEC-IHG-E-0000029

or action at law or otherwise against Licensor, directly or indirectly relating to any claim released hereby by Licensee. This release and covenant not to sue shall survive the termination of this License. Licensee shall take whatever steps are necessary or appropriate to carry out the terms of this release and covenant not to sue upon Licensor's request.

## I. Performance of the Work.

Licensee agrees to perform the construction, upgrading and renovation work, including the purchase of furniture, fixtures and equipment set forth on Attachment "B" attached hereto and incorporated herein by reference (the "Work"). Licensee acknowledges that its agreement to perform the Work is an essential element of the consideration relied upon by Licensor in entering into the License and agrees that Licensee may be authorized, in Licensor's sole discretion, to use the System at the Hotel prior to completion of the Work only during such time as Licensee is actively meeting its performance obligations in full compliance with the requirements of Attachment "B." Licensee's failure to perform the Work in accordance with Licensor's requirements and specification (including the progress, milestone, completion and other dates specified in Attachment "B") shall constitute a material breach of Licensee's obligations under the License.

In the event Licensor terminates this License due to Licensee's breach of any of its

obligations under the License prior to the time that Licensee is authorized to use the System at the Hotel, Licensee shall pay the Licensor (as liquidated damages for the premature termination only, and not as a penalty nor as damages for breaching the license or in lieu of any other payment), a lump sum equal to 2½ times the full amount of Application Fees that would be due and owing for the Hotel, based upon the proposed number of rooms for the Hotel or the minimum application fee required (whichever is applicable), as disclosed in Item 5 of the Staybridge Suites disclosure document, and irrespective of whether application fees have been paid or assessed for the Hotel.

## J. Reimbursement of Expenses.

Licensee agrees to pay Licensor all expenses, including attorney's fees and court costs, incurred by Licensor, its parents, subsidiaries, affiliates, and their successors and assigns to remedy any defaults of or enforce any rights under the License, effect termination of the License or collect any amounts due under the License.

## K. Business Judgment.

Licensor and Licensee recognize and agree, and any mediator or judge is affirmatively advised, that certain provisions of this License describe the right of Licensor to take (or refrain from taking) certain actions in the exercise of its business judgment as to the long-term overall interests of the System, and/or upon its determination that the change was adopted in good faith and is consistent with the long-term overall interests of the System. Where such judgment has been exercised by Licensor, neither a mediator, nor a judge, nor any trier of fact, shall substitute his, her or their judgment for the judgment so exercised by Licensor.

24

ST08

SEC-IHG-E-0000030

### L. Descriptive Headings.

The descriptive headings in this License are for convenience only and shall not control or affect the meaning or construction of any provision in this License.

### M. Terrorism.

Licensee represents, warrants and covenants that neither it nor any entity or individual having a direct or indirect ownership interest in it nor any of Licensee's affiliates nor any officer, director, employee, member, partner or shareholder of any of the foregoing, has, does or will (i) support or supported terrorism; (ii) provide or provided money or financial services to terrorists; (iii) engage or engaged in terrorism; (iv) appear or appeared on the United States government list of organizations that support terrorism; and (v) engage or engaged in or be or been convicted of fraud, corruption, bribery, money laundering, narcotics trafficking or other crimes. Licensee further warrants and represents that all of the foregoing individuals are eligible under applicable United States immigration laws to travel to the United States for training or any other purpose.

### N. Capital Reserve.

Licensor may establish capital reserve requirements on Licensee ("Reserve") in an amount not in excess of 6% of Gross Rooms Revenue annually to be used for capital

amount not in excess of 6% of Gross Rooms Revenue annually to be used for capital expenditures and upgrading of the Hotel including renovation of guest rooms, guest room corridors and other public spaces and replacement of furniture, fixtures and equipment. Licensor shall give Licensee no less than ninety (90) days notice of any such Reserve requirements as the same may be established or changed by Licensor from time to time, and in such event, Licensee shall establish an escrow reserve account funded monthly in a bank selected by Licensee. Licensee shall make expenditures from such account for the purposes hereinbefore specified in accordance with Licensor's requirements. Licensee acknowledges that the Reserve may not be sufficient to maintain the Hotel as a first class facility in accordance with Licensor's standards and Licensee shall promptly provide any necessary additional funds to meet Licensor's product quality and consumer quality requirements.

15.        **SPECIAL STIPULATIONS:**

A.        **Site Control.**

Licensee expressly understands and agrees that control of the Location by Licensee is a condition precedent to the granting of the license and the final ratification of this License by Licensor. Accordingly, the license is granted and this License is provided only on a conditional basis, subject to Licensor's receipt of satisfactory evidence of Licensee's control of the Location in accordance with the provisions of this paragraph. Unless Licensor receives and Licensee delivers a copy of the recorded deed or other documentary evidence satisfactory to Licensor that Licensee has fee simple title to the Location or an executed lease of the Location for the term of the License within ninety (90) days from the Term Commencement Date, Licensor shall have the right to terminate

ST08

SEC-IHG-E-0000031

the License by written notice to Licensee. Such right shall expire upon Licensor's receipt and acceptance of a copy of the fully executed lease or recorded deed showing such leasehold interest or fee simple title in Licensee.

## B.    Management Designation.

Notwithstanding Paragraph 10.J. of this License, the Hotel shall at all times be operated by a management company acceptable to Licensor. Licensor shall have the right to approve any proposed management company and to approve any contract with respect to the operation of the Hotel, and such management company's policies and procedures must comply with Licensor's brand standards and the requirements of this License. The management of the Hotel by an acceptable management company must be continuous and uninterrupted during the term of the License. Licensee shall be in default under this paragraph if any of the preceding conditions are not met. Notwithstanding that the management company must be acceptable to Licensor, Licensee acknowledges and agrees that it is solely responsible for the selection, conduct and performance of the management of the Hotel and Licensor has no responsibility or obligation in connection with such selection, conduct or performance. The management contract between Licensee and the management company must be acceptable to Licensor and executed at least 180 days prior to the opening of the Hotel in the System. If any approved management company stops operating the Hotel for the Licensee for any reason, Licensee must notify Licensor immediately.

## C.    Cross Default

Notwithstanding anything else herein to the contrary, it is a condition of this License and Licensee acknowledges that if the License is placed in default, then License for the Hotel Indigo hotel to be located at the intersection of Courtland Ave. and Higgins Road Chicago, IL 60631/ #14554 will be placed in immediate default also. Once Licensee has cured the default under the License, the default for license agreement for the Hotel Indigo hotel to be located at the intersection of Courtland Ave. and Higgins Road Chicago, IL 60631/ #14554 will also be cured. Should the default under the License not be cured, then the license agreement for the hotel to be located at the intersection of Courtland Ave. and Higgins Road Chicago, IL 60631/ #14554 will be subject to termination.

### D.    Licensee's Option for Extension of Term.

Licensee may submit a written request to Licensor, between the **eighth** and **ninth** anniversary of the opening of the Hotel in the System requesting Licensor to provide and deliver to Licensee a Product Improvement Plan ("PIP") or the then current equivalent of a PIP. Provided Licensee is not then in default and has no outstanding amounts owed to Licensor and its affiliates under this License, Licensor will prepare and deliver the PIP to Licensee within 120 days of receipt of such written request and Licensor will bill Licensee the then-current fee for preparation of the PIP. Licensee must then notify Licensor in writing by no later than 60 days following the receipt of the PIP as to whether or not Licensee intends to complete the PIP. If Licensee chooses to complete the PIP, then the License term will be extended to **15** years from the date of opening of the Hotel under the

26

SEC-IHG-E-0000032