System and the PIP will become an Addendum to this License and will set forth reasonable renovation and upgrading requirements applicable to entering conversion hotels at that time. Upon execution of the Addendum, Licensee shall be required to take such steps as may be necessary to complete the items on the PIP within the time period specified. Licensee's failure to complete the PIP in accordance with its terms and the Addendum shall be considered a default under this License, which may be terminated pursuant to Paragraph 12.C in the event of such default. If Licensee fails to submit a request within the timeframe permitted or Licensee chooses not to complete the PIP, the License will expire as set forth in Paragraph 12.A.

**IN WITNESS WHEREOF**, the parties have executed this License, as of the date first stated above.

Licensee:

**EXTENDED HOSPITALITY, INC.**

By: _____

Anshoo Sethi

~~Managing Member~~ President

Attest:

Licensor:

**HOLIDAY HOSPITALITY FRANCHISING, INC.**

By: _____
Jenny Tidwell
Vice President
Franchise Administration

Attest: _____
Assistant Secretary

27

SEC-IHG-E-0000033

**Addendum To The**
**Holiday Hospitality Franchising, Inc.**
**Staybridge Suites License Agreement**
**Pursuant To The Illinois Franchise Disclosure Act**

Notwithstanding anything to the contrary set forth in the above License Agreement ("License"), the following provisions shall supersede and apply to this License (and, have generally been made applicable by execution of a similar Addendum to each license for a Staybridge Suites Hotel, respectively, issued in, or for properties in, the State of Illinois):

1.      Notice Required By Law: The terms and conditions under which your License can be terminated and your rights upon non-renewal may be affected by Illinois law, 815 ILCS 705/19 and 705/20.

2.      Under this License, there is no requirement that litigation between the parties take place in Georgia. You may institute litigation against us in Illinois or in any other court having jurisdiction over the parties and the dispute. The provisions of the License concerning jurisdiction and the application of Georgia law do not deprive you of any rights and/or causes of action established by the Illinois Franchise Disclosure Act, 815 ILCS 705/4 and 41, which, for reference, are reproduced at the bottom of this page.[1] In addition, if any of the provisions of this License are inconsistent with any other applicable Illinois statutes, then such Illinois statutes shall apply to the extent such application is constitutional and valid as applied.

3.      In accordance with the provision under federal law by which (11 ILCS

seq.), paragraph 12. C (1)(d) of the License shall be amended to include the following language: "Enforceability of this provision is a matter governed by Federal Bankruptcy Law and enforceability or nonenforceability is subject to that law and rulings of a court of competent jurisdiction."

    4.    Licensee must pay additional Frequency Club Marketing Contributions equal to 5% of qualifying Full Folio Revenue (paid by or on behalf of each member who stays at the Hotel) monthly and a one time charge of $10.00 per room with the first Royalty payment.

---

[1] 705/4 JURISDICTION AND VENUE. §4. Any provision in a franchise agreement that designates jurisdiction or venue in a forum outside of this State is void, provided that a franchise agreement may provide for arbitration in a forum outside of this State.

705/41 WAIVERS VOID. §41. Any condition, stipulation, or provision purporting to bind any person acquiring any franchise to waive compliance with any provision of this Act or any other law of this State is void. This Section shall not prevent any person from entering into a settlement agreement or executing a general release regarding a potential or actual lawsuit filed under any of the provisions of this Act, nor shall it prevent the arbitration of any claim pursuant to the provisions of Title 9 of the United States Code.

