



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION ) ) ) | |
| Plaintiff, ) | Civil Action No. 13-cv-982 |
| ) v. ) ) | Honorable Judge Amy J. St. Eve |
| A CHICAGO CONVENTION CENTER, LLC, ANSHOO SETHI, and INTERCONTINENTAL REGIONAL CENTER TRUST OF CHICAGO, LLC ) ) ) ) ) | |
| Defendants. ) ) | |

## MOTION OF THE ASSOCIATION TO INVEST IN USA ("IIUSA") FOR LEAVE TO FILE A BRIEF AS *AMICUS CURIAE*

COME NOW IIUSA, and respectfully submit this Motion for Leave to File a Brief as Amicus Curiae in this matter. For the reasons set forth below, *amicus* respectfully requests that this Court grant the motion and permit the filing of the *amicus* brief attached hereto as **Exhibit A**.

### THE INTERESTS OF *AMICUS CURIAE*

1. Amicus Curiae, IIUSA is the national membership-based not-for-profit industry trade association for the EB-5 Regional Center Program (the "Program"). Federally-designated, active EB-5 Regional Centers are the core members of IIUSA. To date, IIUSA represents 83 Regional Center members. IIUSA members account for approximately 95% of all EB-5 capital formed in the U.S.

1

2. IIUSA members compete internationally for investment into the U.S. economy. IIUSA depends on the reputation of the U.S. as a nation where investors' interests are protected by laws, and justice is administered swiftly and fairly. If this reputation is tarnished even slightly, IIUSA members will face significant decline investor confidence, which in-turn diminishes the Program's ability to create jobs, improve the economy, and expand the United States' tax base.

### *AMICUS' BRIEF* WILL AID THIS COURT'S CONSIDERATION

3. "The privilege of being heard *amicus* rests in the discretion of the court which may grant or refuse leave according as it deems the proffered information timely, useful, or otherwise, and absent a statute to the contrary, no distinction is made between the request of a private person for leave to appear *amicus* curiae and one by an agent of the government." Leigh v. Engle, 535 F.Supp 418, 420 (ND Ill. 1982) (internal citations and quotation marks omitted).

4. Interpreting Fed. R. App. Proc. 29, the Seventh Circuit has limited *amicus curiae* filings to cases "in which a party is inadequately represented; or in which the would-be *amicus* has a direct interest in another case that may be materially affected by a decision in this case; <u>or in which the *amicus* has a unique perspective or specific information that can assist the court beyond what the parties can provide</u>." *Voices for Choices* v. *Ill. Bell Tel. Co.*, 339 F.3d 542, 545 (7th Cir. 2003) (chambers opinion) (citations omitted; emphasis added).

5. "The term *'amicus curiae'* means friend of the court, not friend of a party." *Ryan* v. *Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1063 (7th Cir. 1997) (chambers opinion). *Amicus* submits that it is plainly not a friend of either party. Neither the corporate nor personal Defendants are members of IIUSA. IIUSA has no particular interest in Plaintiff's claim, other than the general restoration of international market confidence through the timely and expeditious return of investors' funds.

2

6.  *Amicus* has, among other interests, an interest in providing, if not an obligation to provide, this Court with all the information it might wish to consider before ruling on an important matter of public interest such as the instant matter.

7.  Moreover, plainly, the proposed brief attached hereto as **Exhibit A** does vastly "more than repeat in somewhat different language the arguments" of another party. *Voices*, 339 F.3d at 545. *Amicus* is "articulating a distinctive perspective or presenting specific information, ideas, arguments, etc. that go beyond what the parties whom the *amici* are supporting have been able to provide." *Id.*

## CONCLUSION

For the foregoing reasons, IIUSA respectfully requests that the Court grant this motion for leave to file its brief as *amicus curiae*.

