**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES SECURITIES<br>AND EXCHANGE COMMISSION | )<br>)<br>) |
| Plaintiff, | )  Case No. 1:13-cv-00982<br>) |
| v. | )<br>)  Honorable Judge Amy J. St. Eve |
| A CHICAGO CONVENTION CENTER,<br>LLC, ANSHOO SETHI, and<br>INTERCONTINENTAL REGIONAL<br>CENTER TRUST OF CHICAGO, LLC | )<br>)  Magistrate Judge Rowland<br>)<br>) |
| Defendants. | )<br>) |

**PLAINTIFF U.S. SECURITIES AND EXCHANGE COMMISSION'S
RESPONSE TO DEFENDANTS A CHICAGO CONVENTION CENTER, LLC
AND INTERCONTINENTAL REGIONAL CENTER TRUST OF CHICAGO, LLC'S
MOTION TO DISMISS**

Plaintiff United States Securities and Exchange Commission ("SEC") respectfully submits this brief response to A Chicago Convention Center, LLC's ("ACCC's") and Intercontinental Regional Center Trust of Chicago, LLC's ("IRCTC's") Motion to Dismiss [Dkt. #77].[1]

ACCC's and IRCTC's motion is frivolous and should be denied. ACCC and IRCTC contend that the SEC's Complaint must be dismissed because the SEC does not allege that "the securities at issue were offered, sold and purchased via 'domestic transactions,' as *Morrison* and

---

[1] The SEC is prepared to address the merits of the motion on May 2, 2013, the presentment date noticed by ACCC and IRCTC. To the extent the Court requires the parties to submit formal briefing on the motion, the SEC proposes that Defendants submit their memorandum of law in support of their motion no later than May 3, and the SEC respond to that memorandum by May 24.

its progeny require …"[2]  (Dkt. #77 ¶ 3.)   Not only is this contention demonstrably false (*see*, *e.g.*, SEC Compl. [Dkt. #3] ¶ 13), it is premised on the mistaken belief that *Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869 (2010), applies to the SEC's claims.  It does not.

Congress passed the Dodd-Frank Act in July 2010.[3]  Section 929P(b) of the Dodd-Frank Act overrides *Morrison* and specifically grants "jurisdiction" to federal district courts over actions brought by the Commission alleging a violation of the antifraud provisions of the federal securities laws involving: "(1) conduct within the United States constituting a significant step in furtherance of a violation, *even if the transaction occurs outside the United States and involves only foreign investors*, or (2) conduct occurring outside the United States that has a foreseeable substantial effect within the United States."  15 U.S.C. §78aa(b) (emphasis added).  Thus, the SEC need not satisfy the *Morrison* "domestic transaction" requirement to state a claim.  Defendants' motion to dismiss—premised entirely on the mistaken belief that *Morrison* applies to the SEC's claims—is therefore frivolous.

Moreover, Defendants cannot plausibly contend that the SEC's Complaint fails to satisfy the requirements of Section 929P(b).  The SEC's Complaint alleges substantial conduct occurring within the United States that constituted a significant step in furtherance of a violation of the securities laws.  The SEC's Complaint alleges—in precise detail—the false and misleading statements Defendants made in their offering materials as well as the many false and misleading statements Defendants made to the U.S. Citizenship and Immigration Service in furtherance of their fraudulent scheme.  (Compl. ¶¶ 18-50.)  The SEC also alleges that ACCC—

---

[2] On April 1, 2013, Defendant Anshoo Sethi—ACCC's and IRCTC's managing member—answered the SEC's Complaint.  (*See* Dkt. #54.)   Mr. Sethi asserted his Fifth Amendment right against self-incrimination in response to each and every factual averment and allegation in the Complaint.  (*Id.*)

[3] All of the investments at issue in the SEC's Complaint occurred *after* the passage of the Dodd-Frank Act.  (*See*, *e.g.*, Compl. ¶ 1.)

