UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 13-cv-982 |
| v. | ) ) | Judge Amy J. St. Eve |
| A CHICAGO CONVENTION CENTER, LLC, ANSHOO R. SETHI, and INTERCONTINENTAL REGIONAL CENTER TRUST OF CHICAGO, LLC | ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
THE CORPORATE DEFENDANTS' MOTION TO DISMISS**

Defendants A Chicago Convention Center, LLC and Intercontinental Trust Center of Chicago, LLC (collectively, the "Corporate Defendants") hereby submit their memorandum of law in support of their motion to dismiss pursuant to Fed. R. Civ. 12(b)(6).

The instant motion challenges a single, dispositive aspect of the merits of the SEC's complaint – that is, whether the transactions here at issue were "domestic transactions" under *Morrison v. National Australia Bank Ltd.*, 130 S.Ct. 2869, 2883 (2010). Because the transactions here were not "domestic transactions," the SEC's complaint fails to state a claim under the Securities and Exchange Acts.

**BACKGROUND**

The complaint alleges that the Corporate Defendants engaged in a scheme to defraud only "foreign nationals" – specifically, "Chinese investors." (Cplt ¶ 2-3) The Corporate Defendants extended offers to these foreign investors via an Offering Memorandum. (*Id*. ¶¶ 4, 20) The Offering Memorandum contained the Corporate Defendants' offer to sell securities to

1

the foreign investors. In the SEC's words: "The Offering Memorandum expressly offer[ed] to sell securities in a private placement to investors." (*Id*. ¶ 22, quotations omitted) The complaint alleges that this ***offer*** was made ***outside the United States*** via "foreign sales agents" and directly to investors "in China." (*Id*. ¶ 26)

If an interested foreign investor accepted the Corporate Defendants' offer, the investor executed a Subscription Agreement. (*Id*. ¶ 13a) By executing a Subscription Agreement, the foreign investor accepted the offer and entered into a contract to purchase securities: "By signing, you agree to abide by the [LLC Operating Agreement], and to the terms and conditions of this Subscription Agreement." (*Id*. at 1, Subscription Instructions, ¶ 1) This acceptance occurred in ***China*** as well. The terms of the Subscription Agreement reinforces the irrevocability of the Chinese investors' acceptance of the offer by providing that foreign investors' execution of the Subscription Agreement "irrevocably" ceded decision-making authority to the issuer. (*Id*. at 6, ¶ 7)

The Subscription Agreement explicitly states that all of the elements of each securities transaction – the offer, sale, and purchases – occurred abroad. Paragraph 1(c)(ii) of the Subscription Agreement states: "No *offer or sale* of the Interests was made to the investor in the United States." (*Id*., Ex. B, at 2, emphasis added) In ¶ 2(b), the Subscription Agreement states: "The Investor is subscribing to *purchase* the Interests outside the United States…." (*Id*. at 4, emphasis added)

## ARGUMENT

I. **APPLICABLE STANDARD FOR RULE 12(B)(6) MOTION.**

When considering a motion to dismiss, a court should "accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff."

*Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). "However, legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption." *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). "Dismissal is proper if the complaint fails to set forth enough facts to state a claim to relief that is plausible on its face." *Heyde v. Pittenger*, 633 F.3d 512, 516-17 (7th Cir. 2011) (internal citations and quotations omitted).

## II. THE COMPLAINT SHOULD BE DISMISSED BECAUSE THE SEC FAILS TO STATE A CLAIM UNDER THE SECURITIES AND EXCHANGE ACTS.

The complaint alleges that the Corporate Defendants violated the Securities Act, 15 U.S.C. § 77q(a)(1)-(a)(3) (Counts I-II) and Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Exchange Act Rule 10b-5, 17 C.F.R. § 240.10b-5 (Count III). To state claims under the Securities Act and the Exchange Act, the SEC must establish that the securities here at issue were (a) "listed on domestic exchanges" and/or (b) were offered, sold, and purchased via "domestic transactions." *See Morrison v. National Australia Bank Ltd.*, 130 S.Ct. 2869, 2883 (2010) (the Exchange Act does not apply to extraterritorial transactions); *S.E.C. v. ICP Asset Mgmt., LLC*, 2012 WL 2359830, *2 (S.D.N.Y. 2012) (§ 17(a) Securities Act claims are subject to the same extraterritorial limits stated in *Morrison*); *SEC v. Goldman Sachs & Co.*, 790 F. Supp. 2d 147, 164 (S.D.N.Y. 2011) (same).

