UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION<br><br>Plaintiff,<br><br>v.<br><br>A CHICAGO CONVENTION CENTER, LLC, ANSHOO SETHI, and INTERCONTINENTAL REGIONAL CENTER TRUST OF CHICAGO, LLC<br><br>Defendants. | Civil Action No. 13-cv-982<br><br>Honorable Judge Amy J. St. Eve |

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S OPPOSITION TO INTERVENORS' JANE DOES "A" THROUGH "N" MOTION TO INTERVENE**

Plaintiff Securities and Exchange Commission ("SEC") respectfully submits its Opposition to Proposed Intervenors' Jane Does "A" Through "N" Motion to Intervene (Dkt. #126, filed July 18, 2013).

**INTRODUCTION**

Proposed Intervenors' Jane Does "A" Through "N" (the "Proposed Intervenors") motion to intervene in this SEC enforcement action should be denied for two reasons. *First*, Section 21(g) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78u(g)] bars private plaintiffs' from intervening in SEC enforcement actions. While some courts have permitted private plaintiffs to intervene in limited circumstances, courts have uniformly denied motions to intervene in SEC enforcement actions where, as here, would-be intervenors seek to recover from the very same defendants the SEC is suing. Here, the Proposed Intervenors'

1

Complaint in Intervention seeks a declaratory judgment that the very same Defendants subject to the SEC's enforcement action have no interest in the $41,500 apiece that the Proposed Intervenors paid in "administrative fees" to the Defendants, and seeks an award of costs and "other relief" against the Defendants. As such, the Proposed Intervenors seek to consolidate a private cause of action with the SEC's enforcement action. Thus, their attempt to intervene here is barred by Section 21(g) of the Exchange Act.

*Second*, even if the Proposed Intervenors could evade the bar to intervention imposed by Section 21(g) of the Exchange Act, they cannot satisfy their burden under Rule 24(a) to intervene as of right. It is the Proposed Intervenors' burden to demonstrate that: (1) their motion to intervene is timely; (2) they possess an interest related to the subject matter of the SEC's enforcement action; (3) disposition of the SEC's action threatens to impair that interest; and (4) the SEC fails to adequately represent their interests. Failure to establish *any* of these elements requires denial of a motion to intervene. However, here, the Proposed Intervenors cannot satisfy three of these essential elements.

Specifically, the Proposed Intervenors' motion – filed five months after the SEC commenced this action and near the end of discovery – is untimely. Moreover, the Proposed Intervenors fail to demonstrate that their interests may be impaired absent their intervention in this proceeding. Instead, the Proposed Intervenors merely speculate that there "[a]rguably" "may" be some unspecified impairment of their interests, but they fail to explain how their interests may be impaired. Their failure explain how their interests may be impaired by the SEC's action is not surprising. Through this enforcement action, the SEC seeks to vindicate the very rights which the Proposed Intervenors seek to protect; namely, recovery of "administrative fees" that the Proposed Intervenors paid to the Defendants. Thus, not only do the Proposed

Intervenors fail to demonstrate any impairment of their interests, they also fail to demonstrate that the SEC cannot adequately protect their interests. For each of these reasons, the Proposed Intervenors fail to satisfy their burden to intervene as of right.

Accordingly, the SEC respectfully requests that the Proposed Intervenors' motion be denied.

## BACKGROUND

### A. The SEC's Complaint

The SEC filed this civil enforcement action on February 6, 2013. (*See* SEC Compl. [Dkt. #3].) In its Complaint, the SEC alleges that Defendants have perpetrated an investment scheme to exploit the EB-5 Visa Program which provides a method for foreign nationals to obtain U.S. residency by investing in domestic projects that will create a minimum number of jobs in the U.S. (*See* Compl. ¶¶ 1-5.) The SEC alleges that, using the lure of gaining a pathway to U.S. citizenship through the EB-5 Visa Program, Defendants targeted foreign nationals in a scheme to sell securities—interests in A Chicago Convention Center LLC ("ACCC"), an Illinois limited liability company—purportedly to finance and build the "World's First Zero Carbon Emission Platinum LEED certified" hotel and conference center. (*Id*.) Defendants, however, used false and misleading information to solicit investors. (*See*, *e.g*., *id*. ¶¶ 31, 38, 41-45, 49-50.) As a result of Defendants' fraud, investors wired $500,000 apiece plus a $41,500 "administrative fee" to the Defendants' U.S. bank accounts. (*Id*. ¶ 3.)