ST08

SEC-IHG-E-0000034

Date:_____

**Licensee:**

**EXTENDED HOSPITALITY, INC.**

By:_____
    Anshoo Sethi
    Managing Member President

Attest:_____
    Secretary (or any other corporate officer)

**Licensor:**

**HOLIDAY HOSPITALITY FRANCHISING, INC.**

By:_____
    Jenny Tidwell
    Vice President

Vice President
Franchise Administration

Attest: _____
         Assistant Secretary

**Illinois Addendum**

29

## GUARANTY

As an inducement to Holiday Hospitality Franchising, Inc. ("Licensor") to execute the License Agreement dated ___December 30, 2008___ between Licensor and Extended Hospitality, Inc., ("Licensee"), for the Staybridge Suites® branded hotel located at the intersection of Higgins Road and Cumberland Avenue, Chicago, IL 60631, ("License"), the undersigned (sometimes referred to as the "guarantor(s)"), jointly and severally, hereby unconditionally warrant to Licensor and its successors and assigns that all of Licensee's representations in the License and the application submitted by Licensee to obtain the License are true, and guarantee that all of Licensee's obligations under the License, including any amendments thereto whenever made (all hereafter collectively referred to as the "License"), will be punctually paid and performed.

Upon default by the Licensee and notice from Licensor, the undersigned will immediately make each payment and perform each obligation required of Licensee under the License. Without affecting the obligations of the undersigned under this Guaranty, Licensor may, without notice to the undersigned, extend, modify or release any indebtedness or obligation of Licensee, or any of the guarantor(s), or settle, adjust or compromise any claims against Licensee or any of the guarantor(s). The undersigned waive notice of amendment of the License and notice of demand for payment or performance by Licensee.

Upon the death of an individual guarantor, the estate of such guarantor will be bound by this Guaranty but only for defaults and obligations hereunder existing at the time of death, and the obligations of the other guarantors will continue in full force and effect.

The Guaranty constitutes a guaranty of payment and performance and not of collection, and each of the guarantors specifically waives any obligation of Licensor to proceed against Licensee or any money or property held by Licensee or by any other person or entity as collateral security, by way of set off or otherwise. The undersigned further agree that this Guaranty shall continue to be effective or be reinstated, as the case may be, if at any time payment of any of the guaranteed obligations is rescinded or must otherwise be restored or returned by Licensor upon the insolvency, bankruptcy or reorganization of Licensee or any of the undersigned, all as though such payment had not been made.

This Guaranty shall become valid as of the Term Commencement Date of the License, which is __December 30, 2008__. It shall be deemed made and entered into in the State of Georgia, and the undersigned agree that this Guaranty and the obligations provided for hereunder shall be governed and construed in all respects by the internal laws and decisions (except any conflicts of law provisions) of the State of Georgia, including all matters of construction, validity, enforceability and performance.

To the extent permitted by law, the undersigned (i) consent and submit, at Licensor's election and without limiting Licensor's rights to commence an action in any other jurisdiction, to the personal jurisdiction and venue of any courts (federal, superior or state) situated in the County of DeKalb, State of Georgia; (ii) waive any claim, defense or objection in any such proceeding based on lack of personal jurisdiction, improper venue, forum non conveniens or any similar

ST08

SEC-IHG-E-0000036

basis; and (iii) expressly waive personal service of process and consent to service by certified mail, postage prepaid, directed to the last known address of the undersigned, which service shall be deemed completed within ten (10) days after the date of mailing thereof.

The undersigned agree to pay Licensor all expenses, including reasonable attorneys' fees and court costs, incurred by Licensor, its parents, subsidiaries, affiliates, and their successors and assigns, to remedy any defaults of or enforce any rights under this Guaranty or the License, effect termination of this Guaranty or the License, or collect any amounts due under this Guaranty or the License.

**IN WITNESS WHEREOF**, each of the undersigned has signed this Guaranty under Seal, as of this ____||____ date of ___DEC.___, 2008.