Dated: April 3, 2013

Respectfully submitted,

**ASSOCIATION TO INVEST IN THE USA (IIUSA)**

/s/ *Peter D. Joseph*

Peter D. Joseph, Executive Director

IIUSA > ASSOCIATION TO INVEST IN USA

Willis Tower - 233 S. Wacker Drive
84th Floor
Chicago, Illinois 60606
Phone: 773-899-0563
Email: peter.joseph@iiusa.org

*Amicus Curaie*

## CERTIFICATE OF SERVICE

I, Peter D. Joseph, Executive Director of IIUSA certify that on this, the 3rd day of April, 2013, caused a copy of the foregoing to be served by electronic filing on:

**Patrick M. Bryan**
**Assistant Chief Litigation Counsel**
**Division of Enforcement**
**U.S. Securities and Exchange**
**Commission**
**100 F Street, NE**
**Washington, DC 20549**
*Counsel for Plaintiff*

**Scott Mendeloff**
**Shareholder**
**Greenberg Traurig, LLP**
**77 West Wacker Drive**
**Suite 3100**
**Chicago, IL 60601**
*Counsel for Defendants*

*/s/ Peter D. Joseph*
Peter D. Joseph

4

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION ) ) ) | |
| Plaintiff, ) | Civil Action No. 13-cv-982 |
| ) v. ) ) | Honorable Judge Amy J. St. Eve |
| A CHICAGO CONVENTION CENTER, LLC, ANSHOO SETHI, and INTERCONTINENTAL REGIONAL CENTER TRUST OF CHICAGO, LLC ) ) ) ) ) | |
| Defendants. ) ) | |

## *AMICUS CURIAE* BRIEF

Peter D. Joseph, Executive Director



Willis Tower - 233 S. Wacker Drive
84th Floor
Chicago, Illinois 60606
Phone: 773-899-0563
Email: peter.joseph@iiusa.org

*Amicus Curaie*

1

## INTRODUCTION

Founded in 2005, the Association to Invest In the USA ("IIUSA") is the national trade association for the EB-5 Regional Center Program (the "Program") industry. IIUSA is a membership-based 501(c)(6) not-for-profit industry trade association with a core membership of IIUSA of federally-designated, active EB-5 Regional Centers.[1] As detailed herein, IIUSA is in full support of the Plaintiff's motion to modify the asset freeze order to return frozen investor funds directly to investors as soon as possible, demonstrating the efficiency and efficacy of U.S. securities laws in protecting investors – thereby restoring confidence into the international investor marketplace. To date, IIUSA represents 83 Regional Center members, who account for approximately 95% of all the EB-5 capital formation (billions of dollars), resulting U.S. job creation (tens of thousands of jobs), and tax revenue (over a billion dollars in aggregate from the federal/state/local levels).[2]

Congress established the EB-5 Program in 1990 to bring new investment capital into the country and to create new jobs for U.S. workers. The EB-5 Program is based on our nation's interest in promoting the immigration of people who invest their capital in new, restructured, or expanded businesses in the United States to create or preserve needed jobs for U.S. workers by doing so.

In the Program, immigrants who invest their capital in job-creating businesses in the United States receive conditional permanent resident status in the United States for a two-year period. After two years, if the immigrant investors have satisfied the

---

[1] Regional Centers are public and/or private entities, designated by the federal agency U.S. Citizenship and Immigration Services ("USCIS"), approved to serve as the conduits of foreign direct investment and regional economic development in the Program.
[2] These statistics are based on a comprehensive analysis of FY2011 I-924A's and economic modeling used in the 2010 USCIS/ICF International EB-5 Program evaluation obtained by IIUSA via Freedom of Information Act.

conditions of the Program and other criteria of eligibility, the conditions are removed and they become unconditional lawful permanent residents of the United States. The 1990 legislation that created the EB-5 immigrant investor category envisioned lawful permanent resident status for immigrant investors who invest in and engage in the management of job-creating commercial enterprises. In 1992, Congress enacted the EB-5 Regional Center Program (originally referred to as the "Immigrant Investor Pilot Program" in the statute), implemented by regulation in 1993, that was designed to encourage immigrant investment in a range of business opportunities within designated Regional Centers. In 2012, Congress reaffirmed its commitment to the Regional Center model of investment and job creation by removing the word "Pilot" from the statute that authorizes the now twenty-year old Program, and by providing a three-year reauthorization of the Program through October 2015.