the "offeror" of the securities—is a domestic (Illinois) limited liability company as is IRCTC. (*Id*. ¶¶ 15-16, 23.)  The SEC alleges that Defendants' offering materials identify IRCTC as the "sponsor" of the Illinois-based convention center project that is the object of the Defendants' securities offering.  (*Id*. ¶ 23.)  Defendants' solicited investors to purchase interests in a U.S.-based company, ACCC, with the promise of possibly obtaining U.S. citizenship through the U.S. EB-5 Visa Program.  (*See id*. ¶¶ 2-8; *see also id*. ¶¶ 20-22, 52.)  The Complaint further alleges that, based on Defendants' false and misleading offering materials, over 250 investors have wired a minimum of $500,000 apiece to the Defendants' U.S. bank accounts.  (*See id*. ¶ 3; *see also id*. ¶ 52.)  In short, the SEC has plainly alleged *substantial* conduct occurring within the United States that furthered Defendants' violations of the securities laws, and whether the transactions occurred outside the United States and involved only foreign investors is simply irrelevant here in light of Section 929P(b) of the Dodd-Frank Act.[4]

---

[4] The SEC's Complaint does, however, allege that although Defendants' solicitation of investors occurred primarily overseas, "Defendants have engaged in the sale of securities *in the United States*."  (Compl. ¶ 13 (emphasis added).)  The SEC further alleges that:  "Defendants—U.S. residents—have sole discretion whether to accept or reject an investor's subscription agreement"; investors are instructed to wire funds to an escrow agent in the U.S.; and, sales were not final until approved by the sponsors and  the investors remit payment to  a  U.S.-based escrow agent.  (*Id*.)  Further, under the terms of Defendants' offering, investors' subscription amounts would only be released to the Defendants upon approval of the investors' U.S. visa applications.  (*See id*. ¶ 5.)  Thus, the Complaint alleges facts demonstrating that sales of securities occurred within the United States.  These allegations alone satisfy the *pre*-Dodd Frank Act requirements to state a claim.  *See*, *e.g*., *Quail Cruises Ship Management Ltd. v. Agencia De Viagens CVC TurLimitada*, 645 F.3d 1307, 1310-11 (11th Cir. 2011) (holding that a foreign plaintiff alleged a domestic transaction because parties submitted their purchase and sale agreement to Florida and the agreement "confirm[ed] that it was not until this domestic closing that title to the shares was transferred"); *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 67 (2d Cir. 2012) (holding a transaction is domestic if the "if irrevocable liability is incurred or title passes within the United States."); *SEC v. Geranio*, Civil Action No. 12-cv-04257 (C.D. Cal. Jan. 29, 2013) (slip opinion) (attached as Exhibit A hereto) ("Although  the  boiler  rooms'  solicitation  of  foreign  Investors  took  place  entirely overseas, the sales were not final until the Investors remitted payment to U.S.-based escrow agents and sent signed subscription agreements to the Issuers directly in the United States" therefore the "domestic transactions" requirement contemplated in *Morrison* was satisfied).

"In evaluating the sufficiency of the complaint, [a court must] view it in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). Here, the SEC alleges that Defendants "engaged in the sale of securities *in the United States*" and engaged in substantial conduct within the United States that furthered Defendants' violation of the securities laws. The Complaint therefore states a claim. *See* 15 U.S.C. § 78aa(b). Accordingly, Defendants' motion to dismiss should be denied.

Dated: May 1, 2013

Respectfully submitted,

*/s/ Patrick M. Bryan*
Patrick M. Bryan (IL Bar No. 6277194)
U.S. Securities & Exchange Commission
100 F Street, NE
Washington, DC 20549
Telephone: (202) 551-4420
BryanP@sec.gov

Charles J. Felker
Adam Eisner
Mika Donlon
U.S. Securities & Exchange Commission
100 F Street, NE
Washington, DC 20549
FelkerC@sec.gov
EisnerA@sec.gov
DonlonM@sec.gov

*Counsel to Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I, Patrick M. Bryan, certify that on May 1, 2013, I electronically filed the foregoing **PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S RESPONSE TO DEFENDANTS A CHICAGO CONVENTION CENTER, LLC AND INTERCONTINENTAL REGIONAL CENTER TRUST OF CHICAGO, LLC's MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties of record.