The complaint fails to state a substantive claim for Securities and Exchange Act violations under *Morrison*: (1) the SEC does not allege that the transactions at issue here involved securities "listed on domestic exchanges"; and (2) the allegations in the complaint and the content of the Subscription Agreement establish that this offering did not involve a "domestic transaction."

3

Struggling to avoid this fatal flaw, the SEC incorrectly argues that: (a) *Morrison* is inapplicable because it was overruled by Section 929P(b) of the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"); and (b) the transactions here at issue constituted "sales" of securities via "domestic transactions." (SEC Opp. to Mot. to Dismiss at 1-2 & n.3) We address each of these arguments in turn below.

A.     Section 929P(b) Did Not Overrule *Morrison*.

To evaluate the SEC's contention that Section 929P(b) overruled *Morrison*, it is necessary to draw a clear line between two issues addressed in separate sections of *Morrison*. First, the issue of whether a court has subject matter jurisdiction over the types of cases at issue in *Morrison* was addressed in Part II of the opinion. The Supreme Court ruled that the geography of a fraudulent scheme is irrelevant to a district court's subject matter jurisdiction under § 10(b). 130 S.Ct. at 2877. Second, the issue of whether a plaintiff can state a substantive claim under § 10(b) for which relief can be granted in the types of cases at issue in *Morrison*, *i.e.*, where significant elements of the transactions at issue occurred abroad. This was addressed in Part III of the opinion. Here, the Supreme Court in *Morrison* ruled that for securities that are not listed on domestic exchanges, § 10(b) applies if the securities are sold or purchased via "domestic transactions." *Id*. at 2884-85. In other words, the Supreme Court held that § 10(b) is inapplicable if the security at issue was not "listed on domestic exchanges" or was not purchased or sold via a "domestic transactions." *Id*. at 2886. As explained below, Section 929P(b) did not overrule *Morrison* because Section 929P(b) only addresses the first issue of subject matter jurisdiction, and does not reach the second issue limiting § 10(b) to securities listed, sold, or purchased domestically.

4

Pre-*Morrison* Background. Section 10(b) prohibits any person from using interstate commerce to commit fraud in the purchase or sale of registered and unregistered securities. Before *Morrison*, federal courts held that section 10(b) was silent as to extraterritorial application. *See, e.g., In re CP Ships Ltd. Secs. Litig.*, 578 F.3d 1306, 1313 (11th Cir. 2009) ("It is well recognized that the Securities Exchange Act is silent as to its extraterritorial application."); *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (same). When cases involving transactions with an international connection arose, courts assessed the extraterritorial reach of § 10(b) as a matter of subject matter jurisdiction. *See Morrison*, 130 S.Ct. at 2877 (noting that the Second Circuit in *Morrison* was "hardly alone" in this regard, and citing other Circuit precedent that had done so).

To determine subject matter jurisdiction in this context, courts developed what became known as the "conduct" and "effects" tests. *Id*. at 2879-80 (recounting history of "conduct" and "effects" tests); *Kauthar SDN BHD v. Sternberg*, 149 F.3d 659, 665 n.8 (7th Cir. 1998) (applying both tests to measure U.S. contacts). The "conduct test" inquired into "whether the wrongful conduct occurred in the United States." *Id*. at 2879. The "effects test" inquired into "whether the wrongful conduct had a substantial effect in the United States or upon United Sates citizens." *Id*. *Morrison* eviscerated these issues.