Under the terms of Defendants' offering, investors' funds (excluding the $41,500 per subscription "administrative fee") were held in escrow until the U.S. Citizenship and Immigration Services ("USCIS"), the agency which administers the EB-5 Program, determines that the purported hotel project is capable of generating the minimum number of jobs to qualify

under the EB-5 Visa Program and favorably adjudicates investors' applications for provisional visas (referred to as "I-526s").[1] (*Id*. ¶ 5.) Further, under the terms of the Defendants' offering, investors' administrative fee payments were placed in a U.S.-based administrative account controlled by Defendants. These administrative fees, however, are refundable to investors if their visa applications are rejected or the subscription is rejected or withdrawn.[2] (*Id*. ¶ 7.) The SEC alleges that the Defendants misappropriated the administrative fees collected from investors. (*Id*. ¶¶ 7, 51-54.)

The SEC's Complaint seeks, among other things, disgorgement, civil penalties, and permanent injunctive relief. (*Id*., Relief Requested ¶¶ I-XIII.) In particular, the Complaint seeks an order requiring Defendants "to return to the United States any investors' funds that have been transferred abroad," *i.e*., proceeds of investors' administrative fee payments, "to preserve such assets for the satisfaction of disgorgement." (*Id*. ¶ VI.) The Complaint also seeks an order requiring the Defendants "to disgorge the ill-gotten gains received as a result of the violations" alleged. (*Id*. ¶ VIII.)

### B. Proposed Intervenors' Complaint in Intervention

The proposed Complaint in Intervention seeks to recover from the very Defendants the SEC is suing. In particular, the Proposed Intervenors seek a "judicial declaration by this Court

---

[1] On March 28, 2013, the SEC moved for an order modifying the Court's February 19, 2013 asset freeze order to permit the return of investor funds then held in escrow. [*See* Dkt. # 52.] That motion was granted and the Court entered an order on April 19, 2013 directing SunTrust, the escrow agent, to return escrowed funds to investors. [*See* Dkt. # 71.] Since entry of the Court's Order on April 19, all escrowed funds have been returned to investors, totaling $147,105,946.03.

[2] The SEC has identified a handful of instances in which the investor's subscription agreements provided that the administrative fee payment would also be held in escrow pending USCIS' adjudication of the investor's I-526s. In two of these seven cases, the investors paid $541,500 (subscription price plus administrative fee) to the SunTrust escrow account. In the remaining five instances, the investors appear to have wired the $41,500 administrative fee payment to a SunTrust administrative (non-escrow) account controlled by the Defendants notwithstanding the provision of the investor's Subscription Agreement that provided the funds would be held in escrow.

4

that they are the rightful owner[s] of the $41,500 Administrative Fee[s]" they each paid to the Defendants and "that such assets should be returned to the Intervenors as directed by the Intervenors." (*See* Proposed Compl. In Intervention [Dkt. #128-1] ¶ 38; *see also* Relief Requested.) In the alternative, the Proposed Intervenors seek a declaration that Defendants hold the Proposed Intervenors' administrative fee payments as constructive trustees for the benefit of Proposed Intervenors. (*See id*. Relief Requested at B.) Proposed Intervenors also seek an award of "costs against the Defendants" and "other relief that this Court deems necessary and just." (*Id*. at C and D.)

## ARGUMENT

### I. SECTION 21(G) OF THE EXCHANGE ACT BARS INTERVENTION

The Proposed Intervenors' attempt to intervene in this enforcement action is barred by Section 21(g) of the Exchange Act which provides:

> [N]o action for equitable relief instituted by the Commission pursuant to the securities laws shall be consolidated or coordinated with other actions not brought by the Commission, even though such other actions may involve common questions of fact, unless such consolidation is consented to by the Commission.