Witnesses:

Guarantors:

Ravinder Sethi
Address: 1314 Plymouth Ct.
Chicago, IL 60631
SSN: 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

Anshoo Sethi
Address: 1314 Plymouth Ct.
Chicago, IL 60631
SSN: 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

31

ST08

SEC-IHG-E-0000037

## ATTACHMENT "A"

Facilities and Services (paragraph 1):

Site-Area and general description:  19 Floor, Interior Corridor

Fee owners (names and addresses):  RASS Hospitality, LLC
Address:  _1314 S Plymouth Ct_
_Chicago, IL 60605_

Leases (parties, terms, etc.) if any:  Lease Agreement dated _____
between <u>RASS Hospitality, LLC.</u> ("Lessor") and <u>Extended Hospitality, Inc.</u> ("Lessee")
for the duration of the License and set to expire on _____.

Number of approved guest suites: 153

Restaurants and lounges (number, seating capacity, names and description): TBD

Gift shop: N/A

Other concessions and shops: N/A

Parking facilities (number of spaces, description): 153+

Swimming pool: Yes

Other facilities and services: Fitness Center, Great Room, Meeting Space

Ownership of Licensee (paragraph 10):

**EXTENDED HOSPITALITY, INC.** 100%
    Anshoo Seith, ~~managing member~~ shareholder 50%
    Ravinder Seith, ~~managing member~~ shareholder 50%

ST08

SEC-IHG-E-0000038

## ATTACHMENT "B"
## THE WORK

On or before **August 1, 2009**, Licensee shall submit preliminary plans. On or before **November 1, 2009** Licensee shall submit final plans, specifications and drawings for the Hotel, including its proposed equipment, furnishings, facilities and signs with such detail and containing such information as Licensor may request (collectively "Plans"). The Plans as submitted to Licensor shall conform to then prevailing System standards, including the construction standards set forth in the Manual. Construction shall not begin unless and until Licensor has approved the Plans. Thereafter, no change shall be made to the Plans without the advance consent of Licensor. Notwithstanding the foregoing, after the Plans have been approved, if in the course of actual construction any change in the Plans occurs, Licensee shall notify Licensor promptly. Licensee shall cause the Hotel to be constructed according to the Plans approved by Licensor, and Licensor shall determine whether construction has been completed in accordance with the Plans.

Construction of the Hotel shall commence on or before **March 1, 2010**. Commencement of construction shall mean excavation and poured footings with a finished building slab. Once the construction has commenced, it shall continue uninterrupted (except for interruption by reason of events constituting force majeure) until construction is completed. Notwithstanding the occurrence of any events constituting force majeure, or any other cause, construction shall be completed and the Hotel shall be furnished, equipped and shall otherwise be made ready to open for business in accordance with the License not later than ~~March 1, 2011~~.

Extension requests for commencement of construction of a new development for each Staybridge Suites Hotel brand may be considered on a basis of monthly increments up to a six-month period for any one extension. Requests for less than six months must be accompanied by a sum equal to the then current standard minimum Application Fee for the proposed number of suites for the Hotel, prorated according to the period of time requested. Requests for a six-month extension must be accompanied by a sum equal to 1/2 of the then current standard minimum Application Fee. Approval of extension requests is not automatic. The Licensee will be responsible for any expenses which may be incurred by Licensor in the processing of an extension request.

For a new development of a Staybridge Suites Hotel, if an extension request is approved and construction is commenced within the extension period, the extension fee paid will be refunded, without interest, less the expenses incurred in processing the extension request. If construction does not commence within the extension period, Licensor may refund or retain the extension fee at its sole discretion.

The Hotel shall not be opened for business as a Staybridge Suites Hotel unless and until:

(i) Licensor has approved and accepted, in advance, in writing (a) the construction of the Hotel in accordance with the Plans and Licensor's requirements; (b) the installation of all items of equipment, furniture, signs, computer terminals and related supplies and other items; and (c) the staffing and training of such staff necessary to operate the Hotel in accordance with Licensor's requirements;

(ii) no accounts are past due to Licensor, its parents, divisions, subsidiaries or affiliated companies by Licensee;

33

ST08

SEC-IHG-E-0000039

(iii) Licensee is in full compliance with all of the terms of this License Agreement.