The Program has grown exponentially since 2008, thanks in most part to the strong "post-recession demand" for "at risk" capital in the U.S. and the supply of unprecedented wealth that now exists overseas. This new macroeconomic reality is the environment for which this innovative regional economic development policy was designed. Program utilization is at an all-time high with investor petitions more than doubling between fiscal year (FY) 2011 and FY2012 – accounting for approximately $2.0 billion in foreign direct investment in FY2012.[3] All trends indicate that FY2013 will be yet another record breaking year of EB-5 capital formation, likely adding well over $2.0 billion to the over $4.7 billion in EB-5 capital formation since FY2005. The above referenced growth has made IIUSA's primary mission of making the Program a

---

[3] 1,563 immigrant investor petitions were approved in FY2011, compared to 3,677 in FY2012. Similarly, the number of approved Regional Centers as almost doubled between FY2010 to FY2012, going from 114 to 211.

3

permanent and successful part of 21st century U.S. economic development policy more important than ever. To accomplish this, IIUSA promotes industry best practices of our members to ensure that the potential of the Program is fully realized, and that the integrity Program is protected.

It is critical to our mission to ensure that the Program is administered with utmost vigilance to Program integrity. IIUSA has advocated for inter-agency collaboration for years for this very purpose. We applaud and welcome the collaboration of USCIS with its internal Fraud Detection and National Security Directorate and appropriate law enforcement and regulatory authorities such as the U.S. Securities and Exchange Commission ("SEC").

## IMPACT OF THE CURRENT LITIGATION ON THE INTERNATIONAL IMMIGRANT INVESTOR MARKETPLACE

In the interconnected world of today, information travels across national borders at an unprecedented rate. This is particularly true for an international industry like that of the EB-5 Regional Center Program. Immediately upon the SEC announcement of its enforcement action and publishing the filed complaint, IIUSA Officers and Directors began receiving panicked telephone calls from China – where most, if not all of the investors in the Defendant's project reside – from investor representatives.[4]

After brief consultations with counsel for the Plaintiff and the Defendants, IIUSA hosted a webinar on United States securities laws to educate the industry on the process that follows an SEC enforcement action. Shortly thereafter, IIUSA undertook

---

[4] The People's Republic of China is the country from which most EB-5 immigrant investors are native, accounting for approximately 80% of the EB-5 visas issued in FY2012 (according to U.S. Department of State statistics).

4

travel to China to provide information, through education seminars and high-level meetings with the "exit/entry" industry (*i.e.*, migration advisers and the provincial associations that oversee their activities) with respect to this matter.

On this trip, IIUSA visited Beijing, Guangzhou, and Shanghai (the three largest cities in China) meeting with the provincial exit/entry associations and migration advisers in each. In China, migration advisers must be licensed by the government to advise Chinese nationals on emigration opportunities, including the various immigrant investor programs offered by other countries in direct competition with the EB-5 Program.

The most acute concern expressed by investors and their representatives was how quickly their investment capital would be unfrozen and returned to them. Furthermore, the exit/entry associations were particularly concerned that without prompt action to unfreeze and return the funds, investor confidence in the EB-5 Program would be irreparably harmed – much to the detriment of United States interest in seeing the Program continue to fulfill its intended purpose of regional economic development and U.S. job creation.

**SUPPORT OF PLAINTIFF'S MOTION TO MODIFY ASSET FREEZE ORDER AND RETURN INVESTOR FUNDS DIRECTLY TO INVESTORS**

IIUSA, as the trade association and representative of the EB-5 Regional Center Program industry, fully supports the Plaintiff's motion to modify the asset freeze order and return investors' funds directly to them. This action will demonstrate that the United States is governed by the rule of law, efficiently and prudently enforced to protect investor interests – restoring investor confidence in the Program as a result.

The difficult economic times of today exacerbate the need for vigilant enforcement of United States securities laws that sends a message to investors that our country is open for investment and those who do invest are protected by our laws. The Plaintiff's actions to date, and most recent motion would send exactly that message to the immigrant investor marketplace, and it is welcomed by the industry.

Dated: April 3, 2013

Respectfully submitted,

**ASSOCIATION TO INVEST IN THE USA (IIUSA)**

/s/ *Peter D. Joseph*

Peter D. Joseph, Executive Director

Willis Tower - 233 S. Wacker Drive
84th Floor
Chicago, Illinois 60606
Phone: 773-899-0563
Email: peter.joseph@iiusa.org

*Amicus Curaie*