*/s/ Patrick M. Bryan*

Patrick M. Bryan

# EXHIBIT A

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 12-04257 DMG** | | Date | January 29, 2013 |
|---|---|---|---|---|

| Title | *Securities and Exchange Commission v. Geranio, et al.* | | Page | 1 of 9 |
|---|---|---|---|---|

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| VALENCIA VALLERY | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings:  IN CHAMBERS—ORDER DENYING DEFENDANTS' MOTION TO DISMISS [DOC. # 16]**

## I.    INTRODUCTION

Plaintiff, Securities and Exchange Commission ("SEC") filed the Complaint in this action on May 16, 2012 against Defendants, Nicholas Louis Geranio, The Good One, Inc., Kaleidoscope Real Estate, Inc., and BWRE Hawaii, LLC, on July 31, 2012 [Doc. # 1].  The Complaint raises claims under Securities Exchange Act ("SEA") Sections 17(a)(1) and (3) (15 U.S.C. §§ 77q(a)(1), (3)); Section 17(a)(2) (15 U.S.C. § 77q(a)(2)); Section 10(b) and Rule 10b-5(a) and (c) (15 U.S.C. § 78j(b), 17 C.F.R. §§ 240.10b-5(a), (c)); and Section 20(a) (15 U.S.C. § 78j(b)).

Defendants Geranio, The Good One, Inc., Kaleidoscope Real Estate, Inc., and BWRE Hawaii, LLC, filed the present Motion to Dismiss on July 31, 2012 [Doc. # 16].  Defendants amended the Motion on August 1, 2012 [Doc. # 18].  Defendants seek to dismiss the Complaint based on lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1); failure to name indispensable parties under Fed. R. Civ. P. 12(b)(7); and failure to state particular facts sufficient to state a claim under Fed. R. Civ. P. 12(b)(6).  Plaintiff, Securities and Exchange Commission, opposed the Motion on September 28, 2012 [Doc. # 23], and Defendants replied on October 5, 2012 [Doc. # 24].  On October 10, 2012, the Court took the Motion under submission because it deemed the Motion appropriate for decision without oral argument under Fed. R. Civ. P. 78(b); C.D. Cal L.R. 7-15 [Doc. 25].

## II.    FACTUAL BACKGROUND

The Complaint alleges that Defendant Geranio is the alter ego of Corporate Defendants The Good One, Inc. and Kaleidoscope Real Estate, Inc., consulting companies.  (Compl. ¶ 2.) From approximately April 2007 to September 2009, Geranio created eight U.S. companies ("Issuers") to issue Regulation S stock to offshore investors ("Investors") through offshore

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 12-04257 DMG** | | Date | January 29, 2013 |
|---|---|---|---|---|

| Title | *Securities and Exchange Commission v. Geranio, et al.* | | Page | 2 of 9 |
|---|---|---|---|---|

"boiler rooms" that Geranio recruited.  (*Id.*)  Regulation S stock is exempt from registration with the SEC because it is offered solely to investors who are outside the United States.  (*Id.*)  Geranio allegedly recruited Defendant Field to draft materially misleading business plans, marketing materials, and website material for the Issuers.  (*Id.* at 3.)  He directed traders, including Field, to engage in matched orders and manipulative trades to establish artificially high stock prices and attract buyers.  (*Id.* at ¶ 4.)

Using The Good One and Kaleidoscope as aliases, Geranio allegedly organized the Issuers, installed management, and introduced them to offshore boiler rooms he had recruited to sell the Issuers' stock.  (Compl. ¶ 26.)  Geranio and Field created Worth Systems International, a Panamanian entity, through which the Issuers distributed large blocks of their stock to Investors.  (*Id.* at ¶¶ 120, 122.)  The boiler rooms used high-pressure sales tactics to convince overseas investors to purchase the Issuers' stock at a price significantly above the price-per-share listed in the agreements with the Issuers.  (*Id.* at ¶¶ 6, 121.)  After convincing an Investor to buy the Regulation S stock, a boiler room agent instructed the Investor to send payment to an escrow agent in the United States and sent the selling Issuer a trade sheet listing the sale information.  (*Id.* at ¶ 135.)  The Investors were also required to complete and return a completed Subscription Agreement.  (*Id.* at ¶¶ 135, 138.)  The Issuers' CEOs reconciled the funds listed in their trade sheets with corresponding funds in the escrow accounts to ensure consistency.  *Id.*  Upon receipt of the Subscription Agreement, the escrow released the funds.  (*Id.* at ¶ 138.)  Approximately 60-75% of sale proceeds went to the boiler rooms as sales markups, 2.5% of the sale proceeds went to the escrow agent, and the remaining balance went to the Issuers.  (*Id.* at ¶ 7.)  According to the Complaint, the Issuers then funneled approximately $2.135 million of the sale proceeds to Geranio through The Good One and Kaleidoscope.  (*Id.*)  Field allegedly received approximately $279,000.  (*Id.*)