*Morrison* and its holding. In *Morrison*, the Supreme Court held that the geography of a scheme alleged under § 10(b) is not relevant to the district court's subject matter jurisdiction, but may be relevant to the availability of relief under § 10(b). The essential facts in *Morrison* are simple: foreign investors sued a foreign issuer under U.S. securities laws in relation to securities transactions on a foreign exchange. *Id*. at 2894, n.11 (Stevens, J., concurring in judgment). The district court granted the defendants' motion to dismiss for lack of subject-matter jurisdiction due

5

to the foreign investors' failure to satisfy the "conduct and effects test." *In re Nat'l Australia Bank Sec. Litig.*, 2006 WL 3844465, at *8 (S.D.N.Y. 2006). The Second Circuit affirmed. *Morrison v. National Australia Bank Ltd.*, 547 F.3d 167, 171 (2d Cir. 2008).

The Supreme Court issued its unanimous ruling in *Morrison* on June 24, 2010. 130 S.Ct. at 2875 (Scalia, J.). The Court began its analysis by correcting a "threshold error" in the ruling below, *i.e.*, that the extraterritorial reach of § 10(b) was a question of subject matter jurisdiction. *Id*. at 2876-77. The Court explained that the district court already had jurisdiction to determine whether § 10(b) applied to the issuer's conduct, for that power was conferred under 15 U.S.C. § 78aa, entitled "Jurisdiction of offenses and suits," which grants federal courts "exclusive jurisdiction of violations of [the Exchange Act] or the rules and regulations thereunder…." *Id*. The Supreme Court held that the international character of a fraudulent scheme is relevant only to the substantive question of whether a defendant's conduct violated § 10(b), and not to the question of whether a court has subject matter jurisdiction over the § 10(b) action. *Id*. at 2877.

As to the substantive invocation of § 10(b), the Court then rejected the conduct and effects test, adopting instead the "transactional test." *Id*. at 2884-85. Under this new test, for § 10(b) to apply, "the purchase or sale [must be] made in the United States, or [must] involve[] a security listed on a domestic exchange." *Id*. at 2886. Because the *Morrison* plaintiffs did not purchase or sell securities listed on a domestic exchange and the transactions at issue did not otherwise occur in the United States, the Supreme Court held that plaintiffs failed to state a claim for relief under § 10(b). *Id*. at 2888.

The Dodd-Frank Amendment. After *Morrison* was decided, Congress enacted Dodd-Frank, a massive and complex bill, including many titles relating to a variety of topics such as regulation of the banking and mortgage industries. Buried in the thousands of pages of legislative

text is a provision – Section 929P(b) – that authorizes extraterritorial "jurisdiction" under the Exchange Act for certain actions brought by the SEC and other arms of the Government. *See* Pub. L. No. 111-203, § 929P(b), 124 Stat. 1376, 1865 (2010) (codified as amended at 15 U.S.C. §§ 77aa(b) and 77v(c)). Section 929P(b) only speaks of "jurisdiction," *i.e.*, the power of the court to hear the case, and does not address the substantive elements of § 10(b). Nevertheless, the SEC claims that Section 929P(b) "overrides" both the jurisdictional and substantive § 10(b) prongs of *Morrison*. Thus, the SEC claims that the "conduct and effects test" that *Morrison* rejected in connection with the § 10(b) substantive analysis – and not the transactional test that *Morrison* adopted – applies here to determine whether the SEC has stated a substantive claim under § 10(b). (SEC Opp. to Mot. to Dismiss at 1-2) The SEC is wrong.

Section 929P(b) Only Addresses Jurisdiction. A straightforward statutory analysis establishes that Section 929P(b) does not apply to the substantive reach of § 10(b) and only deals with jurisdiction. We start with the plain language of Section 929P(b). *See Matter of Merchs. Grain, Inc. by and through Mahern*, 93 F.3d 1347, 1353 (7th Cir. 1996) ("[T]he starting point for interpreting a statute is the language of the statute itself."). Section 929P(b) states:

> Section 27 of the Securities Exchange Act of 1934 (15 U.S.C. 78aa) is amended—
> . . . .
> by adding at the end the following new subsection:
>
> (b) EXTRATERRITORIAL ***JURISDICTION***.—The district courts of the United States and the United States courts of any Territory shall have ***jurisdiction*** of an action or proceeding brought or instituted by the Commission or the United States alleging a violation of [the antifraud provisions of this title] involving –
>
> (1) conduct within the United States that constitutes significant steps in furtherance of the violation, even if the securities transaction occurs outside the United States and involves only foreign investors; or
>
> (2) conduct occurring outside the United States that has a foreseeable substantial effect within the United States. [Emphases added.]