15 U.S.C. § 78u(g).

Courts have broadly applied Section 21(g) to preclude interference by private parties in SEC law enforcement proceedings without SEC consent. *See*, *e.g.*, *Aaron v. SEC,* 446 U.S. 680 at 717 n.9 (1980) (Blackmun, J., concurring); *Parklane Hosiery Co. Inc. v. Shore*, 439 U.S. 322, 332 (1979) (observing that "the respondent probably could not have joined in the injunctive action brought by the SEC even had he so desired") (citing *SEC v. Everest Management Corp.*, 475 F.2d 1236, 1240 (2d Cir. 1973)); *SEC v. Nadel*, No. 8:09-cv-87-T-26TBM, 2009 WL 3126266, at *1 (M.D. Fla. Sept. 24, 2009) (intervention); *SEC v. Egan*, 821 F. Supp. 1274, 1275 (N.D. Ill. 1993) (third-party complaint). Indeed, in *Securities & Exchange Commission v.*

5

*Wozniak*, this Court described Section 21(g) as an "impenetrable wall" to private plaintiffs' attempts to intervene in SEC enforcement actions. No. 92 C 4691, 1993 WL 34702, at *1 (N.D. Ill. Feb. 8, 1993). In denying an investor's motion to intervene, Judge Shadur explained that Section 21(g) is "unambiguous":

> [Its] plain meaning has been confirmed by the Supreme Court (albeit in passing) in *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 332 n. 17 (1979) and elaborated on by Justice Blackmun (concurring in part and dissenting in part) in *Aaron v. SEC*, 446 U.S. 680, 717 n. 9 (1980). Only SEC's consent can open a door in that wall to permit a private party [] to have access to this federal court in this lawsuit.

*Id.*; *see also SEC v. Homa*, No. 99 C 6895, 2000 WL 1468726, at *2 (N.D. Ill. Sept. 29, 2000). (denying a motion to intervene in an SEC enforcement action and concluding "the language of Section 21(g) is plain and unambiguous, and therefore it must be given effect"); *SEC v. Cogley*, No. 98CV802, 2001 WL 1842476, at *5 (S.D. Ohio 2001) ("After reviewing the legislative history, and reviewing other cases that have discussed this issue, this Court comes to the inescapable conclusion that Section 21(g) bars intervention.").

Although some courts have allowed intervention in SEC enforcement actions largely on the grounds that Section 21(g) does not expressly refer to "intervention," these cases read Section 21(g) far too narrowly and are distinguishable; they involved intervention by a customer or creditor seeking return of assets from the receivership estate that could be impaired depending on the outcome of the litigation. *See*, *e.g.*, *SEC v. Flight Trans. Corp.*, 699 F.2d 943, 950 (8th Cir. 1983) (reversing district court's denial of motion to intervene by creditors where receiver seized property in which intervenors had an interest and district court barred intervenors from prosecuting claims against defendants in a separate action); *SEC v. Kings Real Estate Inv. Trust*, 222 F.R.D. 660, 671 (D. Kan. 2004) (allowing limited intervention "only to the extent necessary to demonstrate that [intervenor's] investment was not part of the same scheme to defraud and that his investment should not be part of the Receivership Assets"); *SEC v. Credit Bancorp., Ltd.*,

6

194 F.R.D. 457, 465, 467 (S.D.N.Y 2000) (describing *Flight Transport* as an "outlier opinion" but allowing intervention by customers, all of whom "highlight their vital interest in the assets presently controlled by the Receiver"); *SEC v. Prudential Securities, Inc.*, 171 F.R.D. 1, 3-5 (D.D.C. 1997) (observing Section 21(g) did not bar investors from intervening in *post*-judgment proceedings to ensure damages were calculated properly but denying motion to intervene on the grounds that investors had no "protectable interest" at stake in the litigation).

Here, on the other hand, the Proposed Intervenors do not seek the return of assets held in a receivership estate—there is no receivership estate. Further, the Proposed Intervenors are not creditors of the Defendants who seek to intervene to protect assets that could be impaired depending on the outcome of the SEC's enforcement action. Instead, the Proposed Intervenors are defrauded investors who have an identical interest (*vis-à-vis* each other and *vis-à-vis* all other investors in Defendants' scheme) in any funds recovered from Defendants upon entry of a judgment. Moreover, the SEC already seeks to recover administrative fees on behalf of all investors (not just the Proposed Intervenors). Therefore, there is no potential impairment of the Proposed Intervenors' interests depending upon the outcome of this litigation. Simply put, the narrow factual circumstances under which some courts permitted intervention in SEC enforcement cases, despite Section 21(g) of the Exchange Act, are not present here.