Notwithstanding anything else herein to the contrary, Licensor may authorize Licensee to open and operate the Hotel as a Staybridge Suites branded hotel, even though Licensee has not fully complied with the terms of this License, provided that Licensee agrees to fulfill all remaining terms of this License on or before the dates designated by Licensor.

34

ST08

SEC-IHG-E-0000040

Exhibit 12

Felker Declaration

**IHG**

InterContinental Hotels Group

June 23, 2010

## VIA OVERNIGHT COURIER

Extended Hospitality, Inc.
Attn: Mr. Anshoo Sethi
1314 S. Plymouth Ct.
Chicago, IL 60605

Three Ravinia Drive
Suite 100
Atlanta, GA 30346-2149
www.ihg.com

**RE: LICENSE AGREEMENT DATED DECEMBER 30, 2008 (AS SAME MAY HAVE BEEN AMENDED, THE "LICENSE") BETWEEN EXTENDED HOSPITALITY, INC. ("LICENSEE") AND HOLIDAY HOSPITALITY FRANCHISING, INC. ("LICENSOR") FOR THE STAYBRIDGE SUITES® HOTEL TO BE LOCATED AT CHICAGO-O'HARE AIRPORT, IL/#14536 (THE "HOTEL")**

Dear Mr. Sethi:

By letters dated January 26, 2010 and April 27, 2010, Licensor issued separate notices of default and termination based on Licensee's failure to commence construction and Licensee's failure to submit plans as required by the License. To date, Licensor has not received any evidence that commencement of construction has occurred or that any plans have been submitted; therefore, the

above License will terminate effective at 3:00 p.m. Eastern time on **July 7, 2010**.

Please comply immediately with all of the Post-Termination Obligations set forth in Paragraph 12.D of the License.

This notice in no way supersedes or extends any earlier termination dates established in a Default and Termination Notice, if any, issued by Licensor relative to the subject Hotel.

Licensor reserves the right to exercise all rights or remedies it may have under the License or otherwise with respect to the License or the termination, including without limitation liquidated damages pursuant to the License.

Should you have any questions, please let us know.

Sincerely,

Jenny Tidwell
Vice President
Franchise Licensing and Compliance

       

Mr. Anshoo Sethi
June 22, 2010
Page 2

bcc:   Bob Ekman
        Kevin Woodard
        Rick Marshall
        Nimesh Patel
        Charlie Cahill
        Gary Armbrust