The Complaint alleges that Geranio fraudulently manipulated the value of the Regulation S stock in several ways.  First, he recruited Field, who served as an officer, director, or investor relations representative for each of the Issuers.  (Compl. ¶ 53.)  In that capacity, Field drafted business plans, press releases, brochures, and website content.  (*Id.* at ¶¶ 54-56.)  These promotional materials contained materially false and misleading statements about the status of planned or hypothetical business activities; plagiarized content; misrepresented the nature of relationships between the Issuers and other entities; and provided misleading information about the experience and number of management.  (*Id.* at ¶ 57.)  The boiler rooms distributed these false statements to potential Investors, in addition to making explicit false statements about the Issuers.  (*Id.* at ¶¶ 139-40.)  The Complaint states that Geranio and Field knew that the boiler rooms were making fraudulent statements to Investors because Investors complained.  (*Id.* at ¶¶ 147-61.)  Geranio also directed stock promoters and other individuals to manipulate the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 12-04257 DMG | Date | January 29, 2013 |
|---|---|---|---|

| Title | *Securities and Exchange Commission v. Geranio, et al.* | Page | 3 of 9 |

Issuers' share prices in the United States. (*Id.* at ¶¶ 67-73.) He also directed U.S. investors to particular brokers and orchestrated matched orders and manipulative trades to raise the Issuers' share prices in order to induce purchases by the overseas Investors. (*Id.* at ¶¶ 74-118.)

The Complaint alleges that Geranio controlled every aspect of the fraudulent scheme. He created and controlled The Good One, whose primary officer is his former wife, and Kaleidoscope, whose primary officer is his girlfriend. (Compl. ¶¶ 15-16.) He recruited the boiler rooms and negotiated the terms of their agreements with the Issuers. (*Id.* at ¶¶ 125-30.) He recruited the escrow agents and negotiated the terms of their agreements. (*Id.* at ¶¶ 131-33.) Through The Good One and Kaleidoscope, Geranio and Field received a significant portion of the proceeds from the Regulation S sales. (*Id.* at ¶¶ 163-64.)

## III. DISCUSSION

### A. Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of a complaint for lack of subject matter jurisdiction. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010) (citing *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989)); *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)). Defendants assert that, under *Morrison v. Nat'l Australia Bank Ltd.*, __ U.S. __, 130 S. Ct. 2869, 2877, 177 L. Ed. 2d 535 (2010), this Court lacks jurisdiction to hear Plaintiff's claims under SEA § 10(b) because the transactions at issue did not take place within the United States.

Defendants misread *Morrison*. In that case, the district and circuit courts dismissed the plaintiff's claims under Section 10(b) for lack of subject matter jurisdiction. *See* 130 S. Ct. at 2876. The Supreme Court held that the lower courts incorrectly analyzed the question of Section 10(b)'s extraterritorial reach as a jurisdictional one, and instead characterized this inquiry as a "merits question" appropriate for analysis under Fed. R. Civ. P. 12(b)(6). *Id.* The Court unequivocally held that the reach of Section 10(b)'s authority does not delineate federal court jurisdiction over Section 10(b) claims. *Id.* Accordingly, the Court construes Defendants' argument on this issue as one for dismissal under Rule 12(b)(6).