7

Section 929P(b) merely states that any United States court will have "jurisdiction" to hear any action brought by the SEC or the Government with respect to violations, even those occurring outside the United States, of the anti-fraud provisions of the 1934 Act. This is consistent with *Morrison*. Section 929P(b) says nothing about merits questions under § 10(b). Having jurisdiction, or "power to hear a case," is "an issue quite separate from the question whether the allegations the plaintiff makes entitle him to relief." *Morrison*, 130 S.Ct. at 2877. Section 929P(b) does not even attempt to address the latter question, *i.e.*, the substantive "entitle[ment]… to relief" under § 10(b).

Numerous elements of Section 929P(b) reinforce that it addresses only the issue of jurisdiction, and not any merits-related issue:

1. The portion of the bill containing Section 929P(b) is entitled "Extraterritorial ***Jurisdiction*** of the Antifraud Provisions of the Federal Securities Laws." Pub. L. No. 111-203, § 929P(b), 124 Stat. 1376, 1865 (2010).[1]

2. Section 929P(b) is an addition to 15 U.S.C. § 78aa (entitled "***Jurisdiction*** of offenses and suits"), which unquestionably is a jurisdictional provision, not a merits provision.[2] The SEC admits as much. In its amicus brief in *Morrison*, the SEC explained that § 78aa is the statute that establishes jurisdiction in Exchange Act cases: "Jurisdiction over suits alleging violations of the Exchange Act is established by 15 U.S.C. 78aa." Brief of the United States [SEC and Solicitor

---

[1] The new subsection that 929P(b) added to § 78aa is itself entitled "Extraterritorial ***jurisdiction***."

[2] Section 929P(b) also included an identical amendment to 15 USC § 77v, entitled "Jurisdiction of offenses and suits." Section 77v governs jurisdiction in Securities Act claims. *See Kopecky v. RJM Investments*, 2009 WL 2746151, at *2 (N.D. Ill. 2009) ("This court has jurisdiction pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a)…."). Section 929P(b) made no other changes to §§ 77v and 78aa.

General] and as Amicus Curiae, *Morrison v. National Australia Bank*, Ltd., 2009 WL 3460235, at *9 (Oct. 27, 2009) ("SEC Amicus Brief"). Likewise, in this case, the SEC alleges that § 78aa (as wells as 15 U.S.C. § 77v, which governs Securities Act jurisdiction) confers jurisdiction here. (Cplt. ¶ 10)

3. The text of 929P(b) addresses only jurisdiction: "The district courts of the United States and the United States courts of any Territory shall have *jurisdiction* of an action or proceeding…."

Accordingly, there is no question that Section 929P(b) addresses only the issue of subject matter jurisdiction, which was the focus of Part II of the *Morrison* opinion.

Entirely separate from this, Part III of the *Morrison* opinion focused upon the substantive, on-the-merits reach of § 10(b) outside the United States, *i.e.*, which cases having trans-national aspects are actionable under § 10(b). This issue is not explicitly or implicitly addressed in Section 929P(b). Thus, this Court should reject the SEC's position that Section 929P(b) "overrides" Part III of *Morrison*, holding that to state a claim under § 10(b), a plaintiff must satisfy the *Morrison* "transactional test." *See Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) ("It is well established that when a statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.").

Consideration of Section 929P(b)'s Legislative History is Improper in this Context. The SEC may attempt to argue that Section 929P(b)'s legislative history evinces Congressional intent to overrule *Morrison*. This argument is legally meritless. To start, "[w]hen a statute is clear, any consideration of legislative history is improper." *U.S. v. Rand*, 482 F.3d 943, 947 (7th Cir. 2007); *see also U.S. v. Logan*, 453 F.3d 804 (7th Cir. 2006) (same), *aff'd, Logan v. U.S.*, 552 U.S. 23

9

(2007). By its plain terms, Section 929P(b) governs *only* the issue of jurisdiction. Section 929P(b) provides no evidence that Congress intended to "override" *Morrison* or negate its ruling regarding the substantive availability of § 10(b) in actions involving international transactions.