In fact, the cases cited by the Proposed Intervenors underscore that intervention is barred under the circumstances here. As Judge Gottschall explained in *Securities & Exchange Commission v. Falor*, while Section 21(g) may not bar every intervention by private plaintiffs, it "does preclude intervention when the would-be intervenors attempt[] to recover from the very defendants the SEC [is] suing." 270 F.R.D. 372, 375 (N.D. Ill. 2010) (quoting *SEC v. Hollinger Int'l, Inc.*, No. 04 C 0336, 2004 WL 422729, at *3 (N.D. Ill. Mar. 2, 2004)); *see also SEC v.*

*Heartland Grp., Inc.*, No. 01 C 1984, 2003 WL 1089366, at *3 (N.D. Ill. Mar. 11, 2003) (distinguishing *Wozniak* on the grounds that there the "would-be intervenors attempted to recover from the very defendants the SEC was suing."); *SEC v. Benger*, No. 09 C 0676, 2010 WL 724416, at *11 (N.D. Ill. Feb. 23, 2010).

Although the Proposed Intervenors contend that they "do not seek any recovery separate and apart from the SEC's complaint, and as such, are not seeking to 'consolidate' or 'coordinate' any separate claims or actions against the Defendants," Mem. at 10, that is precisely what the Proposed Intervenors' Complaint in Intervention seeks to do. The Proposed Intervenors' Complaint in Intervention seeks a declaratory judgment that the very same Defendants subject to the SEC's enforcement action have no interest in the $41,500 apiece they paid in "administrative fees" to the Defendants, and seeks an award of costs and "other relief" against the Defendants. (*See* Compl. In Intervention [Dkt. #128-1] at 8.) The Proposed Intervenors thus attempt to recover from the same Defendants the SEC is suing and to consolidate a private cause of action with the SEC's enforcement action. Under these circumstances, Section 21(g) of the Exchange Act presents an "impenetrable wall" to any attempt to intervene. *Wozniak*, 1993 WL 34702, at *1; *see also Benger*, 2010 WL 724416, at *10 (concluding where would-be intervenor attempted to recover from same defendants SEC was suing, she sought to "coordinate" or "consolidate" claims with SEC enforcement action in violation of §21(g)).

In short, the Proposed Intervenors cannot overcome the statutory bar to intervention in this SEC enforcement action.

## II. THE PROPOSED INTEVENORS CANNOT INTERVENE AS OF RIGHT UNDER RULE 24(A)

Even if the Proposed Intervenors could evade Section 21(g) of the Exchange Act, they cannot satisfy their burden to intervene as of right. The Seventh Circuit has established four

8

criteria that would-be intervenors must satisfy to intervene as of right under Rule 24(a): "(1) their motions to intervene were timely; (2) they possess an interest related to the subject matter of the … action; (3) disposition of the action threatens to impair that interest; and (4) the parties fail to represent adequately their interests." *Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 773 (7th Cir. 2007). Failure to establish any of these elements requires denial of a motion to intervene. *See Commodity Futures Trading Comm'n v. Heritage Cap. Adv. Servs., Ltd.*, 736 F.2d 384, 386 (7th Cir. 1984). While the Proposed Intervenors may possess an interest related to the subject matter of the SEC's enforcement action, they cannot establish the remaining elements required to intervene as of right.

### A. The Proposed Intervenors' Motion Is Untimely

The timeliness requirement, rather than imposing a precise time limit, essentially means that an intervenor must "act with dispatch," *Atlantic Mutual Ins. Co. v. Northwest Airlines, Inc.*, 24 F.3d 958, 960 (7th Cir. 1994). Intervention is unavailable to the litigant who "dragged its heels" after learning of the lawsuit. *United States v. City of Chicago*, 870 F.2d 1256, 1263 (7th Cir. 1989). Thus, would-be intervenors must be diligent in learning of a suit that might affect their rights, and upon so learning they need to act reasonably promptly. *See United States v. South Bend Community School Corp.*, 710 F.2d 394, 396 (7th Cir. 1983), cert. denied, 466 U.S. 926 (1984).