2

SEC-IHG-E-0000002

Exhibit 12

Felker Declaration

LOCATION:   Intersection of Courtland
Ave. and Higgins Road
Chicago, IL 60631

LOCATION #:  14554

DATE: December 30, 2008

**HOLIDAY HOSPITALITY FRANCHISING, INC.**

# HOTEL INDIGO
# LICENSE AGREEMENT


## WITH


## BOUTIQUE HOSPITALITY INVESTMENT, INC.


## LICENSEE

SEC-IHG-E-0000045

1. The License: ................................................................................................................................. 1
   A. THE HOTEL. ............................................................................................................................ 1
   B. THE SYSTEM. ......................................................................................................................... 1
2. Grant of License: ........................................................................................................................... 2
3. Licensee's Responsibilities: ......................................................................................................... 2
   A. OPERATIONAL AND OTHER REQUIREMENTS. ............................................................... 2
   B. UPGRADING OF THE HOTEL. ............................................................................................. 4
   C. FEES. ....................................................................................................................................... 4
   A. TRAINING. ............................................................................................................................. 6
   B. RESERVATION SERVICES. ................................................................................................. 7
   C. CONSULTATION ON OPERATIONS, FACILITIES AND MARKETING. ............................ 7
   D. MAINTENANCE OF STANDARDS. ...................................................................................... 7
   E. APPLICATION OF MANUAL. ............................................................................................... 7
   F. OTHER ARRANGEMENTS FOR MARKETING, ETC. ......................................................... 8
   G. LICENSOR'S USE OF OTHER ADVERTISING/PROMOTIONAL SUPPORT FUNDS. ....... 8
   H. PERFORMANCE OF LICENSOR'S OBLIGATIONS. ........................................................... 8
5. Changes In The Manual: ................................................................................................................ 8
6. IAHI: .............................................................................................................................................. 8
   A. MEMBERSHIP. ....................................................................................................................... 8
   B. FUNCTION OF COMMITTEES. ............................................................................................ 8
7. Proprietary Rights: ......................................................................................................................... 9
   A. OWNERSHIP OF SYSTEM. ................................................................................................... 9
   B. DISPUTES CONCERNING THE MARKS OR SYSTEM. ....................................................... 9
   C. PROTECTION OF THE MARKS. ........................................................................................... 10
   D. MODIFICATION OR DISCONTINUATION OF THE MARKS. .............................................. 10
8. Records And Audits: ...................................................................................................................... 10
   A. MONTHLY STATEMENTS. .................................................................................................... 10
   B. PREPARATION OF ................................................................................................................. 10

B. PREPARATION AND MAINTENANCE OF RECORDS. ........................................................................... 10
C. AUDIT. ........................................................................................................................................ 11
D. ANNUAL FINANCIAL STATEMENTS. ............................................................................................ 11
9. Indemnity And Insurance: ................................................................................................................ 11
   A. INDEMNITY. .................................................................................................................................. 11
   B. INSURANCE. ................................................................................................................................. 12
   C. EVIDENCE OF INSURANCE. ........................................................................................................... 12
10. Transfer: ......................................................................................................................................... 13
   A. TRANSFER BY LICENSOR. ............................................................................................................. 13
   B. TRANSFER BY LICENSEE. ............................................................................................................. 13
   C. TRANSFER OF EQUITY INTERESTS THAT ARE NOT PUBLICLY TRADED. ......................................... 14
   D. TRANSFERS OF PUBLICLY-TRADED EQUITY INTERESTS. .............................................................. 14
   E. TRANSFER OF THE LICENSE. ......................................................................................................... 14
   F. TRANSFERS OF AN EQUITY INTEREST IN THE LICENSEE UPON DEATH TO FAMILY MEMBERS. ....... 15
   G. REGISTRATION OF A PROPOSED TRANSFER OF EQUITY INTERESTS. ............................................. 16
   H. CHANGE OF OWNERSHIP. ............................................................................................................. 16
   I. TRANSFER OF REAL ESTATE. ........................................................................................................ 17
   J. MANAGEMENT OF THE HOTEL. ..................................................................................................... 17
11. Condemnation And Casualty: .......................................................................................................... 17
   A. CONDEMNATION. .......................................................................................................................... 17
   B. CASUALTY. .................................................................................................................................. 17
   C. NO EXTENSIONS OF TERM. ........................................................................................................... 18
12. Termination: .................................................................................................................................... 18
   A. EXPIRATION OF TERM. ................................................................................................................. 18
   B. TERMINATION BY LICENSOR ON ADVANCE NOTICE. .................................................................... 18
   C. IMMEDIATE TERMINATION BY LICENSOR. .................................................................................... 19
   D. DE-IDENTIFICATION OF HOTEL UPON TERMINATION. ................................................................... 20
   E. PAYMENT OF LIQUIDATED DAMAGES. .......................................................................................... 20
13. Relationship Of Parties: ................................................................................................................... 21
   A. NO AGENCY RELATIONSHIP. ........................................................................................................ 21
   B. LICENSEE'S NOTICES TO PUBLIC CONCERNING INDEPENDENT STATUS. ....................................... 21