### B. Failure to Join Indispensable Parties

Defendant asserts that Plaintiff's failure to join the Issuers, boiler rooms, or escrow agents in this action requires dismissal under Federal Rule of Civil Procedure 12(b)(7). Under that Rule, a party may move to dismiss the complaint for failure to join a required party under

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 12-04257 DMG** | Date | January 29, 2013 |
|---|---|---|---|

| Title | *Securities and Exchange Commission v. Geranio, et al.* | Page | 4 of 9 |
|---|---|---|---|

Rule 19. Determinations by regulatory agencies about which parties to name in an enforcement action, however, are presumed immune from judicial review. *See Heckler v. Chaney*, 470 U.S. 821, 832, 105 S. Ct. 1649, 1656, 84 L. Ed. 2d 714 (1985). In recent years, several courts have found that an enforcement action brought by a regulatory agency need not name all parties involved in the allegedly unlawful scheme to survive a Motion to Dismiss. *See Commodity Futures Trading Commission v. Paron Capital Management, LLC*, No. CV 11-04577, 2011 U.S. Dist. LEXIS 146207 at *7 (N.D. Cal. Dec. 20, 2011) (denying motion to dismiss on the basis that CFTC failed to join indispensable defendants); *SEC v. Princeton Econ. Int'l Ltd.*, 2001 U.S. Dist. LEXIS 948 at *3 (S.D.N.Y. Feb. 7, 2001) ("The SEC and the CFTC are the sole architects of their enforcement proceedings and [defendants] may not circumvent the exercise of agency discretion through compulsory joinder rules."). This Court too finds that Plaintiff is not required to join the Issuers, boiler rooms, or escrow agents in this action.

**C.      Failure to State a Claim**

Defendant next asserts that the Complaint must be dismissed because it fails to state an actionable claim under SEA § 20(a).[1]  Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007). Pursuant to Fed. R. Civ. P. 12(b)(6), a defendant may seek dismissal of a complaint for failure to state a claim upon which relief can be granted. A court may grant such a dismissal only where the plaintiff fails to present or to allege sufficient facts to support a cognizable legal theory. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("Rule 8 . . . does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").

Claims involving fraud must meet the heightened pleading standard set forth in Fed. R. Civ. P. 9(b). ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). To comply with Rule 9(b), the SEC is "not required to prove its case in the pleadings," but it "must not make conclusory allegations of fraud." *SEC v. Ficeto*, 839 F. Supp. 2d 1101, 1103 (C.D. Cal. 2011) (internal quotation omitted).

---

[1] As noted above, the Court construes Defendants' argument that the Court lacks subject matter jurisdiction under *Morrison* as a motion to dismiss Plaintiff's SEA § 10(b) claim under Fed. R. Civ. P. 12(b)(6).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 12-04257 DMG | Date | January 29, 2013 |
|---|---|---|---|

| Title | *Securities and Exchange Commission v. Geranio, et al.* | Page | 5 of 9 |

A court must accept all factual allegations as true. *Twombly*, 550 U.S. at 555. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. While ordinarily a Court may only look to the face of the complaint in deciding a Rule 12(b)(6) motion, *see Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002), the Ninth Circuit has held that the Court may also consider evidence "on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *see also Van Buskirk*, 284 F.3d at 980 (the court may consider such documents without converting the motion to dismiss into a motion for summary judgment). "The court may treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'" *Id.*

## 1. The Complaint States a Claim Under Section 10(b) and Rule 10b-5

The Third Claim for Relief seeks relief under SEA § 10(b) and Rule 10b-5(a) and (c) promulgated thereunder. (Compl. ¶¶ 178-181.) In *Morrison*, the Supreme Court examined whether Section 10(b) permitted a "foreign-cubed action" in which foreign plaintiffs sue foreign and American defendant-issuers for misconduct in connection with securities traded on foreign exchanges. *See* 130 S. Ct. at 2875, 2894 n.1. The Court emphasized the "longstanding principle" that "legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." *Id.* at 2877. The Court rejected calls from the petitioners and the Solicitor General to extend Section 10(b) to some extraterritorial transactions, finding that it contains no "clear statement of extraterritorial effect." *Id.* at 2883. Rather, the Court held that "Section 10(b) reaches the use of a manipulative or deceptive device or contrivance only in connection with the purchase or sale of a security listed on an American stock exchange, and the purchase or sale of any other security in the United States." *Id.* at 2888. Under this new bright-line "transactional test," the Court found that the foreign transactions at issue in *Morrison* did not give rise to a claim under Section 10(b) and affirmed the dismissal of the Complaint. *Id.*

Here, the Regulation S stock at issue is not "listed on an American stock exchange" because it is not required to be registered with the SEC. (Compl. ¶ 2.) Therefore, the Court must determine whether the transactions at issue were for "the purchase or sale of any other security in the United States" under the second prong of the *Morrison* test. *Morrison*, 130 S. Ct. at 2888.