Furthermore, there is no legal basis for considering the scant legislative history of Section 929P(b) that does exist. Section 929P(b) is mentioned just once (three paragraphs) in the legislative history of the bill. *See* 156 Cong. Rec. H5233, H5237 (daily ed. June 30, 2010). In the floor debate, former Representative Paul E. Kanjorski stated that Section 929P(b) created "new authority" for the SEC and the DOJ to bring proceedings "involving transnational securities frauds." *Id*. He stated that the bill was intended to reinstate the "conduct and effects test." *Id*. No other representative or senator addressed this section in any debate or report. Representative Kanjorski's statements stand alone.

Irrespective of Representative Kanjorski's remarks, the language of the bill only covers jurisdiction and does not reach the substantive scope of § 10(b).[3]

Any attempt by the SEC to rely upon Representative Kanjorski's isolated comments would be meritless. The Supreme Court has held that the remarks of one legislator are insufficient to establish legislative intent – even if the legislator was the bill's sponsor. *See Mims v. Arrow Financial Services, LLC*, 132 S.Ct. 740, 752 (2012) ("the views of a single legislator, even a bill's sponsor, are not controlling."). The statements of individual legislators are an unreliable indication of the meaning of a statute – particularly, where, as here the statement conflict with plain language of the statute. *Heinz v. Central Laborers' Pension Fund*, 303 F.3d

---

[3] It is notable also that the SEC took no steps to ensure that Congress tailor Dodd-Frank to reflect *Morrison*'s change. In all of the versions of the bill, the legislative language addressed only subject matter jurisdiction. *See* Richard W. Painter, *The Dodd-Frank Extraterritorial Jurisdiction Provision: Was It Effective, Needed or Sufficient?*, 1 Harvard Business L. Rev. 401, 407-408 (May 2011). *Id*. at 408. The language was not changed despite the fact that the SEC (and Solicitor General) affirmatively took the position before the Supreme Court in *Morrison* that the transnational reach of § 10(b) was not jurisdictional. *See* SEC Amicus Brief, 2009 WL 3460235, at *9.

802, 809 (7th Cir. 2002) (holding that "undue weight" was accorded to the statement of a single Congressman, which statement was "at odds with the straightforward language of the statute."), *aff'd*, *Central Laborers' Pension Fund v. Heinz*, 541 U.S. 739 (2004).

Because *Morrison* plainly applies here and Section 929P(b) does not, the complaint fails to establish that offers and acceptances here were "domestic transactions" actionable under §§ 10(b) and 17(a).

### B. The Foreign Investors' Agreements Here Fail the Morrison Transaction Test Because They Were Not "Domestic Transactions."

The SEC contends that even if Dodd-Frank did not overrule *Morrison*, its complaint states a claim under *Morrison*'s transaction test. In specific, the SEC claims that the sales here were "domestic transactions" because the "sales of securities occurred within the United States." (SEC Opp. to Mot. to Dismiss at 3, n.3) Again, the SEC is wrong.

Where, as here, the securities are not registered on domestic exchanges, "the exclusive focus [is] on domestic purchases and sales." *Morrison*, 130 S.Ct. at 2885. "[T]ransactions involving securities that are not traded on a domestic exchange are domestic if [either, (1)] irrevocable liability is incurred or [(2)] title passes within the United States." *Absolute Activist Master Value Fund, Ltd. v. Ficeto*, 677 F.3d 60, 67 (2d Cir.2012); *see also SEC v. Benger*, 2013 WL 593952, at *9 (N.D. Ill. 2013) (adopting *Absolute Activist* test); SEC Opp. to Mot. to Dismiss at 3, n.3 (citing same). That is, "a transaction is domestic if "the purchaser incurred irrevocable liability within the United States to take and pay for a security, …or the seller incurred irrevocable liability within the United States to deliver a security." *Absolute Activist*, 677 F.3d at 69. Irrevocable liability occurs when there is a "meeting of the minds of the parties," *Absolute Activist*, 677 F.3d at 68, *i.e.*, when the parties enter into a binding contract. *In re Vivendi Universal, S.A.*, 284 F.R.D. 144, 150 (S.D.N.Y. 2012).