Here, the Proposed Intervenors waited nearly five months after the case was filed and four months after a group of nearly 100 investors sought to intervene in this litigation.[3] Moreover, the Proposed Intervenors waited months after they were refunded their capital investments in the Defendants' scheme ($500,000 apiece) — a direct result of the SEC's

---

[3] The prior motions to intervene [Dkt. # 20 and 35] were denied as moot on July 10, 2013. [*See* Dkt. # 119.]

9

enforcement action. The Proposed Intervenors offer no reason for their failure to "act with dispatch." Because the Proposed Intervenors failed to act promptly, their motion is untimely and they cannot intervene as of right. *See*, *e.g.*, *NAACP v. New York*, 413 U.S. 345, 365-66 (1973) (upholding district court finding that motion to intervene was untimely where would-be intervenors waited four months after a suit was commenced); *EEOC v. United Air Lines, Inc.*, 515 F.2d 946 (7th Cir. 1975) (affirming denial of intervention as untimely, even though the trial had not yet begun, because the intervenors had offered no excuse for waiting five months after the complaint was amended and their interest in the action first created).

> **B. The Proposed Intervenors Cannot Show Their Interests Are Impaired By This Enforcement Action**

To intervene as of right, the Proposed Intervenors must establish that a legally protectable interest could be impaired if the action is resolved without them. *See Reid L. v. Illinois State Bd. Of Educ.*, 289 F.3d 1009, 1017 (7th Cir. 2002). "The existence of 'impairment' depends on whether the decision of a legal question involved in the action would as a practical matter foreclose rights of the proposed intervenors in a subsequent proceeding." *Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 683 F.2d 201, 204 (7th Cir. 1982) (citations omitted).

Here, the Proposed Intervenors fail to show how any interest of theirs could be impaired absent intervention. Rather, the most the Proposed Intervenors can muster is that it is "[a]rguably" "likely that the only assets of the Defendants are those marshaled by the SEC." (Mem. at 7.) But the Proposed Intervenors fail to explain how, if their assertion is true, any of their interests could be impaired. The Proposed Intervenors also speculate that their interests "may also be impaired by an adverse 'decision of a legal question involved in the action'" that may foreclose their rights in another proceeding. (*Id.* (citations omitted).) But, again, the Proposed Intervenors fail to explain what "legal question" could be decided adversely to them

and what rights may be foreclosed in a subsequent proceeding.[4]

Thus, the Proposed Intervenors simply speculate that some unspecified interest may arguably be impaired by some unspecified future event in the SEC's enforcement action. That is not enough to satisfy their burden under Rule 24(a). *See*, *e.g.*, *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941 (7th Cir. 2000) (upholding district court's denial of motion to intervene because the would-be intervenors' purported interest was "too speculative to support intervention"); *McGrath v. Everest Nat. Ins. Co.*, No. 2:07 cv 34, 2009 WL 4611414, at *9 (N.D. Ind. Nov. 25, 2009) ("The fact that the insureds hold a claim against Everest does not alone meet the requirement of a sufficient interest required by Rule 24(a). The insureds do not explain how any judgment in this case between the current parties could affect them."); *see also Zurich Capital Markets, Inc. v. Coglianese*, 236 F.R.D. 378, 386 (N.D. Ill. 2006) ("The existence of an interest in the litigation, without more, does not satisfy the requirements of Rule 24(a)(2). The Liquidator also has the burden of establishing 'at least potential impairment of that interest if the action is resolved without [him].'") (quoting *Reid L.*, 289 F.3d at 1017).

Moreover, whatever interests the Proposed Intervenors have relating to the SEC's enforcement proceeding can be addressed before a receiver, if one is appointed. As this Court observed in *Securities and Exchange Commission v. Homa*, the Court is "bound to follow *Commodity Futures Trading Commission v. Heritage Capital Advisory Services, Ltd.*, a case in

---

[4] The Proposed Intervenors reliance on *SEC v. Flight Trans. Corp.*, 699 F.2d 943 (8th Cir. 1983), is misplaced. There, the court-appointed receiver seized property owned by the proposed intervenor (airplanes that were leased to the defendant) for potential liquidation and distribution to defrauded investors. *Id*. at 947-48. Further, the district court barred the proposed intervenor from prosecuting claims against defendants in a separate action. *Id*. In reversing the district court's denial of intervention, the Eight Circuit concluded that if the district court ordered the assets "'disgorged' to defrauded investors, [the proposed intervenor] will be unable to obtain satisfaction of its claim" to the assets that were seized. *Id*. at 948. Therefore, the outcome of the SEC's enforcement action could directly impair the intervenor's property interests. That is not the case here. Rather, if a judgment is obtained against the defendants and any funds are available for distribution, all investors have the same interest pool of funds for distribution, *i.e*., $41,500 or some lesser *pro rata* share of the total pool of funds.