i

SEC-IHG-E-0000046

14. Miscellaneous: ........................................................................................................................ 22
   A.  SEVERABILITY AND INTERPRETATION. ...................................................................... 22
   B.  BINDING EFFECT; GOVERNING LAW; VENUE. ......................................................... 22
   C.  EXCLUSIVE BENEFIT. ...................................................................................... 22
   D.  ENTIRE AGREEMENT. ...................................................................................... 22
   E.  LICENSOR WITHHOLDING CONSENT. ................................................................. 23
   F.  NOTICES. ....................................................................................................... 23
   G.  AUTHORITY. ................................................................................................... 23
   H.  GENERAL RELEASE AND COVENANT NOT TO SUE. ................................................. 24
   I.  PERFORMANCE OF THE WORK. .......................................................................... 24
   J.  REIMBURSEMENT OF EXPENSES. ....................................................................... 24
   K.  BUSINESS JUDGMENT. ..................................................................................... 25
   L.  DESCRIPTIVE HEADINGS. ................................................................................. 25
   M.  TERRORISM. ................................................................................................... 25
   N.  CAPITAL RESERVE. ......................................................................................... 25
   O.  RIGHT OF FIRST REFUSAL. ............................................................................... 26
15.  SPECIAL STIPULATIONS: ................................................................................... 26
GUARANTY ............................................................................................................ 31
ATTACHMENT "A" .................................................................................................. 33
ATTACHMENT "B" .................................................................................................. 34
THE WORK .............................................................................................................. 34

ii

INDG08

SEC-IHG-E-0000047

**Holiday Hospitality Franchising, Inc.**
**Three Ravinia Drive, Atlanta, Georgia 30346**
**Hotel Indigo**
**License Agreement**

This License dated ~~December 30~~ , 2008 (the "Term Commencement Date") is between Holiday Hospitality Franchising, Inc., a Delaware corporation ("Licensor"), and Boutique Hospitality Investment, Inc., an Illinois corporation ("Licensee") whose address is 8171 W. Higgins Rd., Chicago, IL 60631.

**The Parties Agree As Follows:**

## 1. The License:

Licensor operates and licenses a system (the "System" as described in Paragraph 1.B below) designed to provide a distinctive, high quality hotel service to the public under the name "Hotel Indigo®". High standards established by Licensor are the essence of the System. Future investments may be required of Licensee under this License Agreement ("License"). Licensee has independently investigated the risks of the business to be operated hereunder, including current and potential market conditions, competitive factors and risks; has read Licensor's Franchise Disclosure Document for prospective Hotel Indigo brand franchisees; and has made an independent evaluation of all such facts. Neither Licensor nor any other person on Licensor's

behalf has made any representation to Licensee concerning this License not fully set forth herein. A recital of the facts and acts, Licensee desires to enter into this License in order to obtain a license to use the System in the operation of a Hotel Indigo branded hotel (the "Hotel") to be located at the intersection of Courtland Ave. and Higgins Road, Chicago, IL 60631.

### A. The Hotel.

The Hotel comprises all structures, facilities, appurtenances, furniture, fixtures, equipment, and entry, exit, parking and other areas from time to time located on the land identified by Licensee to Licensor in anticipation of this License, or located on any land from time to time approved by Licensor for additions, signs or other facilities. The Hotel now includes the facilities listed on Attachment "A" hereto. No change in the number of approved guest rooms and no other significant change in the Hotel or in the manner in which the Hotel rooms and services are offered to the public (including timesharing and condominium Hotel projects and other projects not involving short term stays by transient guests) may be made without Licensor's approval. Licensee represents that it is entitled to possession of the Hotel during the entire license term without restrictions that would interfere with anything contemplated in this License.

### B. The System.

The System includes all elements which are designed to identify "Hotel Indigo" branded hotels to the consuming public or are designed to be associated with those hotels or to contribute to such identification or association and all elements which identify or reflect the quality standards and business practices of such hotels, all as specified in this License

1

INDG08

SEC-IHG-E-0000048