There is little precedent on what constitutes a domestic sale or purchase after *Morrison*.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 12-04257 DMG | Date | January 29, 2013 |
|---|---|---|---|

| Title | *Securities and Exchange Commission v. Geranio, et al.* | Page | 6 of 9 |
|---|---|---|---|

Although the Ninth Circuit has not addressed the issue, the Second Circuit did so in *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60 (2d Cir. 2012). There, the Second Circuit considered whether a foreign hedge fund's purchase of off-exchange shares of U.S. companies, brokered through a U.S. broker-dealer, constituted a domestic purchase or sale under *Morrison*. *Id.* at 62-63. The court noted that, under the Exchange Act, the terms "buy" and "purchase" "include any *contract* to buy, purchase, or otherwise acquire." *Id.* at 67 (citing 15 U.S.C. § 78c(a)(13)) (emphasis added). Similarly, the terms "sale" and "sell" "include any *contract* to sell or otherwise dispose of." *Id.* (citing 15 U.S.C. § 78c(a)(14)) (emphasis added). The court reasoned that these definitions "suggest that the act of purchasing or selling securities is the act of entering into a binding contract to purchase or sell securities." *Id.* This conclusion comported with Second Circuit cases holding that a securities transaction occurs "when the parties incur irrevocable liability," that is "the point at which, in the classic contractual sense, there was a meeting of the minds of the parties" and "the parties obligated themselves to perform . . . ." *Id.* at 67-68 (citing *Radiation Dynamics, Inc. v. Goldmuntz*, 464 F.2d 876, 891 (2d Cir. 1972)).

The *Absolute Activist* court concluded that "the point of irrevocable liability can be used to determine the locus of a securities purchase or sale." *Id.* In other words, a stock transaction is domestic if the purchase and sale agreement is formed in the United States. Alternatively, the court held that a transaction is domestic if the "title to the shares was transferred within the United States." *Id.* (citing *Quail Cruises Ship Management Ltd. v. Agencia De Viagens CVC Tur Limitada*, 645 F.3d 1307, 1310-11 (11th Cir. 2011) (holding that a foreign plaintiff alleged a domestic transaction because parties submitted their purchase and sale agreement to Florida and the agreement "confirm[ed] that it was not until this domestic closing that title to the shares was transferred")). Applying this test to the facts in that case, the *Absolute Activist* court determined that the complaint failed to plead a domestic transaction because it contained no "facts concerning the formation of the contracts, the placement of purchase orders, the passing of title, or the exchange of money . . . ." *Id.* at 70.

The Ninth Circuit has yet to interpret *Morrison*, but several cases suggest an inclination to adopt the "irrevocable liability" test. *See SEC v. Levine*, No. CV 10-16238, 2011 U.S. App. LEXIS 25635 at *2 (9th Cir. Dec. 21, 2011) (noting, in *dicta*, "the Securities Act governs the [defendants'] sales because the actual sales closed in Nevada when [the defendants] received completed stock purchase agreements and payments"); *MVP Asset Management (USA) L.L.C. v. Vestbirk*, No. CV 10-2483, 2012 U.S. Dist. LEXIS 97104 at *18 (E.D. Cal. Jul 12, 2012) (citing *Absolute Activist*'s "irrevocable liability" standard, but finding allegations that certain funds were transferred within the United States insufficient to state a claim after *Morrison*).

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES—GENERAL

| Case No. | **CV 12-04257 DMG** | | Date | January 29, 2013 |
|---|---|---|---|---|

| Title | *Securities and Exchange Commission v. Geranio, et al.* | Page | 7 of 9 |
|---|---|---|---|

Here, the Complaint states that after agreeing to purchase shares, overseas investors were instructed to wire their funds to one of several escrow agents in the United States. (Compl. ¶ 131.) Thereafter, "[t]he Regulation S funds for a particular sale were released from the escrow account after an investor had returned a completed subscription agreement." (Compl. ¶ 138.) Although no Subscription Agreement is attached to the Complaint, Plaintiff filed a sample Subscription Agreement with its Opposition to the Motion. (Opp'n to Mot. to Dismiss, Exh. 2.) The sample Subscription Agreement is for the purchase of shares of Spectrum Acquisition Holdings, Inc., one of the U.S.-based Issuers organized by Geranio. (*Id.* at 1.) It instructs the Investor to sign and return the Agreement and to wire payment to a bank located in Lake Grove, New York. (*Id.*) The Subscription Agreement requires that the Issuer sign after receipt to accept the sale agreement.[2] (*Id.* at 8.)