11

While the SEC alleges that the "sales" here occurred in the United States (Cplt. ¶ 13), the complaint itself as well as the Subscription Agreement the SEC attached to the complaint contradict this allegation. *See Kaczmarek v. Microsoft Corp.*, 39 F. Supp. 2d 974, 975 (N.D. Ill. 1999) ("It is a well-settled rule that when a written instrument contradicts allegations in the complaint ..., the exhibit trumps the allegations."); *MVP Asset Mgmt. (USA) LLC v. Vestbirk*, 2013 WL 1726359, at *5 (E.D. Cal. 2013) (relying upon terms of subscription agreement referenced in complaint to assess whether complaint satisfied "irrevocable liability" test).

The complaint alleges that the "victims of this fraud are foreign nationals" (Cplt. ¶ 2), *i.e.*, "Chinese investors." (*Id*. ¶ 3)

The offer and acceptance – the requisite meeting of the minds – occurred abroad. The Corporate Defendants extended an offer to these foreign investors via an Offering Memorandum, which contained the offer to sell securities to the foreign investors. (*Id*. ¶¶ 4, 20, 22) These offers were made and accepted in China via "foreign sales agents" and directly to investors "in China." (*Id*. ¶ 26) By executing a Subscription Agreement, a foreign investor accepted the offer. (*Id*. ¶ 13a) The Subscription Agreement explicitly addresses irrevocable liability, providing that irrevocable liability occurs upon execution: "By signing, you agree to abide by the [LLC Operating Agreement], and to the terms and conditions of this Subscription Agreement." (*Id*. at 1, Subscription Instructions, ¶ 1) Furthermore, by executing the Subscription Agreement, the foreign investor "irrevocably" ceded decision-making authority to the issuer. (*Id*. at 6, ¶ 7) Thus, all of the elements of a binding contract were satisfied when an investor executed a subscription agreement – offer and acceptance (supported by consideration that was to be wired). *See Brody v. Finch University of Health Sciences/The Chicago Medical School*, 298 Ill.App.3d 146, 154

(1998) ("The elements of a contract are an offer, a strictly conforming acceptance to the offer, and supporting consideration.").

Moreover, the Subscription Agreement states that all of the elements of these transactions – the offers, sale, and purchases – occurred abroad. In ¶ 1(c)(ii), the Subscription Agreement states: "No *offer or sale* of the Interests was made to the investor in the United States." (Cplt., Ex. B, emphasis added) In ¶ 2(b), the Subscription Agreement states: "The Investor is subscribing to *purchase* the Interests outside the United States…." (Cplt, Ex. B, at 4, ¶ 2(b), emphasis added).

The complaint and Subscription Agreement establish that irrevocable liability occurred abroad. Accordingly, the SEC fails to state claims under the Securities and Exchange Acts because the transactions here at issue were not "domestic transactions" under *Morrison*.

## CONCLUSION

For the reasons stated herein, defendants A Chicago Convention Center, LLC and Intercontinental Trust Center of Chicago, LLC respectfully urge this Honorable Court to grant their motion to dismiss pursuant to Fed. R. Civ. 12(b)(6).

        Respectfully submitted,

        A CHICAGO CONVENTION CENTER, LLC, ANSHOO SETHI, and INTERCONTINENTAL REGIONAL CENTER TRUST OF CHICAGO, LLC

Dated: May 16, 2013         /s/ Scott Mendeloff

Scott Mendeloff (ARDC No. 6184901)
Arthur Don (ARDC No. 3121678)
Jason B. Elster (ARDC No. 6289434)
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Tel: 312.456.8400

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

      The undersigned attorney hereby certifies that on May 16, 2013, he electronically filed the foregoing ***MEMORANDUM OF LAW IN SUPPORT OF THE CORPORATE DEFENDANTS' MOTION TO DISMISS*** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties of record.

                                                        /s/ Scott Mendeloff