which the Seventh Circuit denied a company's motion to intervene as a matter of right in part because the company could assert its constructive trust claim before the receiver." *Id*. (citing *Heritage Cap. Adv. Servs., Ltd.*, 736 F.2d at 386). So too here. Although no receiver has been appointed in this case (and may or may not be necessary), the Proposed Intervenors are free to petition any receiver or the Court concerning the disposition of funds recovered upon any judgment without intervening in the SEC's enforcement action. For this reason alone, the Proposed Intervenors cannot demonstrate any impairment of a right arising from disposition of assets in connection with this enforcement proceeding and therefore cannot intervene as of right under Rule 24(a).

### C. The SEC Adequately Protects The Proposed Intervenors' Interests.

The Proposed Intervenors cannot demonstrate that the SEC fails to adequately protect their interests. Where, as here, "the representative party is a governmental body charged by law with protecting the interests of the proposed intervenors, the representative is presumed to adequately represent their interests unless there is a showing of gross negligence or bad faith," *Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 774 (7th Cir. 2007) (citing *United States v. South Bend Cmty. Sch. Corp.*, 692 F.2d 623, 627 (7th Cir. 1982); *United States v. Bd. of Sch. Comm'rs of Indianapolis*, 466 F.2d 573, 575-76 (7th Cir. 1972)). The SEC is a governmental body charged by law with protecting the interests of investors, such as the Proposed Intervenors. The Proposed Intervenors do not suggest "gross negligence or bad faith" on the part of the SEC. Indeed, it is because of the SEC's actions that each of the Proposed Investors has already recovered his or her $500,000 investment in Defendants' fraudulent scheme. Thus, the SEC is presumed to – and does in fact – adequately represent the Proposed Intervenors' interests.

Moreover, the Proposed Intervenors cannot demonstrate that any conflict exists between their and the SEC's interests. The SEC's Complaint seeks an order requiring Defendants "to

return to the United States any investors' funds that have been transferred abroad," *i.e.*, proceeds of investors' administrative fee payments, "to preserve such assets for the satisfaction of disgorgement." (Compl., Requested Relief ¶ VI.) The Complaint also seeks an order requiring the Defendants "to disgorge the ill-gotten gains received as a result of the violations" alleged, *i.e.*, investors' administrative fee payments. (*Id.* ¶ VIII.) In other words, the SEC seeks to vindicate the same rights the Proposed Intervernors speculate could be impaired absent their intervention. Thus, the Proposed Intervenors cannot point to any legitimate conflict between their interests and those of the SEC in this case.

In short, the Proposed Intervenors' motion is untimely, and they have failed to demonstrate the likely impairment of any right absent intervention or that the SEC fails to adequately protect their interests. Accordingly, the Proposed Intervenors cannot satisfy their burden under Rule 24(a) to intervene as of right.

## CONCLUSION

For the reasons set forth above, the SEC respectfully asks the Court to deny the Motion to Intervene.

Dated: August 16, 2013

Respectfully submitted,

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**

*/s/ Patrick M. Bryan*
Patrick M. Bryan (IL Bar No. 6277194)
U.S. Securities & Exchange Commission
100 F Street, NE
Washington, DC 20549
Telephone: (202) 551-4420
BryanP@sec.gov

                                              Charles J. Felker
                                              Adam J. Eisner
                                              Mika M. Donlon
                                              U.S. Securities & Exchange Commission
                                              100 F Street, NE
                                              Washington, DC 20549
                                              FelkerC@sec.gov
                                              EisnerA@sec.gov
                                              DonlonM@sec.gov

                                              *Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I, Patrick M. Bryan, hereby certify that the foregoing Plaintiff Securities And Exchange Commission's Opposition To Intervenors' Jane Does "A" Through "N" Motion to Intervene was served on all counsel of record on August 16, 2013 via the Court's ECF system.

*/s/ Patrick M. Bryan*
Patrick M. Bryan