As a preliminary matter, the Court finds it appropriate to consider the sample Subscription Agreement as part of the Complaint. *See Marder*, 450 F.3d at 448. First, the Complaint refers to the Subscription Agreements. (Compl. ¶ 138.) Second, the Agreements are "central to the plaintiff's claim" because they effectuated the allegedly fraudulent sales at issue. *Marder*, 450 F.3d at 448. Third, Defendants did not object to Plaintiff's submission of the sample Subscription Agreement in their Reply and the Court therefore assumes that Defendants do not object to the document's authenticity. *See id.*

Having considered the limited case law on this subject and the sample subscription agreement, the Court finds that the Regulation S sales are within the reach of Section 10(b). Although the boiler rooms' solicitation of foreign Investors took place entirely overseas, the sales were not final until the Investors remitted payment to U.S.-based escrow agents and sent signed subscription agreements to the Issuers directly in the United States. The Court finds that the parties' finalized their agreements within the United States and therefore the transactions were "domestic" as contemplated in *Morrison*. This finding also comports with the Second Circuit's "irrevocable liability" test, as the agreements became irrevocable when the Issuers

---

[2] In this respect, the Subscription Agreement appears inconsistent with the Complaint. The Complaint suggests that the Issuers distributed their shares to Worth, which then transferred the shares to the boiler rooms, which finally transferred them to Investors after sale. (Compl. ¶¶ 120-21.) *See Absolute Activist*, 677 F.3d at 68 (finding that a transaction may take place at the location where title is transferred). The sample Subscription Agreement, however, informs the Investor that "the issued shares, after being exchanged for payment in full, shall be forwarded by the Escrow Agent to Worth Systems, Inc. for delivery to Subscriber." (Opp'n to Mot. to Dismiss, Exh. 2 at 2.) This suggests that the shares remained with the Issuers until after the sales were finalized. The Court need not resolve this inconsistency for purposes of the present Motion because it is sufficient that the locus of the agreement between the Issuers and the Investors was in the United States where the sale was finalized. *See Levine*, 2011 U.S. App. LEXIS 25635 at *2.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## CIVIL MINUTES—GENERAL

| Case No. | CV 12-04257 DMG | Date | January 29, 2013 |
|---|---|---|---|

| Title | *Securities and Exchange Commission v. Geranio, et al.* | Page | 8 of 9 |
|---|---|---|---|

countersigned them in the United States and escrow released the funds. *See Absolute Activist*, 677 F.3d at 67-68. Accordingly, the Complaint states a claim for relief under Section 10(b).

### 2.    The Complaint States a Claim Under Section 20(a)

Defendants also assert that the Complaint fails to state a claim that Geranio is liable as a "control person" for the actions of the Issuers and boiler rooms under SEA § 20(a). Under Section 20(a),

> Every person who, directly or indirectly, controls any person liable under any provision of [the SEA] shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable . . . unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

Defendants apparently misread the Complaint. Plaintiff's Fifth Claim for Relief alleges that Geranio is a control person of The Good One and Kaleidoscope under SEA § 20(a), such that he should be held jointly and severally liable for their violations. (Compl. ¶¶ 187-190.) No other cause of action relates to control-person liability under SEA § 20(a). Although some facts alleged in the Complaint may be relevant to whether Geranio also controlled Issuers and boiler rooms, their presence does not alter the text of the Fifth Claim for Relief. Because Defendants do not challenge the sufficiency of the pleadings with respect to Geranio's control-person liability for The Good One and Kaleidoscope, the Court need not examine whether the Fifth Claim for Relief is adequately pleaded.

## IV.    CONCLUSION

In light of the foregoing, Defendants' Motion to Dismiss is **DENIED** in its entirety. Defendants shall have 21 days from the date of this Order to file an Answer.

## IT IS SO ORDERED.